IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ALFONZA GACHETT,<br>    #160757 | )<br>) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CASE NO. 2:07-CV-902-WKW-[WO] |
| | ) |
| COUNTY COMMISSION OF<br>BULLOCK COUNTY, et al., | )<br>) |
| | ) |
| Defendants. | ) |

**SPECIAL REPORT**
**BY DEFENDANT TAHIR SIDDIQ, M.D.**

COMES NOW Defendant Tahir Siddiq, M.D., and respectfully submits his Special

Report pursuant to this Court's Order of October 10, 2007, and the Order of December 3, 2007,

granting an extension of time until December 19, 2007.

**I.    INTRODUCTION**

Plaintiff, an inmate at the Bullock County Jail, filed a Complaint claiming violation of his

rights arising out an injury to his right hand and failure to be provided proper medical attention.

Plaintiff demands "$750,000.00 for violations of Civil Rights, to prove to the court for justice

and relief, pain, suffering, damages, attorney fees, compensatory [sic]."

**II.    THE PARTIES[1].**

a.    The Plaintiff, Alfonza Gachett, is an inmate currently incarcerated at the Bullock

County Jail, Union Springs, Alabama.

---

[1]The Plaintiff also brings claims against Bullock County Commission, Sheriff Raymond Rogers, Chief
Jailer Curtis Pritchett, Corrections Officer Dorothy Thomas, Corrections Officer Annie L. Reynolds, Corrections
Officer Johnnie Mae Martin, Corrections Officer Ruby Thomas, and Corrections Officer Veronica Harris.  This
Special Report only addresses the Plaintiff's claims against Dr. Tahir Siddiq.

b.     Dr. Tahir Siddiq is an internal medicine physician licensed to practice in Alabama since 1996 who is currently in private practice at TriMed Family Medicine in Union Springs, Alabama.  Dr. Siddiq is Board Certified in internal medicine.  He graduated from the King Edward Medical College, University of Punjam, Lahore, Pakistan.  He received his residency training in internal medicine at University of Texas Branch Hospitals. (Affidavit of Dr. Siddiq)

## III.    FACTS

Plaintiff, Alfonza Gachett,  is incarcerated in the Bullock County jail in Union Springs, Alabama.

On October 11, 2006, Gachett was brought to the medical office of Dr. Siddiq for examination of his right hand.  In reporting his injury to Dr. Siddiq, Gachett stated that he fell at the jail on or about October 8, 2006.   Upon examination of Gachett's hand, Dr. Siddiq referred him to the Bullock County Hospital for an x-ray and then to Dr. Tai Chung for further treatment.

Dr. Siddiq did not provide any further medical treatment to Gachett after October 11, 2006.

The medical services Dr. Siddiq provided to Gachett met the applicable standard of care for physician in private practice in family medicine. (Affidavit of Dr. Siddiq.)  The medical services provided to Gachett by Dr. Siddiq met or exceeded the applicable standard of care. (Affidavit of Dr. Siddiq.)

## IV.  PLAINTIFF'S ALLEGATIONS AND DEFENDANT SIDDIQ'S RESPONSE.

GROUND ONE: Plaintiff does not make any claims against Dr. Siddiq.   Dr. Siddiq's name is not mentioned in any of the allegations made in Ground One, nor are there any allegations about medical care rendered to Gachett by Dr. Siddiq.

GROUND TWO: There are no allegations of negligence made by Plaintiff as to Dr. Siddiq. However, out of an abundance of caution, this Defendant will assume the Plaintiff is also making a state law claim of medical malpractice. However, there is no evidence of any malpractice by Dr. Siddiq. Dr. Siddiq's treatment of the Plaintiff met or exceeded the applicable standard of care. There is no evidence, expert or otherwise, that Dr. Siddiq committed malpractice while treating the Plaintiff.

GROUND THREE: Plaintiff does not make any claims against Dr. Siddiq. Dr. Siddiq's name is not mentioned in any of the allegations made in Ground Three, nor are there any allegations about medical care rendered to Gachett by Dr. Siddiq.

## V. ANALYSIS OF APPLICABLE LAW

### A. Federal Claims

Plaintiff brings his claims against Dr. Siddiq, presumably under § 1983, alleging violation of his Fourteenth Amendment rights. In order " state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins 487 U.S. 42, 48 (1988). Plaintiff has not alleged a violation of his constitutional rights by Dr. Siddiq. A Montgomery federal court held that "[w]here a plaintiff does not allege that a defendant personally participated in alleged constitutional deprivations, the plaintiff must establish an affirmative causal connection between the act or omission complained of and the alleged constitutional deprivations in order to sustain a § 1983 cause of action against the defendant." Ludlam v. Coffee County, 993 F. Supp. 1421 (M.D. Ala. 1998). Plaintiff fails to

identify any act or omission by Dr. Siddiq that resulted in a constitutional violation. Accordingly, Plaintiff fails to meet the standard by which a § 1983 claim can be sustained against Dr. Siddiq.

Further, Dr. Siddiq was not a state actor subject to suit under § 1983. As the Eleventh Circuit noted, "§ 1983 only provides for claims to redress State action." Rayburn v. Hogue, 241 F.3d 1341, 1347 (11th Cir. 2001). In order "[t]o obtain relief under §1983, a party must show that he or she was deprived of a federal right by a person acting under color of state law." Id. citing Patrick v. Floyd Medical Center, 201 F.3d 1313, 1315 (11th Cir. 2000). The Court pointed out that "[o]nly in rare circumstances can a private party be viewed as a State actor for section 1983 purposes." Rayburn v. Hogue, 241 F.3d at 1347. In West v. Atkins, 487 U.S. 42, 54 (1988), the U.S. Supreme Court held that a doctor employed by the state "to provide medical services to state prison inmates, acted under color of state law for purposes of § 1983 when undertaking his duties in treating [an inmate's] injuries." In West, the doctor in question had a contract with the state to provide medical services to inmates. In contrast, Dr. Siddiq had no such contract with the state. Dr. Siddiq is a physician in private practice who sees inmates from the Bullock County jail when requested to do so. Dr. Siddiq sees the inmates on a case by case basis when his schedule allows and on the same basis that any new patient would be accepted. Furthermore, Bullock County does not control or direct the provision of medical services by Dr. Siddiq to inmate patients. Thus, the State did not contractually delegate its authority to Dr. Siddiq such that he should be considered a state actor. Plaintiff cannot establish a constitutional deprivation, nor can he establish that Dr. Siddiq was a state actor who acted with deliberate indifference to his constitutional rights.

-4-

Even if the Court finds that Dr. Siddiq was a state actor, the plaintiff's failure to identify any constitutional violation by Dr. Siddiq is fatal to his claims. Plaintiff's claims are governed by the Fourteenth Amendment, rather than the Eighth Amendment[2], because he is currently a pretrial detainee. However, "the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving ... pretrial detainees." Bozeman v. Orum, 422 F.3d 1265, 1271 (11th Cir. 2005). In order to prevail on his Fourteenth Amendment claim, the plaintiff must "prove an objectively serious medical need" and "prove that the government official acted with deliberate indifference to that need." Andujar v. Rodriguez, 486 F.3d 1199 (11th Cir. 2007). Viewing the facts in the light most favorable to Plaintiff, the Defendant accepts that the Plaintiff had an objectively serious medical need. However, the Plaintiff cannot establish that Dr. Siddiq acted with deliberate indifference in treating the Plaintiff's injury. In order to "satisfy this subjective part of the Fourteenth Amendment inquiry, [the Plaintiff] is required to prove three things: (1) that [Dr. Siddiq] knew of a risk of serious harm; (2) that [Dr. Siddiq] disregarded that risk; and (3) that the conduct of [Dr. Siddiq] amounted to more than gross negligence." Id. There is no evidence, nor can there be, that Dr. Siddiq knew of Gachett's injury before October 11, 2006, when Dr. Siddiq saw plaintiff in his office with a fractured hand. Dr. Siddiq's medical opinion was that the plaintiff needed surgery, and he was referred to Dr. Tai Chung for the appropriate medical treatment. Dr. Siddiq has rendered no further medical treatment to Gachett since October 11, 2006.

---

[2]The Eighth Amendment applies to constitutional claims brought by convicted prisoners. See Bozeman v. Orum, 422 F.3d 1265 (11th Cir. 2005).

Gachett's complaint against Dr. Siddiq is unclear. Dr. Siddiq referred Gachett to a physician for the medical care needed. In his Complaint, the only claim that Gachett seems to be making is the fact he was not given the pain medications he requested. However, upon diagnosing Gachett with a hand fracture, Dr. Siddiq immediately referred Gachett to an orthopedic specialist for further treatment; and Gachett was seen by such specialist that same day and prescribed pain medication.

Even if the Plaintiff does not "agree with the method of treatment provided, matters of medical judgment do not give rise to a §1983 claim." Id. at 492. Additionally, it is undisputed that Gachett did receive medical care from Dr. Siddiq and others. The Eleventh Circuit has noted that "when a prison inmate has received medical care, courts hesitate to find a [constitutional] violation." Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989).

## B. State Law Claims

It is unclear whether Plaintiff brings a state law claim for medical malpractice against Dr. Siddiq. In any event, Plaintiff cannot establish any such state law claim against Dr. Siddiq. In order:

> to establish a cause of action for medical malpractice, a plaintiff must establish, generally by expert testimony: (1) the appropriate standard of care, (2) a breach of that standard of care, and (3) a proximate causal connection between the defendant doctor's act or omission constituting the breach and the injuries sustained by the plaintiff. Unless the cause and effect relationship between the breach and the standard of care and the subsequent complication or injury is so readily understood that a lay person can reliably determine the issue of causation, a plaintiff must establish causation through expert testimony.

Prowell v. Children's Hospital of Alabama, 949 So. 2d 117, 126 (Ala. 2006)(internal quotations and citations omitted).  Plaintiff has not established, and cannot establish, through medical expert testimony that any act or omission by Dr. Siddiq violated the applicable standard of care. Further, at all times, the medical services provided to Gachett by Dr. Siddiq met or exceeded the applicable standard of care.

## VI.  IMMUNITY[3]

### A.  Immunity Under Article 1 § 14 of the Alabama Constitution of 1901

"When Article 1, § 14 Alabama Constitution of 1901, has been violated, a trial court is without jurisdiction to entertain the action and the action must be dismissed."   Sholas Community College v. Colagross, 674 So. 2d 1311 (Ala. Civ. App. 1995).  The Alabama Constitution mandates that "the State and its agencies have absolute immunity from suit in any court." Id.  (citing Phillips v. Thomas, 555 So. 2d 81, 83 (Ala. 1989)).  State officers "in their official capacities and individually, are also absolutely immune from suit when the action is, in effect, one against the state." Colagross, 674 So.2d at 1313 to 1314 (citing Phillips v. Thomas, 555 So. 2d at 83). If Dr. Siddiq is considered a state actor for the purposes of 1983, the action against him is an action against the state. Accordingly, summary judgment is due to be granted to him with respect to any state law claims pursuant to Article I, § 14 of the Alabama Constitution of 1901.

---

[3]Although Dr. Siddiq contends that he is not a state actor, in the event the Court finds to the contrary, Dr. Siddiq asserts that he is entitled to immunity.

b.    **Substantive Immunity**

The Alabama Supreme Court has held that the "doctrine of substantive immunity may yet be invoked if the official or employee (1) is engaged in the exercise of a discretionary function; (2) is privileged and does not exceed or abuse the privilege; or (3) is not negligent in his responsibility." DeStafney v. University of Alabama, 413 So. 2d 391 (Alabama 1981).  The Alabama Supreme Court has further noted that state officers or employees are entitled to substantive immunity "if they were engaged in the exercise of a discretionary function." Nance by and through Nance v. Matthews, 622 So. 2d 297 (Ala. 1993).  The Court noted that Black's Law Dictionary defines discretionary acts as "those acts [as to which] there is no hard and fast rule as to course of conduct that one must or must not take and, if there is [a] clearly defined rule, such would eliminate discretion...one which requires exercise in judgment and choice and involves what is just and proper under the circumstances."  Id. (citing Black's Law Dictionary 419 (5th Ed. 1979)).  Dr. Siddiq acted within his discretion when providing medical attention to Gachett, and accordingly, is entitled to substantive immunity for any state law claims.

c.    **Official Capacity Immunity**

The United States Supreme Court has held that "a state is not a person within the meaning of § 1983."  Will v. Michigan Depart. Of State Police, 491 U.S. 58 (1989).  The Court has further held that "§1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a state for alleged deprivations of civil liberties." Id.  The Court went on to note that "suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."  Id.   The Court, therefore, held that "neither a state nor its officials acting

in their official capacities are persons under § 1983." Id.  If Dr. Siddiq was at all material times hereto a state actor, acting in his official capacity, he is not subject to liability pursuant to § 1983.

There was no deliberate indifference by Dr. Siddiq.  If Dr. Siddiq was a state official, he was acting in good faith and is immune from suit under Article I, § 14 of the Alabama Constitution of 1901, and in accordance with the doctrine of substantive and official capacity immunity.

## VII. CONCLUSION

Plaintiff, Alfonza Gachett, demands  "$750,000.00 for violations of Civil Rights, to prove to the court for justice and relief, pain, suffering, damages, attorney fees, compensatory [sic]." However, Gachett has failed to prove any constitutional deprivation and has failed to set forth any evidence of denial of medical attention and/or adequate medical care.

## VIII.  MOTION FOR SUMMARY JUDGMENT

Defendant Tahir Siddiq, M.D., respectfully requests this Honorable Court to treat his Special Report as a Motion for Summary Judgment and grant the same unto him.

Respectfully submitted this 19th day of December, 2007.

/s/ James E. Williams
JAMES E. WILLIAMS (ASB-9283-W84J)
Jwilliams@mewlegal.com
FLYNN MOZINGO (ASB-9111-073J)
fmozingo@mewlegal.com
Attorney for Defendant, TAHIR SIDDIQ, M.D.
Melton, Espy & Williams, PC
255 Dexter Avenue
Post Office Drawer 5130
Montgomery, AL 36103-5130
Phone: (334) 263-6621 / Fax: (334) 269-9515

<u>**CERTIFICATE OF SERVICE**</u>

 I HEREBY CERTIFY that a copy of the foregoing has been electronically filed on the **19th day of December, 2007**, with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Winthrop E. Johnson, Esq.
WEBB & ELEY, P.C.
wjohnson@webbeley.com

 I FURTHER CERTIFY that I have served a copy of the foregoing upon the Plaintiff, by mailing a copy of same to him on the **19th day of December, 2007**, as follows:

 Alfonza Gachett, #160757
 Bullock County Jail
 114 West Hardaway Avenue
 Union Springs, AL   36089

      /s/ James E. Williams
      OF COUNSEL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ALFONZA GACHETT,<br>　　#160757 | ) |
| | ) |
| | ) |
| 　　　Plaintiff, | ) |
| | ) |
| vs. | ) CASE NO. 2:07-CV-902-WKW-[WO] |
| | ) |
| COUNTY COMMISSION OF<br>BULLOCK COUNTY, et al., | ) |
| | ) |
| | ) |
| 　　　Defendants. | ) |

## **AFFIDAVIT OF TAHIR SIDDIQ, M.D.**

| | |
|---|---|
| STATE OF ALABAMA | ) |
| | : |
| BULLOCK COUNTY | ) |

Before me, the undersigned authority, on this day personally appeared **Tahir Siddiq, M.D.,** who being by me first duly sworn, deposed and stated upon his oath as follows:

My name is Tahir Siddiq.  I am over the age of 21 years.  I have personal knowledge of the following:

I am, and at all material times hereto have been, a board certified internal medical physician in private practice in Union Springs, Alabama, with TriMed Family Medicine.  I graduated from the King Edward Medical College, University of Punjam, Lahore, Pakistan in 1984; and received my residency training in internal medicine at University of Texas Branch Hospitals in 1993-96.  I became board certified in internal medicine in 1996 and 2006.

I am a physician in private practice.  I am not an employee of Bullock County, Alabama, or Bullock County jail, and I don't have a contract with the jail.  At the request of the jail, I will

see inmate patients from Bullock County jail on a case by case basis when my schedule allows to the same extent and on the same basis that I accept any new patient.   None of the decisions I make regarding the medical care rendered by me to any inmate is controlled by, directed, or influenced by any agent, agency, officer, or director of Bullock County, Alabama.

On October 11, 2006, I saw Alfonza Gachett in my office.  He reported to me that he had fallen at the jail and injured his hand on October 9, 2006.  The treatment note from my office is attached hereto as Exhibit A-1 and states the following:

> Chief Complaint: *Swollen hand since 10/9/06*
> History as given by the patient: *Right hand swelling - tenderness, swelling - He Fell*
> Assessment: Possible Fracture - Plan: Will do X-ray

I appropriately examined Mr. Gachett's hand.  I was unable to arrive at a diagnosis based upon my visual examination.  Therefore, I did not prescribe medication or brace his hand. Instead, I immediately sent him next door to Bullock County Hospital for an x-ray in order to arrive at the appropriate diagnosis.  The x-ray showed his right hand had a metacarpal fracture (Exhibit A-2).   It was my opinion that Mr. Gachett required specialized orthopedic care and possibly surgery on his hand.  Accordingly, I referred him that day to Dr. Tai Chung, an orthopedic surgeon in Montgomery, Alabama, for any and all necessary medical care (Exhibit A-3 thru A-10).  Pursuant to my referral, Mr. Gachett was seen that same day (October 11, 2006) by Dr. Chung in his office.  Dr. Chung's medical records that are contained within my chart show that Mr. Gachett was prescribed Vicodin for pain on the day of his referral (Exhibit A-3) and that surgery was performed the following day, i.e., October 12, 2006 (Exhibit A-6-7).

I have not rendered any further medical treatment to Mr. Gachett regarding his right hand since October 11, 2006.  He was referred to Dr. Chung for the injury to his hand; and at that time,

Mr. Gachett became Dr. Chung's patient for all treatment and follow up regarding his hand. At no time did I negligently, intentionally, wantonly, or with knowledge violate Mr. Gachett's constitutional rights or deny him medical care and treatment.

The medical services I provided to Mr. Gachett met the applicable standard of care for an internal medicine physician in private practice. At all times, the medical services I provided to Mr. Gachett met or exceeded the applicable standard of care.

I hereby certify that the medical records attached hereto relating to my care of Alfonza Gachett (Exhibit A-1) and the medical records sent to me as a result of my referrals (Exhibit A-2 thru Exhibit A-10) are a true and correct copy of the records which are made, received, and kept in the ordinary course of business.

DONE this 14th day of December, 2007.

_____
TAHIR SIDDIQ, M.D.


STATE OF ALABAMA
COUNTY OF BULLOCK

BEFORE ME, the undersigned notary public, personally appeared TAHIR SIDDIQ, M.D., who states to me that he is aware of the contents of the foregoing document and the he executed the same voluntarily.

SWORN TO AND SUBSCRIBED before me on this the 14th day of December, 2007.

_____
NOTARY PUBLIC
My Commission Expires: 02-18-2010

TRI-MED CENTER FOR FAMILY MEDICINE

PATIENT'S NAME _Coachett  Alfonzo_    AGE____    DATE OF SERVICE _10/11/06_

CHIEF COMP: _Swollen hand Since_ _10/9/06_
_Meds_

MEDS:  1 _____  2 _____  3 _____
       4 _____  5 _____  6 _____
       7 _____  8 _____  9 _____

ALLERGIES: _____

VITAL SIGNS: B/P _135/100_ PR _77_ RR____ T____ WT____ HT____ LMP____ G____ P____

SURGERIES:

PMHx:

SOCIAL Hx:
Smoking:
ETOH:
Substance Abuse:

MAMMOGRAM:

PAP SMEAR:

FAMILY Hx:

ROS
General:

HEENT:

CV:

Pulmonary:

GI:

GU:

Musculoskeletal:

Neuralgic:

Endocrine:

Hematologic:

_Rt Hand Swelling_

_tender_

_Swell_

_He fell_

_An' possibl swell_

_P wele box R_

Exhibit **A-1**

# BULLOCK COUNTY HOSPITAL
102 West Conecuh Ave
Union Springs AL 36089
PHONE: (334) 738-2140

| | |
|---|---|
| PATIENT: GACHETT, ALFONZA | REFERRING PHYSICIAN: SIDDIQ, MD, TAHIR |
| DATE OF BIRTH: 09/07/1963 | PHONE: |
| MRN: BCH10093 | ACCESSION NUMBER: 00125497 |
| EXAM DATE: 10/11/2006 | |

**EXAM: XR RIGHT HAND (COMPLETE)**

HISTORY: Fall.

RIGHT HAND:

Three views the right hand dated 10/11/2006 demonstrates mildly displaced comminuted fracture through the base of the right fifth metacarpal with mild dorsal angulation at the fracture site. There is an oblique fracture through the proximal fourth metacarpal with slight dorsal angulation at the fracture site. There is suggestion of an old, well-healed midshaft right third metacarpal fracture. Otherwise, no acute osseous abnormality is identified. The phalanges and carpal bones are within normal limits. Soft tissue swelling is noted.

IMPRESSION:
RIGHT FOURTH AND FIFTH METACARPAL FRACTURES, AS DESCRIBED ABOVE, WITH ASSOCIATED OVERLYING SOFT TISSUE SWELLING.

RAJA P. REDDY, MD

10/11/2006 05:54 PM

Exhibit **A-2**

**ALFONZO GACHETT**          **OFFICE VISIT**               **OCTOBER 11, 2006**

**CHIEF COMPLAINT:**  The patient is a 46 year-old right hand dominant gentleman referred from the Bullock County Correctional Facility with complaint of right hand pain after he fell on it yesterday.  He has had two or three injuries to this hand in the past.  The last fracture being five years ago.

**MEDICAL HISTORY:** Is not remarkable for any serious illness.

**MEDICATIONS:** None.

**ALLERGIES:** None.

**EXAMINATION:** The right elbow and right wrist are non-tender.  The right hand has swelling and tenderness over the dorsum.  He can wiggle the tips of the fingers.  Sensation is okay to light touch.  Radial pulse is present.  X-rays show fractures of the fourth and fifth metacarpal shafts with volar angulation of the distal fragments of about 40 degrees or so.  There is evidence of an old healed fracture of the third metacarpal shaft.

**IMPRESSION:** Fracture of right hand fourth and fifth metacarpal shafts.

**PLAN:** Discuss options with him.  He wants to have these operated on.  I have discussed ORIF or closed reduction and pinning.  Risks of surgery include anesthesia, infection, neurovascular and tendon damage, bony nonunion, incomplete resolution of symptoms and return of function in the hand.  He understands and wishes to proceed with surgery. Vicodin for pain.  Wrist brace for support

_____
Tai Q. Chung, M.D.


**ALFONZA GACHETT**          **OFFICE VISIT**               **NOVEMBER 01, 2006**

**CHIEF COMPLAINT:** This is follow-up of ORIF of right fourth and fifth metacarpals.  No complaint.

**EXAMINATION:** Wounds are clean.

**PLAN:** Remove sutures.  Re-apply splint.  Exercise out of the splint many times a day.  No heavy use.  See me in a month with x-rays of the hand.

_____
Tai Q. Chung, M.D.

**TQC/rpk**

Exhibit **A-3**

**East Montgomery Imaging Center**
6880 Winton Blount Blvd.
Montgomery, AL 36117
Phone (334) 277-1210
Fax (334) 277-1781

John H. Payne, III, M.D.
David C. Montiel, M.D.
Terry D. Williams, M.D.
Joseph M. Bailey, M.D.
David B. Neeland, M.D.
Thomas S. Moore, M.D.
Jason H. Dorey, M.D.
Byron C. Mathen, M.D.

Daniel S. Noyes, D.O.
Mark E. LeQuire, M.D.
Gordon Smith, M.D.
Christopher Dorvault, M.D.
Philip S. Piasecki, M.D.
David M. Downs, M.D.
Roland Ng, M.D.
Gary Leung, M.D.

Mary M. Karst, M.D.
Paul Hutchinson, M.D.
Oscar F. Orille, M.D.
Eva Rabio, M.D.
Ronald D. Waters, M.D.
John G. Kahler, M.D.

| Patient: GACHETT, ALFONZA | DOB: 09/07/63 | Age: 043 |
|---|---|---|
| Exam: HAND 3 VIEWS | Procedure Date: 12/06/06 | Film#: 0806667 |
| Referring Physician: TAI CHUNG, M.D. | | Acct#: 000132617 |

RIGHT HAND:

HISTORY: Fracture

FINDINGS: There are fractures of the right fourth and fifth metacarpals which have been operative of repair with surgical plates and screws. There is also a fracture of the mid third metacarpal which appears to have undergone healing.

IMPRESSION:

**Fractures of the third through fifth metacarpals as described above, status post ORIF.**

Radiologist:     RONALD D. WATERS, M.D.

Technologist:     Michael McMenamin, RT (R)
Transcribed by TONYA on 12/06/2006 at 02:57 PM / 50472

Page 1 of 1

Exhibit **A-4**

**ALFONZA GUCHETT**          **OFFICE VISIT**          **DECEMBER 06, 2006**

**CHIEF COMPLAINT:** This is follow-up of ORIF of right fourth metacarpal and fifth metacarpal fractures. He still has some stiffness.

**EXAMINATION:** There is well-healed surgical incisions. He can extend the fingers. He can flex to about 60 degrees or so. X-rays show that the fractures and metal hardware are in good position.

**PLAN:** Continue exercises. See me in two months with x-rays of the hand.

Tai Q. Chung, M.D.

TQC/rpk

---

**ALFONZA GUCHETT**          **OFFICE VISIT**          **MARCH 16, 2007**

**CHIEF COMPLAINT:** This is follow-up of ORIF of right fourth and fifth metacarpal fractures. He still has some pain, but over all, is doing well.

**EXAMINATION:** Wounds are clean. There is no tenderness at the fracture site. He can fully extend his fingers and fully flex the fingers and make a full fist. X-rays show that the fractures are healing.

**PLAN:** Continue exercises. Return to see me as needed.

Tai Q. Chung, M.D.

TQC/rpk

Exhibit **A-5**

**Baptist Medical Center East - Montgomery**
400 Taylor Road, Montgomery, Alabama 36104, Telephone: (334)-277-8330

## OPERATIVE REPORT

| | | |
|---|---|---|
| **PATIENT NAME:** GACHETI, ALFONZA | **MR #:** | 292005 |
| **DOB:** 09/07/1963 | **ACCT #:** | 628500114 |
| **ROOM:** | **ADM DATE:** | 10/12/2006 |
| **PHYSICIAN:** TAI Q. CHUNG, M.D. | **DISC DATE:** | |

**DATE OF PROCEDURE:** 10/12/2006

**PREOPERATIVE DIAGNOSIS:** Fracture of the right fourth and fifth metacarpal

**POSTOPERATIVE DIAGNOSIS:** Fracture of the right fourth and fifth metacarpal

**OPERATION:** Open reduction and internal fixation of the right 4th and 5th metacarpals.

**SURGEON:** Tai Q. Chung, M.D.

**ANESTHESIA:** General

**ESTIMATED BLOOD LOSS:** Less than 5 mL.

**TOURNIQUET TIME:** 67 minutes.

**INDICATIONS FOR PROCEDURE:** The patient is a 43-year-old right hand dominant gentleman with angulated fracture of the right 4th and 5th metacarpals

**PROCEDURE:** The patient was placed under satisfactory general anesthesia. The right arm was prepped with Betadine and draped free in the usual fashion. The arm tourniquet was inflated to 250 mmHg. A 5 cm long incision was made longitudinally, in the interval between the 4th and 5th metacarpals. The extensor tendons were retracted out of harms way. The muscles were reflected subperiosteally off the dorsum of both of the bones. The fracture was reduced and held in place with 2 _____ plates. These plates were held onto the bones with 3.5 mm cortical screws. The C-arm image intensifier was used to verify good reduction and fixation of the fracture. The wound was irrigated. The muscles were closed over the bones with 3-0 Monocryl sutures. The subcutaneous tissues were otherwise closed. Skin was closed with a running 4-0 nylon stitch

Baptist Medical Center East - Montgomery

## OPERATIVE REPORT

**NAME:** GACHETT, ALFONZA          **MR #:** 292005
**PHYSICIAN:** TAI Q. CHUNG, M.D.

Then, 10 mL of 0.25% Marcaine were injected into the operative area. Steri-strips were applied. Tourniquet was deflated. A dorsal short arm plaster splint was applied. The patient was then awakened and returned to the recovery room in stable condition

TAI Q. CHUNG, M.D.

TR: TC /PP  D: 10/12/2006 16:40:00  T: 10/13/2006 01:34:43  JOB: 7767929 /28034

**OPERATIVE REPORT**                                    Page 2 of 2
Copy For TAI Q. CHUNG, M.D.

Exhibit **A-7**

## BAPTIST MEDICAL CENTER EAST
400 Taylor Road
Montgomery, AL 36117
(334) 277-8330

Name: GACHETT, ALFONZA

MR#: E000292005
Sex: Male
DOB: 9/7/63

Account: E0628500114
Admit: 10/12/06
Room Bed: -

Admit Type: Outpatient Surgery
Discharge Date:
Age: 43 years
SS Number: 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
Admitting Physician: Chung, Tia Q. MD

---

### R a d i o l o g y

Procedure Name:
DX Hand AP & Lat Left

Accession Number:
DX-06-01 14583

Procedure Date / Time:
10/12/2006 4 19 28 PM

Ordering Physician:
Chung, Tia Q. MD

## Reason for exam:
fx to right hand

## FINDINGS
GACHETT, Alfonza
LEFT HAND, AP AND LATERAL

Two spot films are taken with the C-arm in the OR   The fourth and fifth digits have orthopedic plates and screws transfixing fractures.  They appear to be in satisfactory alignment for healing.  No other abnormality is noted.

## IMPRESSION:
ORTHOPEDIC PLATES AND SCREWS TRANSFIX FRACTURES OF THE FOURTH AND FIFTH DIGITS.   JHD

ELECTRONICALLY SIGNED BY: Dorey Jason B, MD

TECHNOLOGIST: DLH
TRANSCRIBED DATE AND TIME: 10/12/2006 14:56
TRANSCRIPTIONIST: pp

MR#: E000292005
Printed: 10/12/2006 7 01 PM
Name: GACHETT, ALFONZA

Room Bed: -
Sex: Male

Page 1 of 1
c umulative

Account: E0628500114
DOB: 9/7/63

Exhibit A-8

**Baptist Medical Center East - Montgomery**
400 Taylor Road, Montgomery, Alabama 36104, Telephone: (334)-277-8330

## PREOPERATIVE HISTORY AND PHYSICAL

| | | | |
|---|---|---|---|
| **PATIENT NAME:** | GACHETT, ALFONZA | **MR #:** | 292005 |
| **DOB:** | 09/07/1963 | **ACCT #:** | 628500114 |
| **ROOM:** | | **ADM DATE:** | 10/12/2006 00:00 |
| **PHYSICIAN:** | TAI Q. CHUNG, M.D. | | |

**ADMISSION DIAGNOSIS:** 1.    Fracture of right 4th and 5th metacarpals.

**HISTORY OF PRESENT ILLNESS:** The patient is a 43 -year-old right hand dominant gentleman, who has angulated fracture of the 4th and 5th metatarsal shafts of the right hand. He is now admitted for reduction and fixation. He has had 2 or 3 fractures in this hand in the past.

**MEDICAL HISTORY:** Not remarkable for any serious medical illness.

**MEDICINES:** None

**ALLERGIES:** None

**EXAMINATION:** HEAD AND NECK: Normocephalic. Atraumatic. EOMI. PERRLA.
LUNGS: Clear to auscultation
HEART: S1. S2.
ABDOMEN: Bowel sounds are normal, soft, nontender.
NEURO: CNS 2-12 within normal limits, Motor and sensory are within normal limits.
MUSCULOSKELETAL: Right hand is swollen. There is tenderness at the 4th and 5th metacarpal shafts, he can wiggle the tips of the fingers  Sensation is good to light touch.  X-rays showed an angulated fracture of the 4th and 5th metacarpal shaft. There is an old healed fracture of the 3rd metacarpal shaft.

**IMPRESSION:** Fractures of right 4th and 5th metacarpal shaft.

**PLAN:** Reduction and fixation. Risks of surgery have been discussed with him, including anesthesia, infection, vascular and tendon damage, bony non-union. Incomplete resolution of symptoms, return of function in the hand. He understands and wishes for surgery.

_____

TAI Q CHUNG, M.D.

TR: TC /PP  D: 10/11/2006 16:25:00  T: 10/11/2006 17:16:58  JOB: 7760153 /26916

Exhibit **A-9**

EMIC TRANSCRIPTION    Fax:3542776060    Mar 16 2007  14:27  P.01



**East Montgomery Imaging Center**
6880 Winton Blount Blvd.
Montgomery, AL 36117
Phone (334) 277-1210
Fax (334) 277-1781

John R. Payne, III, M.D.
David C. Montiel, M.D.
Terry D. Williams, M.D.
Joseph M. Bailey, M.D.
David B. Neeland, M.D.
Thomas S. Moore, M.D.
Jason R. Dorey, M.D.
Byron C. Machen, M.D.

Daniel S. Noyes, D.O.
Mark H. LeQuire, M.D.
Gordon Smith, M.D.
Christopher Dorvault, M.D.
Philip S. Piasecki, M.D.
David M. Downs, M.D.
Roland Ng, M.D.
Gary Leung, M.D.

Mary M. Karst, M.D.
Paul Hutchinson, M.D.
Oscar P. Orille, M.D.
Eva Rubin, M.D.
Ronald D. Waters, M.D.
John C. Kahler, M.D.

| Patient: GACHETT, ALFONZA | DOB: 09/07/63 | Age: 043 |
|---|---|---|
| Exam: HAND 3 VIEWS | Procedure Date: 03/16/07 | Film#: 0805667 |
| Referring Physician: TAI CHUNG, M.D. | | Acct#: 000132817 |

**RIGHT HAND:**

The examination reveals an old fracture of the third metacarpal now healed. The patient has had previous surgery with plates fixed in the 4th and 5th metacarpals, which appear to be in good position. The fingers are normal  I do not see any other abnormalities.

**IMPRESSION:**

1.  OLD FRACTURE THIRD METACARPAL AND PLATES AT THE 4TH AND 5TH METACARPALS.
2.  NO OTHER ABNORMALITY SEEN.

Radiologist    DAVID C. MONTIEL, M.D.

Technologist
Transcribed by ELIZABETH on 03/16/2007 at 12:02 PM JOB 66582

Exhibit **A-10**