**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| **ALFONZA GACHETT, #160757** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NO. 2:07cv902-WKW** |
| **vs.** | ) | |
| | ) | |
| **COUNTY COMMISSION OF** | ) | |
| **BULLOCK COUNTY, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANTS' SPECIAL REPORT

COME NOW the Bullock County Commission, Sheriff Raymond Rodgers,[1] Chief Jailer Curtis Pritchett, Corrections Officer Dorothy Thomas, Corrections Officer Annie L. Reynolds, Corrections Officer Ruby Thomas, Corrections Officer Veronica Harris, and Corrections Officer Johnnie Mae Martin, Defendants in the above-styled cause, and submit their Special Report to the Court. Defendants move that this Special Report be treated as a Motion for Summary Judgment, based on Defendants' arguments and the attached documentary evidence and affidavits.

## INTRODUCTION

On October 9, 2007, Plaintiff Alfonza Gachett filed a Complaint against the Bullock County Commission, the Bullock County Sheriff, and several Corrections Officers with the Bullock County Detention Center, alleging delayed and inadequate medical treatment while incarcerated at the Bullock County Detention Center and that such treatment amounts to cruel and unusual punishment. On October 10, 2007, the Magistrate Judge ordered Defendants to file a Special Report and Answer within forty (40) days of its Order, making them due by

---

[1] In Plaintiff's Complaint are three misspelled names – "Rogers," "Cutis Prichett," and "Saddiq." These names should be spelled "Rodgers," "Curtis Pritchett," and "Siddiq."

November 19, 2007.  On November 13, 2007, Defendants requested a thirty (30) day extension of time to file their Special Report, which was granted the next day, making the Special Report due by December 19, 2007.

Having been charged with kidnapping and domestic violence assault in the first degree for taking his wife forcibly and raping her, Plaintiff was originally arrested in Tallapoosa County in September of 2006 and later transferred to the Bullock County Detention Center.  (Exhibit A, Plaintiff's Arrest Documents, "Arrest Docs"; Exhibit D, Affidavit of Chief Jailer Curtis Pritchett, " Pritchett aff.," ¶ 4.)

## PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that while incarcerated at the Bullock County Detention Center, he should have received better or more timely medical treatment for a broken hand.  Plaintiff also complains about certain conditions of his disciplinary confinement.  He states in his Complaint that he wants the Court to "award me $750,000.00 for violations of civil rights, to prove to the court for justice and relief, pain, suffering, damage's[sic], attorney fee's[sic], compensatory." (Plaintiff's Complaint, § VI.)  However, Plaintiff makes no constitutional, statutory, or other legally based claims.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S ALLEGATIONS

Defendants are uncertain as to what federal claim Plaintiff has made against them. Construing Plaintiff's Complaint in the most generous light possible, it appears that he is making a claim for deliberate indifference with respect to medical treatment for his dislocated/broken finger.  If Plaintiff is claiming that he was treated with deliberate indifference with respect to his medical care while incarcerated or any other constitutional or statutory claim, then Defendants deny the allegations made against them by Plaintiff as being untrue and completely without basis in law or fact.  Separate from his deliberate indifference claims, Plaintiff may also be claiming

that the jail's conditions are cruel and unusual. Defendants deny that they acted, or caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled. Defendants also raise the defenses of Eleventh Amendment immunity, qualified immunity, Plaintiff's failure to comply with the Prison Litigation Reform Act, and additional defenses presented below. (Ex. A, Arrest Docs; Ex. B, Health Care Policy, Section 11; Exhibit C, Affidavit of Sheriff Raymond Rodgers, "Rodgers aff.;" Ex. D, "Pritchett aff.;" Ex. E, Affidavit of Corrections Officer Dorothy Thomas, "D. Thomas aff.;" Exhibit F, Affidavit of Corrections Officer Johnnie Mae Martin, "Martin aff.;" Exhibit G, Affidavit of Corrections Officer Annie L. Reynolds, "Reynolds aff.;" Exhibit H, Affidavit of Corrections Officer Veronica Harris, "Harris aff.;" Exhibit I, Affidavit of Corrections Officer Ruby Thomas, "R. Thomas aff.;" Exhibit J, Plaintiff's Jail Medical Records, "Med. Rec;" Exhibit K, Incident Reports on Plaintiff's Fighting, "Incident Reports.") Defendants reserve the right to add additional defenses if any further pleading is required or allowed by the Court.

Plaintiff has received extensive medical care for the treatment of his hand, totaling more than eight thousand dollars, for an injury sustained while fighting. (Ex. C, Rodgers aff., ¶ 3; Ex. D, Pritchett aff., ¶¶ 7, 16; Ex. E, D. Thomas aff., ¶ 5; Ex. K, Incident Reports.) Contrary to what he alleges in his Complaint, Plaintiff has received adequate and prompt treatment and pain reliever medication for his hand, and even if the treatment was not to the Plaintiff's specifications, it has caused Plaintiff no serious injury.

I.    FACTS

    A.    Policy and Procedure Regarding Medical Treatment

        The Bullock County Detention Center has policy and procedures governing inmates' and detainees' access to medical care. (Ex. B, Section 11, "Health Care Services;" "Ex. C, Rodgers aff., ¶¶ 7, 8; Ex. D, Pritchett aff. ¶¶ 5, 6.) Only medical professionals may treat and

prescribe and explain medical procedures to inmates.  Title 11.02 deals with "Consent for Medical Treatment" and states:

> "No member of the Detention Center staff will explain any risks or consequences involved in any medical procedure to an inmate.  The responsibility for this explanation rests solely with the health care provider.

(Ex. B, Section XI, "Health Care Services," § 11.02.)  According to Title 11.08, ¶ 1.f, Bullock County Detention Center Policy and Procedures Manual:  "All indigent inmates will be treated by the health care providers normally utilized by the facility."  When an inmate is injured and it is not an obvious emergency, Chief Jailer Pritchett contacts a local physician, who instructs him as to what to do and whether to transport the inmate.  In a true emergency, Mr. Pritchett would take the inmate to the emergency room.  Neither Bullock County nor the Bullock County Detention Center has any agreement with a particular doctor to provide those services.

### B.     Medical Treatment of Plaintiff

The main events involving the treatment of the Plaintiff were as follows:  On either October 8 or 9, 2007, Plaintiff was involved in a fight with an inmate named Ifraty, and while attempting to strike Ifraty, who was on the floor, Plaintiff hit the cement floor with his fist.  (Ex. C, Rodgers aff., ¶ 3; Ex. D, Pritchett aff., ¶ 7; Ex. E, D. Thomas aff., ¶ 5; Ex. F, Martin aff., ¶ 5; Ex. H, Harris aff., ¶ 6; Ex. I, R. Thomas aff., ¶ 5.)  According to the Detention Center staff, Plaintiff did not complain about his injured hand on the day of the injury.  (Ex. D, Pritchett aff., ¶ 7, 8; Ex. F, Martin aff., ¶ 5; Ex. G, Reynolds aff., ¶ 5; Ex. H, Harris aff., ¶ 5; Ex. I, R. Thomas aff., ¶ 5.)  Plaintiff did not display or complain about any inordinate pain, even after reporting the injury to the staff.  (Ex. D, Pritchett aff., ¶ 7, 8.)

The day he learned of Plaintiff's injury, Mr. Pritchett took him to see a local physician named Dr. Tahir Siddiq, who had x-rays taken, determined that Plaintiff had fractured his hand, and referred him to an Orthopedic Surgeon in Montgomery named Dr. Tai Chung.  (Ex. D,

Pritchett aff, ¶ 8; Siddiq aff., Dr. Siddiq's Special Report.)   On the same day, Administrator Pritchett took Plaintiff to Montgomery to see Dr. Chung.  (Ex. D, Pritchett aff., ¶ 7.)   On October 12, 2006, and after he had explained the procedure and its risks to Plaintiff on October 11th, Dr. Chung performed surgery upon Plaintiff's hand – "open reduction and internal fixation of the right 4th and 5th metacarpals."  (Exhibits to Siddiq aff., Dr. Siddiq's Special Report.) Dr. Chung saw Plaintiff again on November 1, 2006 for a follow-up visit after Plaintiff's surgery on October 12, 2006 and stated that after removing the sutures, there was "[n]o complaint." (Exhibits to Siddiq aff., Dr. Siddiq's Special Report.)   Dr. Chung saw Plaintiff again on December 6, 2006 and stated in his Examination notes that Plaintiff can "extend the fingers" and "can flex to about 60 degrees or so.  (Exhibits to Siddiq aff., Dr. Siddiq's Special Report.) Dr. Chung stated:  "There is well-healed surgical incisions. . . . X-rays show that the fractures and metal hardware are in good position."  (Exhibits to Siddiq aff., Dr. Siddiq's Special Report.) Plaintiff saw Dr. Chung again on March 16, 2007, and in his notes, Dr. Chung stated that Plaintiff "still has some pain, but over all, is doing well" and that he "can fully extend his fingers and fully flex the fingers and make a full fist."  (Exhibits to Siddiq aff., Dr. Siddiq's Special Report.)  Dr. Chung stated in his notes in March of 2007 that the "X-rays show that the fractures are healing," and the Radiologist, Dr. David Montiel, stated that other than old fractures, he did "not see any other abnormalities."  (Exhibits to Siddiq aff., Dr. Siddiq's Special Report.)

While incarcerated at the Bullock County Detention Center, Plaintiff received pain medication prescribed by a medical doctor. (Ex. B, Health Care Policy; Ex. D, Pritchett aff.; Siddiq aff., Defendant Siddiq's Special Report.)  For example, Dr. Chung prescribed Vicodin for Plaintiff on October 11, 2006.  (Dr. Chung Notes, October 11, 2006, Exhibits to Siddiq aff., Dr. Siddiq's Special Report; Ex. D, Pritchett aff., ¶ 9.)   Plaintiff received frequent and regular medication from the staff of the Bullock County Detention Center.  (Ex. J3, Medication and

Treatment Record; Ex. J4, Pain Relievers Medication and Treatment Records; Ex. D, Pritchett aff., ¶ 9.)

### C.    Grievance Procedure

Internal grievance procedures at the Bullock County Jail are available to all inmates. It is the policy of the Bullock County Sheriff's Department that inmates are permitted to submit grievances and that each grievance will be acted upon. If the inmate is dissatisfied with the Jail Administrator's answer to a Grievance, that inmate may appeal the decision to the Sheriff. (Ex. C, Rodgers aff., ¶ 9; Ex. D, Pritchett aff., ¶ 15.) Plaintiff did not lodge a complaint about his medical treatment or any other condition listed in his federal Complaint with either Administrator Pritchett or Sheriff Rodgers. (Ex. C, Rodgers aff., ¶ 9; Ex. D, Pritchett aff., ¶ 15.)

### D.    Disciplinary Actions Regarding Plaintiff

Plaintiff engaged in frequent fighting with other inmates, which resulted in frequent transfers to other cell blocks or to the disciplinary cell, D Cell, when the Detention Center ran out of cell blocks, in which Plaintiff could be housed without facing an altercation with another inmate. (Ex. D, Pritchett aff., ¶ 10; Ex. F, Martin aff., ¶ 6; Ex. G, Reynolds aff., ¶ 6; Ex. H, Harris aff., ¶ 6; Ex. I, R. Thomas aff., ¶ 6; Ex. E, D. Thomas aff., ¶ 5.) D Cell has not had sewage problems, and even if it had, when a jail cell has a toilet back-up problem, the staff corrects the problem promptly. (Ex. D, Pritchett aff., ¶ 11; Ex. F, Martin aff., ¶ 6; Ex. G, Reynolds aff., ¶ 6; Ex. H, Harris aff., ¶ 6; Ex. I, R. Thomas aff., ¶ 6; Ex. E, D. Thomas aff., ¶ 5.) Inmates housed in D Cell have outdoor time as well as other inmates in the Detention Center. (Ex. D, Pritchett aff., ¶ 11; Ex. F, Martin aff., ¶ 6; Ex. G, Reynolds aff., ¶ 6; Ex. H, Harris aff., ¶ 6.) D Cell formerly had a window until inmates used it to send messages outside the Detention Center and to receive contraband from outside the Detention Center. After that, the Detention Center welded a metal plate over the window. (Ex. D, Pritchett aff., ¶ 11; Ex.

F, Martin aff., ¶ 6; Ex. G, Reynolds aff., ¶ 6; Ex. H, Harris aff., ¶ 6; Ex. I, R. Thomas aff., ¶ 6.)

Only corrections officers can hand out and supervise the giving of medications to inmates, and

the officers followed that Detention Center rule.  (Ex. D, Pritchett aff., ¶ 11; Ex. F, Martin aff., ¶

6; Ex. G, Reynolds aff., ¶ 6; Ex. H, Harris aff., ¶ 6; Ex. I, R. Thomas aff., ¶ 6.)

The Bullock County Detention Center has been painted, but the inmates peel the paint off

the wall.  (Ex. D, Pritchett aff., ¶ 11; Ex. F, Martin aff., ¶ 6.)  Mr. Pritchett has provided Plaintiff

with law books he has requested and has even allowed Plaintiff to use a separate room at the

front of the Detention Center, where Plaintiff could study said law books without interruption.

(Ex. F, Martin aff., ¶ 7.)  Plaintiff is not entitled to all receipts, expenditures, and balances of

assets for the Detention Center.  (Ex. D, Pritchett aff., ¶ 13.)  Plaintiff could have requested that a

Notary Public come to the Detention Center during visitation hours on Sunday.  (Ex. D, Pritchett

aff., ¶ 12.)  The Detention Center, and specifically Mr. Pritchett, took Plaintiff back to the doctor

for several follow-up visits for his hand; however, Plaintiff sought narcotic pain medication, a

prescription the doctor did not consider warranted by Plaintiff's condition.  (Ex. D, Pritchett aff.,

¶ 13.)  Therefore, any denial of care demanded by Plaintiff only occurred because of the

instructions or orders of a qualified medical professional.  (Ex. D, Pritchett aff., ¶ 13.)

## II.    LAW

**A.    All Claims By Plaintiff Against Defendant are Due to be Dismissed because Plaintiff Failed to Set Forth a Claim in his Pleading in "a short and plain statement of the claim showing that the pleader is entitled to relief" in Violation of Fed. R. Civ. P. 8, and Plaintiff's Complaint does not meet the heightened pleading standard imposed by Eleventh Circuit precedent.**

Under the heightened pleading standard, "the plaintiff must provide a greater degree of

factual specificity than is ordinarily necessary under the notice pleading approach of the Federal

Rules of Civil Procedure. Hunter v. Dist. of Columbia, 943 F.2d 69, 75 (D.C. Cir. 1991) (citation

omitted)."

> "[T]his circuit, along with others, has tightened the application of Rule 8 with respect to § 1983 cases in an effort to weed out nonmeritorious claims, requiring that a § 1983 plaintiff allege with some specificity the facts which make out its claim. Some factual detail in the pleadings is necessary to the adjudication of § 1983 claims."

Swann v. S. Health Partners, Inc., 388 F.3d 834, 838 (11th Cir. 2004) (citing Laurie v. Ala. Court of Crim. App., 256 F.3d 1266, 1275-76 (11th Cir. 2001), and Kyle K. v. Chapman, 208 F.3d 940, 944 (11th Cir. 2000), for the proposition that "the heightened pleading standard is only applicable in § 1983 suits against individuals for whom qualified immunity is available.").

### 1. Plaintiff's Complaint Alleges No Constitutional, Statutory, or Common Law Violation of Federal or State law.

Plaintiff's Complaint states he fell and broke his hand because of "2 frozen gallon jug's [sic] of leaking water" and that the Bullock County Detention Center delayed for three days to give him medical treatment. (Plaintiff's Complaint, p. 2.) Plaintiff also alleges that Dr. Siddiq, a local doctor in Union Springs used by the Bullock County Detention Center, provided him inadequate pain medication. (Plaintiff's Complaint, p. 2.) Plaintiff appears to claim that he suffered from cruel and unusual punishment in the disciplinary cell and that the Detention Center prevented him from "filing against the jail and inmates and maintaining jail condition." (Plaintiff's Complaint, p. 2.) Plaintiff alleges no constitutional, statutory, or common law violation of federal or state law. He did not allege that he filed a Grievance with the Bullock County Detention Center, nor did he explain with specificity how Defendants would know that he needed more medical care or what they should have done to provide such care, something that is essential for a claim of deliberate indifference. (Plaintiff's Complaint, pp. 2-3.) Plaintiff does not contend that Defendants were deliberately indifferent to his medical condition, nor does he contend that his injury was so serious that it would be obvious to the Defendants that he needed more medical care than he was provided. (Plaintiff's Complaint, pp. 2-3.) Nor does he contend that he faced a substantial risk of serious harm as a result of the Detention Center's treatment of

his hand injury, nor does he allege that he suffered any detrimental effect from any delay in treatment, nor does he explain how Defendants would have known that their conduct was deliberately indifferent to Plaintiff's condition.  (Plaintiff's Complaint, pp. 2-3.)

The Plaintiff's allegations plainly illustrate the reason that the heightened pleading standard demands that a plaintiff set out his contentions as specifically as possible when qualified immunity is asserted, which the County, the Sheriff, and the Corrections Officers assert, infra.  See GJR Investments, Inc., 132 F.3d at 1368 ("Some factual detail in the pleadings is necessary to the adjudication of [federal] claims.  This is particularly true in cases involving qualified immunity, where we must determine whether a defendant's actions violated a clearly established right."); Gonzalez, 325 F.3d at 1235 ("The complaint must allege the relevant facts 'with some specificity.'").  In discussing the heightened pleading standard, the Eleventh Circuit has condemned pleadings in which the plaintiff uses "broad pejorative words to describe the defendants' intentions without giving any specifics." Id. at 1368.

At the motion to dismiss stage, "the qualified immunity inquiry and the Rule 12(b)(6) standard become intertwined….If a plaintiff has not sufficiently alleged a violation of *any* constitutional right, it is axiomatic that the plaintiff likewise has failed to allege the violation of a 'clearly established' right." Id. at 1366-67.  Regardless of which pleading standard is used to analyze the Plaintiff's claim, federal or Alabama, the result is the same: a failure to state a claim upon which relief may be granted.  See Warden v. Thigpen, 563 So. 2d 1021, 1022 (Ala. 1990) (affirming dismissal of *pro se* inmate's complaint where inmate did not state a cause of action, "even under our liberal pleading standards").  The Plaintiff's allegation is particularly deficient, however, under the heightened pleading standard applicable to cases involving qualified immunity. Id. at 1368 ("Accordingly, when reviewing a district court's disposition of a motion to dismiss a…claim on qualified immunity grounds, we are guided both by the regular 12(b)(6)

standard and by the heightened pleading requirement."). Consequently, this allegation fails to satisfy the heightened pleading standard and is due to be dismissed; alternatively, Defendants, Rodgers, Pritchett, Dorothy Thomas, Ruby Thomas, Reynolds, Harris, and Martin, are entitled to qualified immunity as the Plaintiff has failed to state a constitutional violation or demonstrate that his rights were "clearly established."

### 2. Plaintiff's failure to exhaust all administrative remedies fails not comply with the Prison Litigation Reform Act and bars the Complaint.

The Plaintiff seeks monetary damages to compensate him for the alleged deprivations of his constitutional rights. However, the Plaintiff's claims against the Defendants are meritless, as the Plaintiff has failed to exhaust his remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).

> The Prison Litigation Reform Act requires exhaustion of administrative remedies before a prisoner can seek relief in federal court in a § 1983 action. 42 U.S.C. § 1997e(a) directs that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "As a result [of § 1997e(a)], when a state provides a grievance procedure for its prisoners . . . an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." Brown v. Sikes, 2000 WL 679141 (11th Cir. 2000); see Alexander v. Hawk, 159 F.3d 1321 (11th Cir. 1998). Moreover, exhaustion of all available administrative remedies is a precondition to litigation and the court cannot waive the exhaustion requirements. Alexander, 159 F.3d at 1325. Thus, the plaintiff is required to exhaust his administrative remedies prior to bringing this litigation.

Bell v. Riley, Civil Action No. CV-00-D-731-E, Recommendation of Magistrate Judge Coody, Middle District of Alabama, pp. 3-4.

The Prison Litigation Reform Act (PLRA) was enacted to stem the tide of frivolous and meritless claims of the incarcerated. Before the PLRA, 28 U.S.C. § 1915(d) allowed district courts to dismiss a complaint if it was satisfied that the action was frivolous or malicious. After

the PLRA was enacted, it changed § 1915 in three significant ways.  See Bilal v. Driver, 251 F.3d 1346, 1348 (11th Cir. 2001).  First, dismissal is now mandatory.  Id.  Second, the word "satisfied" has been replaced with "determined."  Id.  Third, the complaint now may also be dismissed under § 1915 for failure to state a claim.  Id.  In short, the court should dismiss the Plaintiff's Complaint if it is frivolous, malicious, or fails to state a claim.

Internal grievance procedures at the Bullock County Jail are available to all inmates.  It is the policy of the Bullock County Sheriff's Department that inmates are permitted to submit grievances and that each grievance will be acted upon.  (Ex. C, Rodgers aff., ¶ 9; Ex. D, Pritchett aff., ¶ 14.)

In addition to the grievance procedure at the local level, Alabama law provides the opportunity to file a claim and proceed before the State of Alabama Board of Adjustment pursuant to Ala. Code § 41-9-60 et seq.  The State of Alabama has provided an administrative remedy for the recovery of money damages through the State of Alabama Board of Adjustment.  A claimant "shall have the right to file and prosecute his claim before the board in person or by counsel or agent of his own choice, whether such agent be licensed to practice law or not."  Ala. Code § 41-9-63.  The Sheriff of Bullock County is a state officer and therefore entitled to sovereign immunity.  The chief jailer and deputy sheriffs are the alter ego of the Sheriff and, therefore, are entitled to the same sovereign immunity as the Sheriff.  See Lancaster v. Monroe County, Ala., 116 F.3d 1419, 1429 (11th Cir. 1998).  Due to this immunity, the State of Alabama has provided an administrative remedy for the recovery of money damages through the State of Alabama Board of Adjustment.  As a result of Plaintiff's failure to exhaust these two remedies, he is barred from bringing this action by § 1997e(a).  See Alexander v. Hawk, 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of prison action due to failure to exhaust

administrative remedies).[2]  Consequently, a claim for monetary damages against the Defendants

is, in essence, a claim against the State of Alabama.  See Hafer v. Melo, 502 U.S. 21, 25 (1991);

Lancaster v. Monroe County, Ala., 116 F.3d 1419, 1429 (11th Cir. 1997); see also Kentucky v.

Graham, 473 U.S. 159, 165-66 (1985).

The Board of Adjustment is a quasi-judicial, legislatively created body designed to have

"jurisdiction over claims against the state, colorable legally and morally well grounded, but not

justiciable in the courts because of the state's constitutional immunity."  See Lee v. Cunningham,

176 So. 477, 479 (Ala. 1937); see also, Vaughan v. Sibley, 709 So. 2d 482, 486 (Ala. Civ. App.

1997) (establishing board has "jurisdiction over claims against the state that are not justiciable in

the courts because of the state's constitutional immunity . . .").  The Plaintiff has not alleged that

he filed a claim with the State Board of Adjustment before filing suit in federal court, and so has

not exhausted his administrative remedies.   As a result, the Plaintiff's claims should be

dismissed.  Alexander v. Hawk, 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of

prison action due to failure to exhaust administrative remedies).

Under the Prison Litigation Reform Act ("PLRA"), an inmate is required to exhaust all

administrative remedies before instituting an action under 42 U.S.C. § 1983.  See 42 U.S.C.

---

[2] See Terry Shane Williams v. Cecil Reed, et al., United States District Court for the Northern District of Alabama, Middle Division, No. CV-99-BU-2938-M, slip op. at 3-4 (N.D. Ala. August 15, 2000) (adopted by district judge September 21, 2000) (dismissed the plaintiff's claims without prejudice for his failure to exhaust his administrative remedies at the DeKalb County Jail); Richard Dale Woodham v. Bill Lands, United States District Court for the Northern District of Alabama, Middle Division, No. CV-00-AR-0170-M, slip op. at 4-5 (N.D. Ala. November 7, 2000) (adopted by district judge December 4, 2000) (dismissed the plaintiff's claims without prejudice for his failure to exhaust his administrative remedies at the DeKalb County Jail); Quinton M. Johnson v. Sgt. Robinson, et al., United States District Court for the Middle District of Alabama, Eastern Division, No. CV-00-D-616-E, slip op. at 3-5 (M.D. Ala. January 12, 2001) (adopted by district judge January 31, 2001) (dismissing the plaintiff's claims without prejudice for his failure to exhaust his administrative remedies with the State of Alabama Board of Adjustment); David Wilson Bell, Sr. v. Tina Riley, et al., United States District Court for the Middle District of Alabama, Eastern Division, No. CV-00-D-731-E, slip op. at 4-5 (M.D. Ala. February 21, 2001)  (adopted by district judge March 20, 2001) (dismissing the plaintiff's claims without prejudice for his failure to exhaust his administrative remedies with the State of Alabama Board of Adjustment); Mitchell Lee Hicks v. Jack Day, et al., Circuit Court of Clarke County, Alabama, No. CV-00-280M, slip op. 1-3 (March 21, 2001) (dismissed the plaintiff's claims without prejudice for his failure to exhaust his administrative remedies with the State of Alabama Board of Adjustment); but see, Garner v. Weeks, No. 00-14582 (11th Cir. April 10, 2001).

§ 1997e(a).  The Plaintiff in this case has not alleged, and, in fact has not utilized two separate and distinct administrative remedies available to him.  First, Plaintiff has not exhausted the grievance procedures provided at the Bullock County Jail.   A review of the Plaintiff's inmate file reveals he has not made a complaint or grievance regarding any of the allegations contained in his Complaint.  Secondly, he has not alleged that he pursued any grievance through the State Board of Adjustment.  (Ex. C, Rodgers aff., ¶ 9; Ex. D, Pritchett aff., ¶ 15.)  Even if Plaintiff had fulfilled the requirement as to all the steps in the grievance procedure provided at the Bullock County Detention Center and been denied relief, it was incumbent upon Plaintiff to proceed further with the State Board of Adjustment procedure.  Plaintiff has not alleged that he pursued any grievance through the State Board of Adjustment.  See Brown v. Tombs, 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners to affirmatively show that they have exhausted administrative remedies).

For the above reasons, Plaintiff's Complaint should be dismissed under the PLRA, 42 U.S.C. § 1997e, for failure to exhaust his administrative remedies.

> **B.**     **All Claims by the Plaintiff against the Corrections Officer Defendants in their Official Capacities must fail based on Eleventh Amendment Immunity and because they are not "persons" under 42 U.S.C.A. § 1983.**

The Plaintiff has not stated in his Complaint whether his claims against these Defendants are in their official capacity or individual capacity.  Therefore, out of an abundance of caution, these Defendants analyze the Plaintiff's claims in light of both individual and official capacities.

The Plaintiff's claims against these Defendants in their official capacity are due to be dismissed for lack of subject matter jurisdiction, as such claims are barred by the Eleventh Amendment to the United States Constitution.  Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in

13

his official capacity is entitled to Eleventh Amendment immunity); Carr v. City of Florence, Ala., 918 F.2d 1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Lancaster v. Monroe County, 116 F.3d 1419, 1430-31 (11th Cir. 1997) (extending Eleventh Amendment immunity to include jailers employed by county sheriffs).

In addition, the official capacity claims must fail because 42 U.S.C. § 1983 prohibits a person, acting under color of law, from depriving another of his rights secured by the United States Constitution.  42 U.S.C. § 1983 (emphasis added).  The United States Supreme Court has held that state officials, in their official capacities, are not "persons" under § 1983.  Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).  Any claims against Sheriff Rodgers, Chief Jailer Pritchett, Officers Dorothy Thomas, Ruby Thomas, Veronica Harris, Johnnie Mae Martin, or Annie L. Reynolds, in their official capacity should therefore be dismissed because they are not "persons" under § 1983; therefore, claims against them in their official capacity fail to state a claim upon which relief can be granted.  Id.; Carr, supra at 1525 n. 3.  By virtue of their positions, Sheriff Rodgers and the officers working at the Detention Center are executive officers of the State of Alabama.  See art. V, § 112 of the Alabama Constitution of 1901; see also McMillian v. Monroe County, 520 U.S. 781 (1997) (holding that an Alabama sheriff represents the State of Alabama when executing law enforcement duties); Carr, supra; Hereford, 586 So. 2d at 210 (finding that deputy sheriffs enjoy immunity from suit as an extension of sheriff's immunity).

 

 

    **C.     A County Commission is Not Responsible for the Operations or Provision of Medical Care to the Inmates in a County Jail, which is the Responsibility of the Sheriff of that County; therefore, the Bullock County Commission is not a Proper Party in this Complaint.**

Both federal and state law are clear that the only duty that an Alabama county commission has with regard to its county jail is to build, maintain, and fund the jail.  See Marsh v. Butler County, 268 F.3d 1014, 1026 (11th Cir. 2001) (holding that Alabama law assigns counties a 'limited role in *building and funding* the jails.")  (emphasis added); see also Ala. Code 1975, § 11-14-10 ("Each county within the state shall be required to maintain a jail within their county."); King v. Colbert County, 620 So. 2d 623, 625 (Ala. 1993); Stark v. Madison County, 678 So. 2d 787, 788 (Ala. Civ. App. 1996).  The word "maintain" has been interpreted to require a county to "keep a jail and all equipment therein in a state of repair and to preserve it from failure or decline."  Keeton v. Fayette County, 558 So. 2d 884, 886 (Ala. 1989); accord King, 620 So. 2d at 625.

The Eleventh Circuit in Turquitt v. Jefferson County, Ala., sitting en banc, analyzed Alabama law with respect to whether Alabama counties possess any authority over the *operation of county jails or the supervision of jail employees or inmates*.  137 F.3d 1285, 1288-91 (11th Cir. 1998) (en banc).  In Turquitt the Eleventh Circuit found as follows:

> A thorough analysis of the Code reveals that no statute authorizes counties to supervise inmates in the county jails; instead, authority over inmates is expressly delegated to Alabama sheriffs.  Moreover, in operating the jails, sheriffs are subject to control by state executive agencies, not by counties.
>
> Under the Alabama Code, the sheriff has control over the inmates of the jail, the employees of the jail, and the jail itself.  The Code bestows upon the sheriff "the legal custody and charge of the jail in his county and all prisoners committed thereto."  Ala. Code § 14-6-1 (1995) [sic].  The Alabama Supreme Court has held that § 14-6-1 demonstrates that "the sheriff's authority over the jail is totally independent of the [county commission]."  King v. Colbert County, 620 So. 2d 623, 625 (Ala. 1993).  The sheriff appoints, directs, and controls the deputies and jailers who work at the jail.  Ala. Code § 14-6-105.  The County has no authority to manage the sheriff's employees.  See Lockridge v. Etowah County Comm'n, 460 So. 2d 1361, 1363 (Ala. Civ. App. 1984); see also Terry v. Cook, 866 F.2d 373, 379 (11th Cir. 1989) (finding that Alabama county commissioners have no authority to hire or fire deputies or jailers). . . .

15

We recognize that Alabama counties possess some duties with respect to county jails. However, none of these duties relates to the daily operation of the jails or to the supervision of inmates.

Id. at 1289.

Thus, under Alabama law, Walker County has no duty in regard to the operating, administering, or the overseeing of the Jail. The Commission has no duty, and can have no duty, with regard to the day-to-day operations of the jail. See Turquitt, 137 F.3d at 1288-1291; King, 620 So. 2d at 625 (holding county commission has no control over jail operations). The Commission has no authority to promulgate policies for the Jail. See Lockridge v. Etowah County Comm'n, 460 So. 2d 1361, 1363 (Ala. Civ. App. 1984) (holding that the county commission has no authority "to promulgate work rules for the employees of the sheriff's office, especially the sheriff's deputies"). Further, the County Commission has no duty or authority to make decisions regarding hiring, training, supervision, or firing employees for the Jail. See Dowdell v. Chapman, 930 F. Supp. 533, 549 (M.D. Ala. 1996) (holding that an Alabama county has no duty to train or supervise sheriffs or deputy sheriffs). Terry, 866 F.2d at 379 (finding "no authority in Alabama law granting the county commission the authority to hire and fire deputy sheriffs"); Stark v. Madison County, 678 So. 2d 787, 788 (Ala. Civ. App. 1996) (finding that an Alabama county has no responsibility for actions of the sheriff); Raspberry v. Johnson, 88 F. Supp. 2d 1319, 1325-26 (M.D. Ala. 2000) ("Under Alabama law, county commissioners have no power over the sheriff in matters related to law enforcement. Furthermore, county commissioners have 'no authority to manage the sheriff's employees.' ") (citations omitted).

Therefore, any claims based on the alleged inadequacies in the policies and procedures of the Jail regarding the provision of medical care to inmates, or alleged inadequacies in the operation of the Jail in general are due to be dismissed as a matter of law as to the Commission because, under federal and state law, it has no duty or authority with regard to these matters.

**C.     Plaintiff has failed to allege any personal involvement by Sheriff Rodgers and other Corrections Officers in the allegations against them; therefore, Sheriff Rodgers and the other Corrections Officers have not been sued under 42 U.S.C. § 1983 in their individual capacity.**

In order to present a cognizable claim against a public official in his individual capacity, the language of 42 U.S.C. § 1983 requires proof of an affirmative causal connection between the actions taken by the defendants and the constitutional deprivation.  Swint v. City of Wadley, 51 F.3d 988 (11th Cir. 1995).  The requisite causal connection may be shown by the personal participation of the defendant, a policy established by the defendant resulting in indifference to constitutional rights, or a breach of a duty imposed by state or local law which results in constitutional injury.  Zatler v. Wainwright, 802 F. 2d 397 (11th Cir. 1986).

The Plaintiff has alleged no actions in which these Defendants, with the exception of Administrator Pritchett, were personally involved with respect to the alleged lack of adequate medical treatment; therefore, he has made a claim against all but one defendant only for acts committed by them in their official capacity.  Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990).  For the Sheriff and these corrections officer to face liability as defendants in a § 1983 action, Plaintiff must allege actions against them in their personal, not their official, capacities. Plaintiff has offered no allegation demonstrating that these Defendants were in any way involved in the actions he claims were constitutionally infirm.  There are absolutely no facts – in fact, the Complaint is completely devoid of any allegation of personal involvement or even knowledge of the various conditions complained of on the part of the Sheriff and these corrections officers – to show that they personally participated in the claims made the basis of the Plaintiff's Complaint, nor does the Plaintiff allege specifically how these Defendants violated his constitutional rights.  As such and on this basis alone, Plaintiff's claims against these Defendants are due to be dismissed.

Plaintiff must show a causal connection between the Defendants and the alleged deprivation but may not do so using "respondeat superior."  Brown, supra, at 671.  To the extent

17

that Plaintiff's claim against Sheriff Rodgers is an attempt to hold him liable under a *respondeat superior* theory, his claim must similarly fail.

> [Supervisory] liability under § 1983 must be based on something more than a theory of *respondeat superior*. Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions and the supervising official and the alleged constitutional violation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.

Dolihite v. Maughon, 74 F.3d 1027, 1052 (11th Cir. 1996). There are no facts that show a causal connection between any action or inaction by Sheriff Rodgers and the alleged constitutional violations. Therefore, Plaintiff's claims against this Defendant are due to be dismissed.

Plaintiff may still show a causal connection between the alleged deprivation, even when there exists no personal involvement by a supervising official, like a sheriff or administrator of a corrections facility, but the abuse "must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Brown, supra, at 671. Plaintiff does not explain any other incidents of treatment or non-treatment to Plaintiff or any other inmate that these Defendants knew about or should have known about, nor does he allege that his injury or any indifference to Plaintiff or any other inmate was so obvious and blatant that these Defendants should have known about it. Therefore, Plaintiff has failed to show a causal connection and resulting cognizable injury based on Sheriff Rodgers' supervision of the Bullock County Detention Center. In his affidavit, other than inquiring as to Plaintiff's condition while incarcerated, the Sheriff denies that he had any personal involvement with the Plaintiff or any of the actions that form a part of the claims in his Complaint. (Ex. C, Rodgers aff., ¶ 3.) Because Plaintiff has failed to causally connect the Sheriff to a constitutional injury that forms the basis for the Complaint and has failed to show a causal connection between the Defendant's actions and any of the treatment or alleged non-treatment of Plaintiff's hand, Plaintiff has only sued him in his

official capacity.  Defendant has previously shown that he is entitled to Eleventh Amendment immunity based on a § 1983 action against him in his official capacity.  Therefore, even if Plaintiff's Complaint was adequate, which it is not, this Defendant is still entitled to judgment on the Complaint.  Because the other corrections officers, not including Mr. Pritchett, do not supervise the jail's staff and Plaintiff has not alleged any personal involvement by them, they also should be dismissed.

1.  **Except in cases of emergencies that are obvious even to laypersons, medical professionals, not the Sheriff and his Deputies, are to make decisions regarding medical treatment for inmates.**

With respect to the medical claims by Plaintiff, he has alleged no facts showing that Sheriff Rodgers or any other Corrections Officer named in his Complaint had any type of personal involvement or that they set any type of policy that would encourage poor medical treatment or that they neglected any obvious and flagrant abuses which occurred.  Any claim by Plaintiff regarding medical care fails against the Sheriff and the Corrections Officers because Sheriff Rodgers policy for the Bullock County Detention Center requires that professional medical personnel provide care to detainees and inmates.  (Ex. B, Title 11.02, "Healthcare Services," ¶ 2.)  Also, any claim by the Plaintiff as to inadequate medical care against Administrator Pritchett also fails for the same reason.  Plaintiff has failed to allege any specific failing on the part of the Sheriff, the Jail Administrator, or the other corrections officer at the Bullock County Detention Center for any medical treatment or non-treatment of his hand.  Therefore, Plaintiff's Complaint should be dismissed.

Even if Plaintiff could show some type of personal involvement by or Detention Center policy set by Sheriff Rodgers that caused or contributed to the non-treatment of Plaintiff's injury or condition, in order to prevail under 42 U.S.C. § 1983 on his medical claim, Plaintiff must demonstrate that Defendants were deliberately indifferent to a serious medical condition.

19

Because society does not expect that prisoners will have unqualified access to health care,
deliberate indifference to medical needs amounts to an Eighth Amendment violation only if
those needs are "serious." Hudson v. McMillian, 503 U.S. 1, 9 (1992).

> A serious medical need is one that has been diagnosed by a physician as
> mandating treatment or one that is so obvious that even a lay person would easily
> recognize the necessity for a doctor's attention. A prison or medical official may
> be held liable under the Eighth Amendment for actions with "deliberate
> indifference" to inmate health or safety only if he knows that inmates face a
> substantial risk of serious harm and disregards that risk by failing to take
> reasonable measures to abate it. Mere negligence does not suffice to prove
> deliberate indifference.

Farmer v. Brennan, 511 U.S. 825, 837 (1994) ("Deliberate indifference describes a state of mind
more blameworthy than negligence."). Furthermore, the Eleventh Circuit requires four things for
a viable claim for denial of medical care.

> As we have held, to make out a case for denial of medical care in violation of the
> Eighth Amendment, requires four things: "an objectively serious need, an
> objectively insufficient response to that need, subjective awareness of facts
> signaling the need, and an actual inference of required action from those facts."
> Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000). Mere negligence or
> medical malpractice is insufficient to prove a constitutional violation. Harris v.
> Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991). "Nor does a simple difference in
> medical opinion between the prison's medical staff and the inmate as to the
> latter's diagnosis or course of treatment support a claim of cruel and unusual
> punishment." Id.

Hilton v. McHugh, 178 Fed. Appx. 866, 871, unpub'd (11th Cir. 2006). Therefore, where the
Plaintiff has received medical attention and the dispute concerns the adequacy of the medical
treatment, deliberate indifference is not shown. Id.; see also Beamon v. Georgia, 2007 WL
842053, *2, slip op. (S.D. Ga. 2007) ("a mere difference in opinion between prison medical
officials and the inmate as to the latter's diagnosis or course of treatment will not support a claim
of cruel and unusual punishment").

    As explained above, an inmate does not have a right to a ***specific*** kind of treatment. City
of Revere v. Mass. Gen'l Hosp., 463 U.S. 239, 246 (1983) (holding, "the injured detainee's

constitutional right is to receive the needed medical treatment; ***how [a municipality] obtains such treatment is not a federal constitutional question***") (emphasis added).  Furthermore, this Court should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated the Plaintiff.  "Where a prisoner has received . . . medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments." Beamon, supra, 2007 WL 842053 at *2, quoting Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985); Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); Hamm, supra at 1575 (stating that the evidence showed the plaintiff received "significant" medical care while in Detention Center, and although plaintiff may have desired different modes of treatment, care provided by jail did not constitute deliberate indifference), cert. denied, 475 U.S. 1096 (1986); Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments.").

Based on the attached affidavits, Plaintiff neglected to report a problem with his hand for one or two days and then told Mr. Pritchett, who took him to see Dr. Siddiq the same day Plaintiff reported the injury to him.  (Ex. D, Pritchett aff., ¶ 8; Ex.)  Plaintiff also complained about not obtaining the appropriate medication, even though the Bullock County Detention Center staff provided frequent medication, particularly for Plaintiff's pain, during his incarceration.  (Ex. J4, Pain Relievers Medication and Treatment Record.)  Several months after Plaintiff's surgery, Dr. Siddiq's opinion was that even though Plaintiff wanted narcotic medication, he did not need anything more than over-the-counter pain medication, and Dr.

Siddiq told the Plaintiff so in Mr. Pritchett's presence.  (Ex. D, Pritchett, ¶ 13; Exhibits to Siddiq aff., Dr. Siddiq's Special Report.)

Furthermore, the Defendant Corrections Officers do not have any kind of medical education, training or experience, nor should such education or training be required of a sheriff and his corrections officers.  Sheriff Rodgers and his staff must rely upon the professional judgment of medical professionals who have been retained to provide care to injured inmates and detainees, which is the stated policy of the Bullock County Detention Center.  (Ex. B, Section 11, "Healthcare Services.")  Mr. Pritchett relied upon the instructions of Dr. Siddiq and Dr. Chung.  The Detention Center staff ensured that Plaintiff received pain medication, and after a certain period of time had passed after Plaintiff's surgery, Dr. Siddiq and Dr. Chung would not issue to Plaintiff narcotic pain medication.  (Ex. D, Pritchett aff., ¶ 13.)

Under these undisputed facts, Defendants were in no way indifferent to the Plaintiff's condition; they simply followed the doctors' instructions.  Even if Dr. Siddiq and Dr. Chung could somehow be construed as acting negligently in any aspect of the actions they took, such negligence does not amount to a constitutional violation.  Estelle, 429 U.S. at 105-06.  "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  Id. at 106.  And it certainly would not impute deliberate indifference to the Sheriff, Mr. Pritchett, or the other corrections officers

The evidence shows that Plaintiff was treated by medical professionals, i.e., doctors, to determine the seriousness of Plaintiff's hand injury and the proper treatment.  Even if they had had some personal involvement with the treatment of Plaintiff's hand, Defendants, Sheriff Rodgers, Mr. Pritchett, and the other correction officers, who are not trained and licensed as medical providers, are in no way responsible for second-guessing the judgments of trained medical professionals, like doctors and nurses.  In fact, Defendant medical professional,

22

Dr. Siddiq is not trained or licensed as an Orthopedic Specialist and had to rely to a certain extent upon the instructions and treatment provided by Dr. Chung, an Orthopedic Surgeon. He and the Detention Center did so, and they should not be sued for doing so. The employees of Sheriff Rodgers relied upon the opinion of medical professionals in all that they did in Plaintiff's case. Therefore, Defendants are entitled to qualified immunity from Plaintiff's medical care claims. Hilton v. McHugh, 178 Fed. Appx. 866, n.1 (11th Cir. 2006) (dismissing complaint involving medical care claim against warden); Taylor v. Adams, 221 F.3d 1254, 1256 (11th Cir. 2000) (holding that summary judgment was appropriate in deliberate indifference claim against Sheriff because status as a state officer entitled sheriff to Eleventh Amendment Immunity).

 2.     **Plaintiff has failed to allege that he has suffered a serious injury sufficient to satisfy the requirements for an Eighth or Fourteenth Amendment Claim of Deliberate Indifference.**

As discussed in Hudson, supra, a serious medical need is one that a physician has prescribed as mandating medical care. However, it is questionable whether a broken hand is in fact a "serious" medical need because "the medical need must be 'one that, if left unattended, "pos[es] a substantial risk of serious harm."'" Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003), quoting Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000) (alteration in original), quoting Farmer, supra, 511 U.S. at 834. The Bullock County Detention Center has sought abundant treatment for Plaintiff's hand in the last year that he has been at the Detention Center. Therefore, it would be difficult for Plaintiff to argue that his hand injury was serious or that the Bullock County Detention Center treated his hand inadequately after a surgery, numerous follow-up appointments, and the pain medication that he has received. Neither Dr. Siddiq nor Dr. Chung indicated in any way that Plaintiff's injury posed a substantial risk of serious harm. And Plaintiff has not alleged that his hand posed such a risk. From the time of Plaintiff's injury until now, the Bullock County Detention Center has spent more than $1,800.00 for Plaintiff's

treatment, and more than $8,000 total has been spent upon the treatment of Plaintiff's hand.  (Ex. C, Rodgers aff., ¶ 5; Ex. D, Pritchett aff., ¶ 15; Ex. J1, Expense Form for Plaintiff's Treatment.)

**D.    Defendants are Entitled to Qualified Immunity and Plaintiff's Claims are Due to be Denied Because the Defendants did not Violate a Constitutional Right Belonging to the Plaintiff, nor was there Pre-existing "*Clearly Established* Law."**

As explained above, Defendant Rodgers, as Sheriff of Bullock County, and Defendants, Administrator Pritchett, and the other corrections officers, as employees of the Sheriff at the Bullock County Detention Center are entitled to immunity for acts performed in the line and scope of their employment.  <u>Free</u>, <u>supra</u>; <u>Carr</u>, <u>supra</u>; <u>Lancaster</u>, <u>supra</u>.  The Complaint contains no allegation by the Plaintiff that any Defendant was acting outside the line and scope of his or her employment.  (Plaintiff's Complaint.)  The allegations on their face have to do with the operations of the Detention Center and the duties of the Defendants who either worked in that Detention Center for the Sheriff's Department or the Sheriff himself or Administrator Pritchett, who supervises the Detention Center on a daily basis.

Because all these Defendants are entitled to qualified immunity, Plaintiff must meet two prongs in order to satisfy the Eleventh Circuit's standard for determining whether Plaintiff has made out a claim sufficient to overcome the qualified immunity to which the Defendants are entitled.

1.   **Plaintiff's Claims are due to be denied because he has not stated a constitutional violation within his Complaint sufficient to overcome Defendants' entitlement to Qualified Immunity.**

Based on U.S. Supreme Court precedent, the Eleventh Circuit has stated a two-part inquiry in determining whether a Plaintiff has overcome the qualified immunity to which a public official is entitled in the face of a § 1983 claim.

> The defendants having established their eligibility for qualified immunity, the burden then shifts to the plaintiff to show that qualified immunity is not appropriate. Lee[ v. Ferraro,] 284 F.3d [1188,] at 1194 [(11th Cir. 2002)]. This next step consists of a two-part inquiry, set forth in Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). *First we ask, '[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?' Id. If, assuming the plaintiff's allegations were true, no such right would have been violated, the analysis is complete.* However, if a constitutional violation can be made out on the plaintiff's facts, we then must determine 'whether, at the time of the incident, every objectively reasonable police officer would have realized the acts violated already clearly established federal law.' Garrett v. Athens-Clarke County, 378 F.3d 1274, 1278-79 (11th Cir. 2004) (citing Saucier, 533 U.S. at 201-02, 121 S.Ct. 2151, 150 L.Ed.2d 272).

Harris v. Coweta County, Ga., 406 F.3d 1307, 1312-13 (11th Cir. 2005), (emphasis added). Even assuming that Plaintiff's allegations are true, he has not demonstrated in those allegations that he was actually denied any appropriate medical treatment while at the Bullock County Detention Center – quite the opposite. In fact, the evidence from Plaintiff's medical records illustrate that once the Bullock County Detention Center knew about Plaintiff's hand, it sent him to Dr. Siddiq who obtained x-rays and scheduled Plaintiff for an appointment with an Orthopedic Surgeon. (Siddiq aff., Dr. Siddiq's Special Report.)  Dr. Chung, the Orthopedic Surgeon, scheduled Plaintiff for an operation the next day, even though there is no indication in any of Plaintiff's records that his hand presented an emergency medical situation.  (Exhibits to Siddiq aff., Dr. Siddiq's Special Report.)  After receiving adequate treatment, Plaintiff complained about the pain in his hand, and Dr. Chung, Dr. Siddiq, and the Detention Center provided Plaintiff with

pain medication, Vicodin,[3] and later with over-the-counter pain medication. (Ex. J., Medical Records; Exhibits to Siddiq aff., Dr. Siddiq's Special Report.)

Plaintiff's condition was not an emergency, and his opinion as to the appropriate medication for his pain is a mere disagreement with the opinion of the professional medical providers, which does not establish deliberate indifference. Therefore, there was no action or inaction by the Defendants that thereby denied Plaintiff "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Based on Plaintiff's Complaint and the affidavits, jail and medical records, and the Detention Center policy issued by Sheriff Rodgers and Administrator Pritchett, Plaintiff's hand was adequately treated by professional medical personnel and the Detention Center. Such a complaint is not an adequate basis for a constitutional challenge. Therefore, none of these Defendants violated any constitutional right of the Plaintiff and are entitled to have Plaintiff's claims against them dismissed.

## 2. **Alternatively, Defendants are entitled to summary judgment based on qualified immunity because nothing in their conduct crossed a "bright line" contour of clearly established constitutional law.**

Even if Plaintiff had met his burden with respect to the first prong, he still has not met his burden under the second prong of the analysis required for overcoming a public official's qualified immunity. Public officials are protected in their individual capacities by qualified immunity as long as "a reasonable officer could have believed [his actions] to be lawful, in light of *clearly established law* and the information [that the officer] possessed." Anderson v. Creighton, 483 U.S. 635, 636 (1987) (emphasis added). The Eleventh Circuit Court of Appeals has observed "[t]hat qualified immunity protects governmental actors is the usual rule; only in

---

[3] *Vicodin* contains acetaminophen and hydrocodone, which is in a group of drugs called narcotic pain relievers. (From definition on Drugs.com, "Drug Information Online," at http://www.drugs.com/vicodin.html, December 18, 2007.)

exceptional cases will government actors have no shield against claims made against them in their *individual capacities*."  Lassiter v. Ala. A & M Univ., 28 F.3d 1146 (11th Cir. 1994) (en banc) (emphasis in original) (footnote omitted).

The Eleventh Circuit has divided consideration of qualified immunity into two "prongs" of analysis as articulated in Zeigler v. Jackson, 716 F.2d 847, 849 (11th Cir. 1983).

> First, "the defendant government official must prove that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'"  Sammons v. Taylor, 967 F.2d 1533, 1539 (11th Cir. 1992) (quoting Zeigler, 716 F.2d at 849).  "[T]hen the burden shifts to the plaintiff to demonstrate that the defendant violated clearly established constitutional law."  Id. (quoting Zeigler, 716 F.2d at 849).

Jordan v. Doe, 38 F.3d 1559, 1565 (11th Cir. 1994).  Once it is established that the Plaintiff has stated a claim and that the Defendant was acting within his discretionary authority, the Court then considers whether the contours of the constitutional right allegedly violated were "clearly established."  In making this assessment, the reviewing court must examine the state of law *at the time the alleged deprivation occurred*.  See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994); Adams v. St. Lucie County Sheriff's Dep't, 962 F.2d 1563, 1578 (11th Cir. 1992) (Edmondson, J., dissenting), rev'd and reasoning of original dissent adopted, 998 F.2d 923 (11th Cir. 1993) (en banc).

The Plaintiff must show that clearly established law provided all these Defendants with fair warning that their conduct was unlawful by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision is specific enough to demonstrate conduct was illegal, even in the total absence of case law.  Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted).  The Eleventh Circuit has identified the latter method as an "obvious clarity" case.  Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted).  In order to show that the conduct of the Defendants was

unconstitutional with "obvious clarity," "the unlawfulness must have been apparent." Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003). "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." Storck, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

The law must be relatively "fact specific" and "so particularized" that it would have been obvious or "apparent" to the defendant that his actions were unlawful. See Rodgers, 39 F.3d at 311; Hansen v. Soldenwagner, 19 F.3d 573, 575 (11th Cir. 1994) (both reversing denial of qualified immunity). As the Eleventh Circuit has explained, "[a] plaintiff cannot rely on . . . 'broad legal truisms' to show that a right is clearly established. . . . '[i]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant.'" Kelly v. Curtis, 21 F.3d 1544, 1550 (11th Cir. 1994) (reversing denial of qualified immunity as to some defendants) (quoting Post v. City of Fort Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1992)). While the facts of prior cases establishing the law in a particular context need not be identical, "the salient question that the Court of Appeals ought to have asked is whether the state of the law in 1995 gave respondents fair warning that their alleged treatment of [Plaintiff] was unconstitutional." Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508 (2002). This case law must "dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." Hudson v. Hall, 231 F.3d 1289, 1294 (11th Cir. 2000) (quoting Lassiter, at 28 F.3d 1150).

Plaintiff alleges in Ground One of his Complaint that the Defendants exercised cruel and unusual punishment upon him by delaying the initial treatment of his broken hand and not providing him with pain medication. A search of the controlling precedent on this issue reveals

28

three relevant opinions in the Eleventh Circuit – <u>Surber v. Dixie County Jail</u>, 206 Fed. Appx. 931, slip op. (11th Cir. 2006); <u>Harris v. Coweta County</u>, 21 F.3d 388 (11th Cir. 1994); <u>Brown v. Hughes</u>, 894 F.2d 1533 (11th Cir. 1990).   <u>Brown</u> involved an inmate who told a corrections officer that he thought he had broken his foot at approximately 10:30 a.m. and asked for medical care not long thereafter.  Although the corrections officer promised to send help, the inmate had to obtain medical attention when a different shift of corrections officers arrived at 3:00 p.m.  The inmate did not receive any medical treatment for his foot until after 4:30 p.m.  The Eleventh Circuit reversed the District Court, which had granted summary judgment to the defendant corrections officer, stating:  "[A] deliberate delay on the order of hours in providing care for a serious and painful broken foot is sufficient to state a constitutional claim."  <u>Id.</u> at 1538.

In <u>Harris</u>, <u>supra</u>, the inmate did not have a broken hand, but his fingers had curled up into the palm of his hand, causing the facility doctor to recommend a nerve conduction study of the inmate's hand.  The nerve conduction study did not take place for over a month and a half, during which time the inmate's fingernails had begun to gouge his palm, and his hand was "malodorous."  <u>Id.</u> at 392.  In that case, the Eleventh Circuit Court of Appeals stated that the "tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay."  <u>Id.</u> at 393-94.  The Eleventh Circuit called the delay from November 29, 1991 until January 16, 1992 "objectively unreasonable given the pre-existing law and Sheriff Hammett's information."  <u>Id.</u> at 394.

Plaintiff is essentially complaining that his injury was not treated like an emergency, even though he has not alleged in his Complaint that he complained about or reported his injury to anyone in the Detention Center before October 11, 2006.  He states he fell near some jugs of water, even though the unanimous opinion of the corrections staff is that he was involved in a fight.  He even complains that Dr. Siddiq was not prompt in his treatment, even though upon

Plaintiff's first visit for treatment, Dr. Siddiq immediately ordered an x-ray of Plaintiff's hand and referred him the same day to Dr. Chung, an Orthopedic Specialist. Although Surber was decided after the incident alleged in Plaintiff's Complaint occurred, it has relevance in demonstrating what type of injury is serious enough to require immediate, i.e., emergency, treatment for an inmate's injury. Surber involved an inmate who had been involved in a fight that resulted in a broken jaw. The Court quoted Harris v. Thigpen, 941 F.2d 1495 (11th Cir. 1991), and stated: "Medical treatment violates the [E]ighth [A]mendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Id. at 932 (internal quotation marks omitted). With respect to delays in medical treatment, the Eleventh Circuit explained:

> "*An inmate who complains that [a] delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of [the] delay in medical treatment to succeed.*" Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994), abrogated on other grounds by Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). "Whether [the] delay in treatment was tolerable depends on the nature of the medical need and the reason for the delay." Farrow v. West, 320 F.3d 1235, 1247 (11th Cir. 2003). When an inmate receives adequate medical care but desires "different modes of treatment, the care the jail provided [does] not amount to deliberate indifference." Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985).

Id. at 933 (emphasis added).

Although inmate Surber had a broken jaw, the hospital physician sent him back to the jail overnight before performing surgery upon him the next day. The opinion by the Eleventh Circuit stated that "Surber has not presented evidence that a delay in his medical treatment had a detrimental effect on him." Id. (citing Hill v. Dekalb Reg'l Youth Ctr., supra at 1188). Perhaps Surber was in pain, but the mere fact he was at a jail awaiting treatment instead of waiting in a hospital or getting an immediate operation on his jaw does not indicate deliberate indifference by the jail or the physician. Therefore, the Eleventh Circuit ruled that the plaintiff inmate "has not

30

shown that Defendants responded to his medical needs with deliberate indifference, which is necessary to establish a constitutional violation." Id. See also Gayle v. Pasco County Sheriff's Office, 2007 WL 2695820, slip op. at 11 (M.D. Fla. 2007) (relying upon Surber). Several circuits have adopted the requirement that a plaintiff inmate claiming delay in medical treatment provide "verifying medical evidence" that the delay had a "detrimental effect" upon him. Petty v. County of Franklin, Ohio, 478 F.3d 341, 344 (6th Cir. 2007); Langston v. Peters, 100 F.3d 1235, 1240 (7th Cir. 1996); Laughlin v. Schriro, 430 F.3d 927, 929 (8th Cir. 2005).

> Again, the standard for proving deliberate indifference is high.

> To satisfy the subjective element of deliberate indifference to Haggard's serious medical need, Plaintiff must prove three things: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." [Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004)]; see also Miller v. King, 384 F.3d 1248, 1261 (11th Cir. 2004) (noting, after Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), that gross negligence fails to satisfy state-of-mind requirement for deliberate indifference); Cottrell[ v. Caldwell], 85 F.3d [1480 ]at 1490[ (11th Cir. 1996)] (same).

> Demonstration of the level of subjective knowledge necessary to impute to the Officers a sufficiently blameworthy state of mind consists of two steps: the Officers "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [ ] must also draw the inference." Farmer, 114 S.Ct. at 1979 (emphasis added).

Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005). The jail official must "know" and "disregard" the "substantial risk" to the inmate. Rodriguez v. Secretary for Dept. of Corrections, 2007 WL 4126343, *5 (11th Cir. 2007).

> The Court in Farmer identified three ways that prison officials might avoid Eighth Amendment liability. Officials might show: (1) "that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger"; (2) "that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent"; or (3) that "they responded reasonably to the risk, even if the harm ultimately was not averted." 511 U.S. at 844, 114 S.Ct. at 1982-83.

Id..

Surber, decided after the Plaintiff in this case injured his hand, is persuasive authority with respect to this case. Defendants contend that Plaintiff can present no medical evidence verifying that he was detrimentally effected by a delay, if there was any, in the treatment of his hand. Add to that the lack of precedent indicating that the steps taken by the Bullock County Detention Center – obtaining x-rays of Plaintiff's hand the day it was notified by Plaintiff of an injury, sending Plaintiff to two different doctors in one day for diagnosis, orthopedic surgery by an expert Orthopedic Surgeon the day after the Detention Center was notified, three follow-up appointments regarding the surgery, $8,000 spent on the surgery alone (not including the cost of pain medication), and pain medication provided regularly as prescribed by the physicians – were somehow unconstitutional or put Defendants on notice that their actions were obviously unlawful. There is simply no cause of action for a constitutional violation based on any alleged delay of medical treatment for the Plaintiff that would overcome the qualified immunity to which the Defendants are entitled.

Plaintiff seems to contend in Ground Two of his Complaint that he did not receive adequate pain medication. Plaintiff's medical need was not an emergency, and he received necessary pain medication as he needed it. Plaintiff was prescribed pain medication, Vicodin, from the start, and that pain medication was at some point in time changed to Tylenol or other over-the-counter pain medication. (Ex. J4, Pain Reliever Medication and Treatment Record for Plaintiff; Ex. D, Pritchett aff., ¶ 9.) At most, there existed a difference of opinion regarding what course of treatment to follow – narcotic or over-the-counter pain medication. Considering the dangers of narcotic addiction, particularly with respect to inmates, and the length of time that had passed since his surgery, reluctance on the part of medical professionals to prescribe narcotic pain medication for Plaintiff could not constitute deliberate indifference.

In any event, such determinations are for medical professionals to make, not the inmate, and courts also will not step in to substitute their judgment of proper medical procedure for that of physicians like Dr. Siddiq and Orthopedic Specialists like Dr. Chung.  See Beamon, supra; Waldrop, supra; Hamm, supra; and Westlake, supra.  In the case of the Plaintiff's Complaint, all the corrections staff was receptive to requests of Plaintiff for medical care, they contacted a physician regarding matters they were unable to handle, they gave Plaintiff his prescribed pain medication when he needed it, and they transferred him to appointments with an Orthopedic Surgeon for surgery and follow-up.  There is no basis, either factually or legally, to any potential claim by Plaintiff that he was denied medical care or that it was unduly delayed.

Qualified immunity recognizes the need for public officials to be immune not only from liability but from the litigation process itself.  The Eleventh Circuit began applying the heightened pleading standard in qualified immunity cases against government officials "to weed out nonmeritorious claims."  See GJR Inv., Inc. v. County of Escambia, 132 F.3d 1359, 1367 (11th Cir. 1998).  The evidence clearly shows that these Defendants have not violated a constitutional right of the Plaintiff.  However, even if any of their actions or inactions could be construed as violating a right of the Plaintiff, these Defendants have done nothing to cross any bright line of clearly established constitutional law.  And even if they had, Plaintiff has not shown that any delay in his treatment or lack of pain medication resulted in any detrimental effect upon his health.  Therefore, they are entitled to qualified immunity.

## F.    Plaintiff's Allegations about Paint, Lack of a Window in the Disciplinary Cell, and Sundry Confinement Condition Claims do not Establish a Constitutional Violation

Plaintiff has failed to allege any constitutional violation based on the conditions of his confinement at the Bullock County Detention Center.  Plaintiff claims that the jail needs paint, that sewage is backing up, that he cannot go outside, that there is a lack of security, that inmates

hand out medication, and that the window on the disciplinary cell is covered by a metal plate. There exists a case in the Eleventh Circuit in which such conditions, among others, existing in massive and persistent proportions, were construed to create a potential constitutional violation,[4] but the conditions of which Plaintiff complains do not begin to rise to such a level. Plaintiff was placed fairly frequently in the disciplinary cell, Cell D, because he fought so often no other secure location for his incarceration could be found. (Ex. D, Pritchett aff., ¶ 10; Ex. F, Martin aff., ¶ 6; Ex. G, Reynolds aff., ¶ 6; Ex. H, Harris aff., ¶ 6; Ex. I, R. Thomas aff., ¶ 6; Ex. E, D. Thomas aff., ¶ 5.) D Cell has not had sewage problems, and even if it had, when a jail cell has a toilet back-up problem, the staff corrects the problem promptly. Inmates housed in D Cell have outdoor time as well as other inmates in the Detention Center. D Cell has a window with a metal plate welded over it because inmates used it to send messages outside the Detention Center and receive contraband from outside the Detention Center. Only corrections officers can hand out and supervise the giving of medications to inmates, and the officers followed that Detention Center rule. (Ex. D, Pritchett aff., ¶¶ 10, 11; Ex. F, Martin aff., ¶ 6; Ex. G, Reynolds aff., ¶ 6; Ex. H, Harris aff., ¶ 6; Ex. I, R. Thomas aff., ¶ 6; Ex. E, D. Thomas aff., ¶ 5.) Plaintiff could have received a visit from a Notary Public if he needed one because the Bullock County Detention Center allows visitors, and Administrator Pritchett has made available to Plaintiff legal books for his study. (Ex. D, Pritchett aff., ¶¶ 12; Ex. F, Martin aff., ¶ 7.)

The slight and infrequent inconveniences experienced by Plaintiff while incarcerated in the Bullock County Detention Center are insufficient to allege a violation of Plaintiff's

---

[4] See Marsh v. Butler County, Ala., 225 F.3d 1243, 1247 (11th Cir. 2000), rehearing *en banc* granted, opinion vacated by Marsh v. Butler County, Ala., 234 F.3d 1231 (11th Cir. 2000), reversing dismissal of claims against county in Marsh v. Butler County, Ala., 268 F.3d 1014 (11th Cir. 2001) (holding constitutional violation could exist when the building was extremely dilapidated and in poor physical condition; sewage leaked from overhead pipes; showers were covered with rust, mildew and peeling paint; sinks and toilets were dilapidated and inoperable; hallways were littered with trash; windows were cracked and could not be closed; shards of broken glass lay in the window sills; rats, cockroaches and other rodents and vermin entered the jail through broken windows and cracks in the walls; locks on inmate cells on the second floor of the Jail had been inoperable since at least 1995; and brutal assaults occurred as a result).

constitutional rights to not be subjected to cruel and unusual punishment. The conditions of the Bullock County Detention Center did not subject Plaintiff to a substantial risk of serious harm, nor did the Sheriff of Detention Center officials ignore any risk faced by Plaintiff. See Farmer, supra at 825 (holding that prison official may be held liable under the Eighth Amendment for acting with "deliberate indifference" to inmate health or safety only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it). Even if there was a substantial risk of serious harm faced by Plaintiff, no Defendant ever knew about it. Therefore, Defendants did not cause or allow Plaintiff to face any condition that created a constitutional violation while Plaintiff was incarcerated at the Bullock County Detention Center.

> **E.**     **Based on Plaintiff's Complaint, and the facts and law governing this case, no Defendant, including Dr. Siddiq, was deliberately indifferent to Plaintiff's medical condition**

Plaintiff received regular and adequate treatment for his hand from the Bullock County Detention Center staff and from Dr. Siddiq. As explained above, Beamon v. Georgia, 2007 WL 842053, *2, slip op. (S.D. Ga. 2007) ("a mere difference in opinion between prison medical officials and the inmate as to the latter's diagnosis or course of treatment will not support a claim of cruel and unusual punishment"). An inmate does not have a right to a *specific* kind of treatment. City of Revere v. Mass. Gen'l Hosp., 463 U.S. 239, 246 (1983) (holding, "the injured detainee's constitutional right is to receive the needed medical treatment; *how [a municipality] obtains such treatment is not a federal constitutional question*") (emphasis added). Furthermore, this Court should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated the Plaintiff. "Where a prisoner has received . . . medical attention and the dispute is over the adequacy of treatment,

35

federal courts are generally reluctant to second guess medical judgments." Beamon, supra, 2007 WL 842053 at *2, quoting Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985).

Dr. Siddiq treated Plaintiff when referred to him by the Bullock County Detention Center staff, obtained x-rays and referred him to a qualified Orthopedic Surgeon.    When Plaintiff needed a specialist, specifically an Orthopedic Surgeon, Dr. Siddiq referred him to Dr. Chung. (Siddiq aff., Dr. Siddiq's Special Report.)  Plaintiff received surgery on his hand and prescribed pain medication.  (Exhibits to Siddiq aff., Dr. Siddiq's Special Report; Ex. D, Pritchett aff., ¶ 9.)

As shown by abundant precedent, discussed supra, "deliberate indifference," requires proof of two things by Dr. Siddiq – indifference and that such indifference was "intentional." When a medical professional has actually provided treatment to an inmate, it is difficult to prove that the medical professional was deliberately indifferent based on a difference of opinion as to that treatment.  See Beamon, City of Revere, Hamm, and Westlake, supra.    Although Plaintiff may have had a difference of opinion with Dr. Chung or Dr. Siddiq about his treatment, e.g., whether he should have a different pain medication, that disagreement is insufficient to prove deliberate indifference on the part of a medical professional like Dr. Siddiq.  And such a disagreement would a fortiori not subject the Bullock County Commission, Sheriff Rodgers, Administrator Pritchett, or the other Corrections Officer Defendants, none of whom are medical professionals, to any liability whatsoever.

## F.    Summary Judgment Standard

On a motion for summary judgment, the Court should view the evidence in the light most favorable to the nonmovant.  Greason v. Kemp, 891 F.2d 829, 831 (11th Cir. 1990).  However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit.  See

36

Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" Reeves, 530 U.S. at 151, quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299.[5] "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'" Marsh v. Butler County, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc), quoting Mass. Sch. of Law v. American Bar, 142 F.3d 26, 40 (1st Cir. 1998).

## III.    CONCLUSION

Defendants deny each and every allegation, if any, made by Plaintiff Gachett in the Complaint. Defendants have not acted in a manner so as to deprive the Plaintiff of any right to which he is entitled. Otherwise, the PLRA bars Plaintiff's Complaint because it is not specific or clear enough to meet the requirements of the federal rules, he filed no Grievance with the Bullock County Detention Center, he filed no claim with the State Board of Adjustment, and Plaintiff has not suffered a serious injury. If the Plaintiff was able somehow to get past those arguments for dismissal by Defendants, then there are several bases for this Court to grant Summary Judgment to Defendants, particularly immunity. Defendants are entitled to Eleventh Amendment Immunity and Qualified Immunity, and based on the Plaintiff's Complaint, the law in existence at the time of Plaintiff's injury, and the facts presented by Defendants, it is impossible for Plaintiff to overcome that immunity.

---

[5] Although Reeves was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" Reeves, 530 U.S. at 150, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

IV.    **MOTION TO DISMISS**

Defendants respectfully request that this Honorable Court treat this Special Report as a

Motion for Summary Judgment and grant the same unto the Defendants.

Respectfully submitted this the 19th day of December 2007.

> **s/Winthrop E. Johnson**
> WINTHROP E. JOHNSON, Bar No. JOH086
> Attorneys for Defendants Bullock County
> Commission, Sheriff Rodgers, Administrator
> Pritchett, Corrections Officer Ruby Thomas, Officer
> Dorothy Thomas, Officer Annie Reynolds, Officer
> Veronica Harris, Officer Martin
> WEBB & ELEY, P.C.
> 7475 Halcyon Pointe Drive (36117)
> Post Office Box 240909
> Montgomery, Alabama  36124
> Telephone:  (334) 262-1850
> Fax:  (334) 262-1889
> E-mail:  wjohnson@webbeley.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the **19th day of December, 2007**, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:  **James E. Williams and J. Flynn Mozingo, Attorneys for Defendant Dr. Siddiq.**

I also hereby certify that on the **19th day of December, 2007** I have mailed a true and correct copy of the foregoing by United States Mail, postage prepaid, to the following non-CM/ECF participant:

> **Alfonza Gachett, AIS #160757**
> **Bullock County Detention Center**
> **14 West Hardaway Street**
> **Union Springs, AL  36089**

> **s/Winthrop E. Johnson**
> OF COUNSEL

# EXHIBIT  A

# Incident Report

# ALABAMA UNIFORM INCIDENT/OFFENSE REPORT

| VICTIM SSN | COMPLAINANT SSN | | 1 ☑ INCIDENT ☑ OFFENSE | 2 CASE # | | 3 SEX |
|---|---|---|---|---|---|---|
| 4 2 _ 9 6 0 4 4 6 | | | ☑ SUPPLEMENT | 0 6 0 9 0 0 0 1 9 | | |

| 4 ORI # | 5 DATE AND TIME OF THIS REPORT | | 6 AGENCY NAME | | 7 IF SUPPLEMENT ORIGINAL OFFENSE DATE |
|---|---|---|---|---|---|
| 0 6 0 1 0 0 0 0 9 0 2 0 6 | 07:37 ☑ AM ☑ PM ☑ MIL. | EUFAULA POLICE DEPAR | | |

| 8 REPORT BY | ☑ VICTIM OR | 9 ADDRESS (STREET, CITY, STATE, ZIP) | | 10 PHONE |
|---|---|---|---|---|

| 12 VICTIM (LAST, FIRST, MIDDLE NAME) | ☑ 28 | 13 ADDRESS (STREET, CITY, STATE, ZIP) | 14 PHONE |
|---|---|---|---|
| GACHETT, MARILYN E | | 4269 GREAT HOPE RD MIDWAY, AL | (334) 529-3562 |

| 15 EMPLOYER/SCHOOL | 16 OCCUPATION | 17 ADDRESS (STREET, CITY, STATE, ZIP) | 18 PHONE |
|---|---|---|---|
| TECHSONIC | MACHINE OPERATOR | INDUSTRIAL PARK EUFAULA, AL 36027 | (346) 876-6136 |

| 19 ☑ RESIDENT ☑ NON-RESIDENT | 20 INJURY ☑ Y ☑ N | 21 RACE ☑ W ☑ B ☑ A ☑ H ☑ I | 22 SEX ☑ MALE ☑ FEMALE | 23 HGT 5 03 | 24 WGT 210 | 25 DOB 1 0 0 5 6 2 | 26 AGE 043 | 27 WAS OFFENDER KNOWN TO VICTIM) ☑ Y ☑ N | 28 VICTIM WAS (EXPLAIN RELATIONSHIP) WIFE | 29 CODE 0 2 |

| 30 TYPE INCIDENT OR OFFENSE ☑ FEL. ☑ MISD. | 31 DEGREE (CIRCLE) 1 2 3 | 32A UCR CODE 1 3 1 4 | 33 STATE CODE/LOCAL ORDINANCE 013A-08-0132 |
|---|---|---|---|
| DOMESTIC VIOLENCE III | | | |

| 34 TYPE INCIDENT OR OFFENSE ☑ FEL. ☑ MISD. | 35 DEGREE (CIRCLE) 1 2 3 | 36 UCR CODE | 37 STATE CODE/LOCAL ORDINANCE |
|---|---|---|---|

| 38 PLACE OF OCCURRENCE | | 39 SECTOR |
|---|---|---|
| LAKESIDE MOTOR LODGE 1010 N EUFAULA AVE EUFAULA, AL 36027 | | A |

| 40 POINT OF ENTRY | ☑ DOOR ☑ WINDOW ☑ ROOF ☑ OTHER | 41 METHOD OF ENTRY | ☑ FORCIBLE ☑ NO FORCE ☑ ATT. FORCIBLE | 42 ASSAULT ☑ SIMPLE ☑ AGGR. | 43 TREATMENT FOR ASSAULT INJURY ☑ Y ☑ N A |
|---|---|---|---|---|---|

| OCCURRED ON OR BETWEEN | 45 TIME | 46 | 47 LIGHTING | 48 WEATHER | 49 PREMISE | 50 CODE |
|---|---|---|---|---|---|---|
| 0 9 0 1 0 6 | 18:00 ☑ AM ☑ PM ☑ MIL. | 1 2 3 4 5 6 7 | ☑ NATURAL ☑ MOON ☑ ART. EXT. ☑ ART. INT. ☑ UNK. | ☑ CLEAR ☑ CLOUDY ☑ RAIN ☑ FOG ☑ SNOW ☑ HAIL ☑ UNK. | ☑ HWY-ST-ALLEY ☑ RAILROAD ☑ RESIDENCE ☑ CHURCH ☑ SCHOOL ☑ CONVENIENCE ☑ INDUSTRIAL ☑ SERVICE STA. | ☑ BANK ☑ DRUG STORE ☑ APT./TWN. HSE ☑ SHOPPING CENTER ☑ PARKING LOT ☑ OTHER COMM/IND. ☑ OTHER |
| 0 9 0 2 0 6 | 04:30 ☑ AM ☑ PM ☑ MIL. | 1 2 3 4 5 6 7 | | | | |

| 54 VERIFY FOR ☑ Y ☑ N | 55 TREAT. FOR ☑ Y ☑ N | 56 CIRCUMSTANCES HOMICIDE & ASSAULT | 57 CODE |
|---|---|---|---|
| RAPE EXAM ☑ N | RAPE INJURY ☑ N | LOCATION: RAPE | |

| 58 WEAPON USED ☑ FIREARM ☑ KNIFE | ☑ HANDS, FISTS, VOICE, ETC. ☑ OTHER DANGEROUS | 59 DESCRIPTION OF WEAPONS/FIREARMS/TOOLS USED IN OFFENSE DESCRIBE: | ☑ HANDGUN ☑ RIFLE ☑ SHOTGUN ☑ UNKNOWN |
|---|---|---|---|

## PROPERTY DESCRIPTION

| 60 QUANTITY | 61 STOLEN, RECOVERED, LOST, FOUND OR DESTROYED (INCLUDE MAKE, MODEL, SIZE, TYPE, SERIAL NUMBER, COLOR, ETC.) | 62 DOLLAR VALUE STOLEN | DAMAGED | 63 RECOVERED DATE | VALUE |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

☑ CONTINUED IN NARRATIVE

## DOLLAR VALUE

| 64 MOTOR VEHICLE | 65 CURRENCY, NOTES | 66 JEWELRY | 67 CLOTHING/FURS | 68 FIREARMS | 69 OFFICE EQUIPMENT |
|---|---|---|---|---|---|
| S R D O | S R D O | S R D O | S R D O | S R D O | S R D O |

| 70 ELECTRONICS | 71 HOUSEHOLD | 72 CONSUMABLE GOODS | 73 LIVESTOCK | 74 MISCELLANEOUS |
|---|---|---|---|---|
| S R D C | S R A D C | S R A D C | S R A O C | S R A O C |

## VEHICLES

| 75 CHECK CATEGORIES | ☑ STOLEN ☑ RECOVERED ☑ SUSPECTS VEH. ☑ VICTIMS VEH. ☑ UNAUTH. USE ☑ ABANDONED | | | | |
|---|---|---|---|---|---|

| 76 # STOLEN | 77 LIC. | 78 LIS. | 79 LIY. | 80 TAG COLOR | 81 VIN |
|---|---|---|---|---|---|

| 82 VYR | 83 VMA | 84 VMO | 85 VST | 86 VCO | 87 ADDITIONAL DESCRIPTION |
|---|---|---|---|---|---|
| | | | | TOP: BOTTOM: | |

| STOLEN MTR. VEH. ONLY | 88 AREA STOLEN ☑ BUS. ☑ RES. ☑ RURAL | 89 OWNERSHIP VERIFIED BY: ☑ TAG RECEIPT ☑ BILL OF SALE ☑ TITLE ☑ OTHER | 90 WARRANT SIGNED ☑ Y ☑ N |
|---|---|---|---|
| 91 AUTO INSURER NAME (COMPANY) ADDRESS (STREET, CITY, STATE, ZIP) | | 92 PHONE | |

| STOLEN VEH. RECOVERY ONLY (REQUIRED FOR IN-STATE CODE | 93 STOLEN IN YOUR JURISDICTION? ☑ WHERE? | 94 RECOVERED IN YOUR JURISDICTION? ☑ WHERE? |
|---|---|---|

## TYPE OR PRINT IN BLACK INK

INCHES 1 2 3 4 5 6

ACJIC-32 REV. 6-94

A

OFFICER'S WORK PRODUCT MAY NOT BE PUBLIC INFORMATION

**INCIDENT/OFFENSE REPORT CONTINUED**

| 98 DATE AND TIME OF REPORT | | 99 CASE # | |
|---|---|---|---|
| 0 9 0 2 0 6 | 07:37 AM PM MIL. | 0 6 0 9 0 0 0 1 9 | 97 SPX OFFENDER SUSPECT MISSING PERSON CHECK IF MULTIPLE |

99 NAME (LAST, FIRST, MIDDLE)
GACHETTE, ALFONZA

100 NICKNAME/ALIAS

| 101 RACE | 102 SEX MALE FEMALE | 103 DOB | 104 AGE |
|---|---|---|---|
| B | MALE | 0 9 0 7 6 3 | 042 |

105 ADDRESS (STREET, CITY, STATE, ZIP)
4269 GREAT HOPE RD MIDWAY, AL 36053

| 106 HGT | 107 WGT | 108 EYE | 109 HAIR | 110 COMPLEXION |
|---|---|---|---|---|
| 6 00 | 168 | BRO | BLK | DARK |

112 PROBABLE DESTINATION

| 112 ARMED? Y N UNK. | 113 WEAPON |

114 CLOTHING

SCARS MARKS TATOOS

| 115 ARRESTED WANTED |

116 NAME (LAST, FIRST, MIDDLE)

117 NICKNAME/ALIAS

| 118 RACE W B A I O | 119 SEX MALE FEMALE | 120 DOB M D Y | 121 AGE |

122 ADDRESS (STREET, CITY, STATE, ZIP)

| 123 HGT | 124 WGT | 125 EYE | 126 HAIR | 127 COMPLEXION |

120 PROBABLE DESTINATION

| 128 ARMED? Y N UNK. | 130 WEAPON |

131 CLOTHING

SCARS MARKS TATOOS

| 132 ARRESTED WANTED |

**WITNESSES**

| 133 NAME (LAST, FIRST, MIDDLE) SEX, RACE, DOB | | 134 ADDRESS (STREET, CITY, STATE, ZIP) | 135 RES. PHONE | 136 BUS. PHONE |
|---|---|---|---|---|
| ROGERS, SHARON | 1 2 0 5 7 3 SEX M F RACE W B A I O | 9 JESSIE LN PITTSVIEW, AL 36871 | (334) 855-3313 | (706) 320-2646 |

WITNESS #1 SSN | WITNESS #2 SSN | WITNESS #3 SSN | WITNESS #4 SSN

**NARRATIVE**

137

VICTIM STATED THAT LISTED OFFENDER WHICH IS HER HUSBAND BROUGHT HER FROM UNION SPRINGS TO LAKESIDE MOTOR LODGE AFTER BEING

INVOLVED IN A DOMESTIC VIOLENCE ASSAULT THAT HAPPENED IN UNION SPRINGS. VICTIM STATED THE OFFENDER RENTED A ROOM IN HER

NAME, HELD HER INSIDE THE ROOM AGAINST HER WILL, STATING HE WILL KILL HIMSELF OR HER IF SHE TRIED TO CALL THE POLICE DEPARTMENT.

VICTIM STATED THE OFFENDER FORCED HER TO HAVE SEX WITH HIM AGAINST HER WILL. VICTIM STATED DUE TO THE BEST INTEREST AND THE

LIFE THREATENING SITUATION, SHE HAD SEXUAL INTERCOURSE WITH HIM. VICTIM STATED SHE FELT SHE NEEDED TO GO TO THE HOSPITAL DUE

TO HER FEELING BAD, HE DENIED TO TAKE HER TO GET MEDICAL ATTENTION. VICTIM STATED THE OFFENDER HELD HER INSIDE THE MOTEL ROOM

UNTIL 0430HRS THIS DATE. HE THEN TOOK HER BACK TO UNION SPRINGS WHERE HE EXITED THE VEHICLE AT AN UNKNOWN CONVENIENCE STORE

AND WENT TO AN UNKNOWN LOCATION. VICTIM STATED THAT OFFENDER STATED TO HER THAT HE WISH HE WOULD HAVE KILLED HER ON

09/01/06 IN UNION SPRINGS AFTER HE ASSAULTED HER WITH A POCKET KNIFE CUTTING ON HER RIGHT LEG AND HER BACK. OFFENDER ALSO HAD

STRUCK VICTIM SEVERAL TIMES ON HER FACIAL AREA LEAVING SWELLING, PAIN AND A LACERATION ON THE

LEFT SIDE OF HER FACE, PLACED VICTIM INSIDE HER VEHICLE TRUNK AND

| ASSISTING AGENCY ORI | ASSISTING AGENCY CASE # | CONTINUED ON SUPPLEMENT Y N | SPX |

I hereby affirm that I have read this report and that all information given by me is correct to the best of my knowledge. I will assume full responsibility for notifying this agency if any stolen property or missing person hereby reported is returned.

SIGNATURE _____

| 138 LOCAL USE |
| 139 STATE USE |

| MULTIPLE CASES CLOSED | 140 CASE # | 141 SPX | 142 CASE # | 143 SPX | 144 CASE # | 145 SPX | 146 CASE # |

| ADMINISTRATION | 147 CASE STATUS PENDING INACTIVE CLOSED | 148 CASE DISPOSITION CLEARED BY ARREST (JUV.) CLEARED BY ARREST (ADULT) UNFOUNDED ADM. CLEARED | EXCEPTIONAL CLEARANCE SUSPECT/OFFENDER DEAD OTHER PROSECUTION EXTRADITION DENIED LACK OF PROSECUTION JUVENILE, NO REFERRAL DEATH OF VICTIM | 149 REPORTING OFFICER GILBERT, BOBBY 00137 | ID # |
| | ENTERED ACIC/NCIC DATE Y N | | | 150 ASSISTING OFFICER | ID # |
| | | | | 151 SUPERVISOR APPROVAL WALLACE 00105 | ID # | 152 WATCH CMDR. | ID # |

| 149A ADDITIONAL CASES CLOSED NARRATIVE Y N |

OFFICER'S WORK PRODUCT MAY NOT BE PUBLIC INFORMATION

## ADDITIONAL INCIDENT/OFFENSE NARRATIVE CONTINUED

| DATE AND TIME OF REPORT | | CASE # | | EFX |
|---|---|---|---|---|
| 0 9 0 2 0 6   07:37   AM PM MIL. | | 0 6 0 9 0 0 0 1 9 | | |

TYPE REPORT  ■ 1. CONTINUATION  ☐ 2. FOLLOW UP

CLOSED IT WITH HER INSIDE FOR APPROXIMATE THREE TO FIVE MINUTES. LISTED WITNESS CALLED VICTIM AT 0528 HRS THIS DATE AT HER

RESIDENCE, WENT TO GET VICTIM, AND TOOK HER TO LAKEVIEW COMMUNITY EMERGENCY ROOM FOR TREATMENT. VICTIM STATED SHE WAS

AFRAID TO SAY NO DUE TO THE THREATENING OF HER LIFE NOT TO HAVE SEX WITH THE OFFENDER. THE VICTIM WAS ADVISED SEVERAL TIMES

TO GO UNION SPRINGS POLICE DEPT. AND MAKE A REPORT ON THE INITIAL DOMESTIC VIOLENCE ASSAULT THAT HAPPENED ON 09/01/06. CID,

DET. SMITH AND CAPT. MARSH WERE NOTIFIED. VICTIM WAS ADVISED ON WARRANT PROCEDURES.

NARRATIVE

NARRATIVE

NARRATIVE

TYPE OR PRINT IN BLACK INK ONLY

☐ CONTINUE ON ADDITIONAL SUPPLEMENT

State of Alabama
Unified Judicial System

Form C-64(front) Rev. 11/92

# COMPLAINT and WARRANT
(Felonies, Misdemeanors, or Violations -
District Court or Municipal Court)

Warrant Number

Case Number
DC-06-481

IN THE _District_    COURT OF _Bullock_    ALABAMA
        (Circuit, District, or Municipal)          (Name of Municipality or County)

☒ STATE OF ALABAMA    ☐ MUNICIPALITY OF _____

v. _Alfonza Gachett_ , Defendant

Before me, the undersigned authority, personally appeared this day the undersigned complainant who, upon first being duly sworn, states on oath that he/she has probable cause for believing, and does believe, that _Alfonza Gachett_
commencement of this action, commit the offense of _Domestic Violence Assault I_
Defendant, whose name is otherwise unknown to the complainant, did, prior to the

☒ County of _Bullock_    within the
☐ City/Town of _____
                                        or in the police jurisdiction thereof, in that he/she did:
(State specific facts here. Continue on a separate sheet of paper if needed.) _Alfonza Gachett did, with_
_intent to cause physical injury to another person, cause physical injury_
_to Marilyn Gachett by cutting her with a knife and beating_
☒ Section _13A-6-130_ Code of Alabama 1975    her with his fists , in violation of
☐ Ordinance Number _____ , which embraces section _____
     previously adopted, effective and in force at the time the offense was committed.    , Code of Alabama 1975.
☐ Other _____

Sworn to and subscribed before me this
_11th_ day of
_September_ 2006

_Wilbert M. Jernigan_
Judge/Magistrate/Warrant Clerk

_LT Massey_
Complainant

Address _USPO_

_738-3131_
Telephone Number

## WARRANT OF ARREST

TO ANY LAW ENFORCEMENT OFFICER WITHIN THE STATE OF ALABAMA:
☒ Probable cause has been found on Complaint filed in this Court against (name or description of person to be arrested)
_Alfonza Gachett_
charging: (description of offense(s)) _Domestic Violence Assault I_

in violation of _13A-6-130_
☐ An Indictment has been returned by the Grand Jury of this county against (name or description of person to be arrested) _____ ; OR

charging: (description of offense(s)) _____

in violation of _____

☐ YOU ARE THEREFORE ORDERED to arrest the person named or described above and bring that person before a judge or magistrate of this Court to answer the charges against the person and have with you then and there this warrant with your return thereon. If a judge or magistrate of this Court is unavailable, or if the arrest is made in another county, you shall take the accused person before the nearest or most accessible judge or magistrate in the county of arrest.
☒ You may release the accused person without taking the accused person before a judge or magistrate:
☒ If the accused person enters into a bond in the amount of $ _20,000.00_ with two good sureties approved by an authorized officer or by depositing cash or negotiable bonds in the amount with the court clerk.
☒ If the accused person posts an appearance bond in the amount of $ _20,000.00_
☒ On his or her personal recognizance.

Date: _September 11, 2006_

_Wilbert M. Jernigan_
Judge/Magistrate/Clerk

BLU017 Swd 1/000

| State of Alabama<br>Unified Judicial System<br><br>Form C-64(front) Rev. 11/92 | **COMPLAINT and WARRANT**<br>(Felonies, Misdemeanors, or Violations ·<br>District Court or Municipal Court) | Warrant Number<br><br>Case Number<br>DC-06-482 |

IN THE **District** COURT OF **Bullock** ALABAMA
(Circuit, District, or Municipal) (Name of Municipality or County)

☒ STATE OF ALABAMA ☐ MUNICIPALITY OF _____

v. **Alfonza Gachett** , Defendant

Before me, the undersigned authority, personally appeared this day the undersigned complainant who upon first being duly sworn, states on oath that he/she has probable cause for believing, and does believe, that **Alfonza Gachett**

_____ Defendant, whose name is otherwise unknown to the complainant, did, prior to the commencement of this action, commit the offense of **Kidnapping II**

☒ County of **Bullock** within the
☐ City/Town of _____ or in the police jurisdiction thereof, in that he/she did:

(State specific facts here. Continue on a separate sheet of paper if needed.) **Alfonza Gachett did abduct Marilyn Gachett and terrorize her**

in violation of
☒ Section **13A-6-44** , Code of Alabama 1975
☐ Ordinance Number _____ , which embraces section _____ , Code of Alabama 1975,
previously adopted, effective and in force at the time the offense was committed.
☐ Other _____

Sworn to and subscribed before me this
**14th** day of
**September** 2006

**Wilbert M. Jernigan**
Judge/Magistrate/Warrant Clerk

**L.T. Murry**
Complainant

**USPO**
Address

**738-3131**
Telephone Number

---

**WARRANT OF ARREST**

TO ANY LAW ENFORCEMENT OFFICER WITHIN THE STATE OF ALABAMA:
☒ Probable cause has been found on Complaint filed in this Court against (name or description of person to be arrested)
**Alfonza Gachett,**
charging: (description of offense(s)) **Kidnapping II**
_____
in violation of **13A-6-44**
☐ An Indictment has been returned by the Grand Jury of this county against (name or description of person to be arrested) _____ ; OR

charging: (description of offense(s)) _____
_____

in violation of _____
☐ YOU ARE THEREFORE ORDERED to arrest the person named or described above and bring that person before a judge or magistrate of this Court to answer the charges against that person and have with you then and there this warrant with your return thereon. If a judge or magistrate of this Court is unavailable, or if the arrest is made in another county, you shall take the accused person before the nearest or most accessible judge or magistrate in the county of arrest.
☐ You may release the accused person without taking the accused person before a judge or magistrate:
  ☐ If the accused person enters into a bond in the amount of $ **10,000.00** with two good sureties approved by an authorized officer or by depositing cash or negotiable bonds in the amount with the court clerk.
  ☒ If the accused person posts an appearance bond in the amount of $ **10,000.00**
  ☐ On his or her personal recognizance.

Date: **September 11, 2006**

**Wilbert M. Jernigan**
Judge/Magistrate/Clerk

State of Alabama
Unified Judicial System

Form C-64(a) (front) Rev. 6/91

**DEPOSITION**

Warrant/Summons Number

Case Number

IN THE _District_

COURT OF _Bullock_ COUNTY

☒ STATE OF ALABAMA          ☐ MUNICIPALITY OF _____

v. _Alfonso Gachett_

, Defendant

INSTRUCTIONS: COMPLETE THE FOLLOWING INFORMATION ON THE ACCUSED

| Name of Accused (or Alias) | | | | | | | Telephone Number | |
| Social Security Number | | Driver's License Number | | | Date of Birth | | Age | | |
| Height | Weight | Hair | | Eyes | Complexion | | Race | | Sex |
| Address of Accused (or Alias) | | | City | | | | | | |
| Name of Employer | | | | | | | State | Zip Code | |
| Address of Employer | | | City | | | Employer's Telephone Number | | | |
| | | | | | | | State | Zip Code | |

INSTRUCTIONS: COMPLETE THE FOLLOWING INFORMATION ON THE OFFENSE

Offense: _Domestic Violence Assault I & Kidnapping_

Date and Time of Offense: _9-1-06 approx. 5:30 PM_

Place of Occurrence: _U.S. 82, Foster Road_

Person Attacked or Property Damaged: _____

Attacked: _____

Accused Possess or Use a Weapon? ☒ Yes ☐ No          Type: _pocket knife_

Damage Done or Injuries Received: _face, right arm, right knee, left arm_

Value of Property: _____

Description of Offense: _Marilyn E. Gachett advised Alfonso Gachett beat her with_
_his fists, stabbed her twice and forced her in the trunk of her_

Law Enforcement Agency Contacted? ☒ Yes ☐ No
If which one? _Union Springs Police Dept._

I make this statement for the purpose of securing a WARRANT/SUMMONS against the named accused. I understand that I am instituting a criminal proceeding and cannot dismiss this case. I further understand that if any of the foregoing are untrue, I may, in addition to any other punishment provided by law, be taxed with court costs in this proceeding.

Sworn and Subscribed before me this _11th_ day of
_September)_  _2006_

_____
Complainant _L.J. McCary_
_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_

# EXHIBIT  B

# Consent for Medical Treatment

# BULLOCK COUNTY
# SHERIFF'S DEPARTMENT

**HEALTH CARE SERVICES**                                    **SECTION 11**

**Consent for Medical Treatment**                          **Title 11.02**

It is the policy of the Bullock County Sheriff's Department that no inmate be given medical treatment without his authorization unless a life-threatening emergency exists or the inmate is considered mentally incompetent by the court and is in danger of harming himself or others.

### *Procedure*

1. During the booking process, each inmate will be requested to sign a medical authorization form.

2.    If an inmate refuses to sign a medical authorization form, it will be noted on the form and no medical services, other than emergency life saving procedures, will be offered.

3.    No member of the Detention Center staff will explain any risks or consequences involved in any medical procedure to an inmate. The responsibility for this explanation rests solely with the health care provider.

4.    Inmates have a right to refuse medical treatment at any time.

5.    If an inmate refuses to accept medication or medical treatment, the officer receiving such a refusal should cause the inmate to sign a Medication Refusal Form noting the refusal of medical care. Inmates who refuse medical treatment should be immediately referred to the Detention Center nurse. The consequences of their refusal will be explained to such inmates by the nurse, and the refusal and subsequent procedures documented. If the inmate refuses to sign a Medication Refusal Form, the member of the Detention Center staff receiving the refusal should record that action on the form and follow the same steps as if the inmate had signed. All documentation of refusals of treatment should be made a part of the appropriate inmate's Detention Center file.

By Order of:

_____
Raymond Rodgers, Sheriff

Effective Date: _____

Reference Forms:          2      Booking Sheet
                         13      Medication Refusal Form



# BULLOCK COUNTY SHERIFF'S DEPARTMENT

**SECTION 11**

## HEALTH CARE SERVICES

**Title 11.06**

### Non-Emergency Transportation

*Policy*

It is the policy of the Bullock County Sheriff's Department to transport inmates to appropriate medical facilities for non-emergency care in a manner which is safe and secure and does not endanger the inmate's health or medical condition.

*Procedure*

1. A Shift Supervisor may, at any time, order that an inmate be transported to a hospital, doctor's office, dentist's office, or other location where health care may be provided on a non-emergency basis.

2. The Jail House officer receiving the order to make arrangements for such transportation will contact a Shift Supervisor in order to have a transport officer take the inmate to the proper location.

3. All medical records and forms within the Jail House shall accompany the inmate to the health care provider and be made available to the provider.

4. The name of the inmate transported and the time of leaving from and arriving back at the Jail House should be noted on the Jail House log.

**By Order of:**

_____

**Raymond Rodgers, Sheriff**

**Effective Date:** _____

# BULLOCK COUNTY SHERIFF'S DEPARTMENT

**HEALTH CARE SERVICES**                                           **SECTION 11**

**Personal Physician/Dentist,**
**Prosthetic Devices. Eye Glasses**                              **Title 11.08**

It is the policy of the Bullock County Sheriffs Department to work closely with the private health care providers of inmates incarcerated in the Bullock County Detention Center where possible and to allow persons incarcerated their access to prosthetic devices and eye glasses in order to ensure the inmates' health and dignity and the security of the institution.

## _Procedure_

1.      _Personal Physician/Dentist:_ An inmate may request to see his personal physician or dentist by submitting an Inmate Request Form. The officer who receives such a request will:

   a.   Refer the request to the Chief Deputy Sheriff for approval.

   b.   If the Chief Deputy Sheriff refuses the request, he will state the reasons for so refusing and transmit these reasons to the inmate.

   c.   If the request is approved by the Chief Deputy Sheriff, the Shift Supervisor on duty will contact the inmate's personal health care provider and make necessary arrangements for an appointment.

   d.   The usual transportation procedure will be used in order to take the inmate to the health care provider and the inmate's Detention Center medical records will be transported along with the inmate.

   e.   The inmate himself is totally responsible for all expenses incurred in the visit to a private health care provider and must have visit cost either prepaid or have the ability to pay on hand at the time of his appointment. Billing or accounts will not be acceptable.

   f.   All indigent inmates will be treated by the health care providers normally utilized by the facility.

g.      The Chief Deputy Sheriff may refuse to allow an inmate access to his personal health care providers for reasons of security, distance of travel, or for any other legitimate penalogical or logistical reason.

2.    *Prosthetic Devices:* Inmates who are admitted to the Bullock County Detention Center wearing or using prosthetic devices, such as artificial limbs, crutches, or canes, will have those devices searched. The ranking officer on duty will be notified when an inmate is admitted or returned from the hospital with a prosthetic device and the officer will take the following steps:

a.      Inspect the device and review the inmate's file to determine whether or not the device itself or the inmate's history and behavior with the device will pose any security risk. If so, he will consult with the facility physician in order to determine the inmate's medical need for the device. If the physician orders that the device remain with the inmate and/or the inmate be placed in administrative segregation, that order will be followed. If the physician decides that the inmate's health will not be jeopardized by the removal of the device during confinement, the device will be removed, tagged, and stored. The ranking officer will then determine whether administrative segregation is necessary.

b.      Devices will be provided as deemed necessary to maintain health.

3.    *Eye Glasses:* An inmate who requests eye glasses will:

a.      See the facility physician at the next available appointment time to have his need evaluated.

b.      If ordered by the facility physician, the inmate will be transported to an optometrist.

# EXHIBIT  C

# Affidavit of Raymond Rodgers

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| **ALFONZA GACHETT** | ) |
| | ) |
| **Plaintiff** | ) |
| | ) **CIVIL ACTION NO. 2:07cv902-WKW** |
| **vs.** | ) |
| | ) |
| **COUNTY COMMISSION,** | ) |
| **(SHERIFF) RAYMOND ROGERS,** | ) |
| **CHIEF JAILER CURTIS** | ) |
| **PRITCHETT, DR. SADDIQ,** | ) |
| **(JAILER) DOROTHY THOMAS,** | ) |
| **(JAILER) ANNIE L. REYNOLDS** | ) |

## AFFIDAVIT OF RAYMOND RODGERS

| | |
|---|---|
| **STATE OF ALABAMA** | ) |
| | ) |
| **COUNTY OF BULLOCK** | ) |

**BEFORE ME,** the undersigned authority and Notary Public in and for said County and State at large, personally appeared Raymond Rodgers, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.      My name is Raymond Rodgers.  I am over the age of nineteen and competent to make this affidavit.

2.      I am the duly elected Sheriff of Bullock County, Alabama, and have served in such capacity since 2002.  I was a Deputy Sheriff from 1995 until I became Sheriff.

3.      Three or four days after the injury, Mr. Curtis Pritchett, the Jail Administrator, told me about the Plaintiff's injured hand.  I personally went to the jail to check on the Plaintiff after the Jail Administrator told me about his hand.  I know the

Plaintiff because he has been incarcerated several times since 1990. The Plaintiff told me that he hurt his hand hitting someone but did not complain or state that he had been denied any medical care.

4.      Instead of informing Mr. Pritchett or another corrections officer of any complaints, Plaintiff would often telephone his mother, who would call me and let me know about Plaintiff's complaint. I have asked Plaintiff's mother why Plaintiff does not tell the jail staff or Sheriff's office about his complaints.

5.      Plaintiff's hospital and doctor bills have totaled over eight thousand dollars ($8,000). Bullock County has paid over $1,800.

6.      I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled. I have no reason to believe that any Bullock County Detention Facility personnel failed to follow the policies and procedure regarding health care in the case of Plaintiff.

7.      I am responsible for promulgating the policies and procedures of the Bullock County Detention Facility. The Bullock County Detention Facility Policy and Procedures Manual (hereinafter "the Jail Manual") states the policy regarding "Health Care Services" in Section 11. Title 11.02 deals with "Consent for Medical Treatment" and states:

> "No member of the Detention Center staff will explain any risks or consequences involved in any medical procedure to an inmate. The responsibility for this explanation rests solely with the health care provider.

8.      The Jail Manual, Title 11.06 deals with "Non-Emergency Transportation," and Title 11.08 deals with Physician care for indigent inmates.

9.    The Bullock County Detention Center does not have a written Grievance Procedure; however, The Bullock County Detention Center is a small jail with a capacity for holding a maximum of twenty-eight (28) inmates, and the Chief Jailer is always available and willing to hear any inmate's complaint.  If the complaint is about the Chief Jailer, then any inmate can complain to me.

10.    I swear, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements are made by drawing from my personal knowledge of the situation.

RAYMOND RODGERS

SWORN TO and SUBSCRIBED before me this 5 day of December, 2007.

NOTARY PUBLIC
My Commission Expires: 12/13/2078

# EXHIBIT  D

# Affidavit of Curtis Pritchett

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **ALFONZA GACHETT, #160757** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | **CIVIL ACTION NO. 2:07cv902-WKW** |
| **vs.** | ) | |
| | ) | |
| **COUNTY COMMISSION OF** | ) | |
| **BULLOCK COUNTY, et al.** | ) | |

### AFFIDAVIT OF CURTIS PRITCHETT

| | |
|---|---|
| **STATE OF ALABAMA** | ) |
| | ) |
| **COUNTY OF BULLOCK** | ) |

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Curtis Pritchett, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.      My name is Curtis Pritchett, am over the age of nineteen and competent to make this affidavit. I am Jail Administrator of the Bullock County Detention Center. I have worked with the Bullock County Sheriff's Department for over eight (8) years.

2.      I am familiar with the Plaintiff, Alfonza Gachett, due to his incarceration in the Bullock County Detention Facility, most recently for kidnapping and raping his wife. The Plaintiff's inmate jail file does not contain any written request or grievance concerning any of the allegations made by the Plaintiff in his Complaint.

3.      I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled. I have no

reason to believe that any Bullock County Detention Facility personnel failed to follow the policies and procedure regarding health care in the case of Plaintiff.

4.     I am the records custodian for the Bullock County Detention Center. I attest to the accuracy of the exhibits used in this Special Report as being copies from the Bullock County Detention Center Policies and Procedures and the Plaintiff's jail file and medical file.[1] I am responsible for ensuring that the Detention Center's staff follows the policies and procedures of the Bullock County Detention Center. The Bullock County Detention Center Policy and Procedures Manual states the policy regarding Health Care Services in Section 11. According to Title 11.02, ¶ 3, Bullock County Detention Center Policy and Procedures Manual: "No member of the Detention Center staff will explain any risks or consequences involved in any medical procedure to an inmate. The responsibility for this explanation rests solely with the health care provider."

5.     According to Title 11.08, ¶ 1.f, Bullock County Detention Center Policy and Procedures Manual:  "All indigent inmates will be treated by the health care providers normally utilized by the facility."  When an inmate is injured and it is not an obvious emergency,[2] I contact a physician in the area, who instructs me as to what to do and whether to transport the inmate. Neither Bullock County nor the Bullock County Jail has any agreement with a particular doctor to provide those services.

6.     As for Plaintiff's allegations, we have never had a problem with an inmate slipping because of the water jugs that are left in the cell blocks. The iced water jugs are for the inmates' benefit in hot weather. On October 8th or 9th of October of 2006, I spoke with Randy Ifraty, an inmate, who told me that he and Plaintiff had fought and that, while Ifraty

---

[1] Any missing paperwork for any period of time does not mean we did not give Plaintiff his medication, only that we cannot find those documents.
[2] A true emergency would require us to take the inmate to the emergency room.

was on the floor of the jail, Plaintiff had missed hitting Ifraty's head with his fist and had hit the floor instead. Dr. Chung, an Orthopedic specialist, said that Plaintiff's injury was inconsistent with a fall. While in the Bullock County Detention Center for this most recent incarceration, Plaintiff has been in five fights.

7.    On the day after or on the second day after I spoke with Ifraty about Plaintiff's hand, Plaintiff made his first request to go to a doctor. I called Dr. Siddiq, who told me to bring him to his office. I took Plaintiff to the doctor on the same day that he asked to see a doctor. Upon Plaintiff's initial visit to Dr. Siddiq, Dr. Siddiq ordered x-rays of Plaintiff's hand, which showed fracture. Dr. Siddiq referred Plaintiff to an Orthopedic specialist in Montgomery, Dr. Chung, to whom I took Plaintiff on the same day. Although Plaintiff has often complained about conditions he considered of note at the jail, when I took Plaintiff to the doctor, he was not complaining about any pain or about lack of treatment, nor was his faced contorted in pain, nor was he holding his hand as if in pain, nor was he groaning as if in pain. In the last year, I or another officer have taken Plaintiff to the doctor thirteen (13) times to see a doctor.

8.    The next day, October 12, 2006, I took Plaintiff again to Dr. Chung, an Orthopedic specialist, whose office is in Montgomery, approximately a forty-five minute to one hour drive from the Bullock County Detention Center. Dr. Chung operated on October 12th, putting pins in Plaintiff's hand and a cast on his hand.

9.    Whenever Plaintiff complained about his hand, I took him to the doctor. Plaintiff often complained about his pain to the doctor because he had a pin in his jaw (treatment from an injury due to a fight) and pins in his hand, and Dr. Siddiq told him to take Tylenol, but Plaintiff wanted stronger pain medicine, like narcotics. Dr. Siddiq told

Plaintiff he could not give him narcotics. I took Plaintiff to see Dr. Siddiq for post-surgery follow-up appointments as late as March 16, 2007.[3] Plaintiff received Vicodin when he first saw Dr. Chung, and although my office could not find the records for Plaintiff's receipt of Vicodin, until October 27, 2007, according to our policy and practice, we would have provided what Dr. Chung had prescribed.

10.    If the Detention Center has inmates who fight or cannot live peacefully with each other, the jail staff moves one or both inmates to another cell block. If an inmate needs discipline, or if he has simply fought with too many people, then we must place that inmate in the D cell, which can hold only two inmates. Normally, an inmate stays in D cell for three to five days, a "cooling off" period. However, Plaintiff was in D cell several times, and once told me that he wanted to stay in D cell because he had peace and could work on his case. Plaintiff was not in D cell continuously from January 2007 until August 2007.

11.    Inmates do not give out medications to other inmates. Officers are required to give medications to inmates, making sure they place the correct medication in the hand of the correct inmate. The Bullock County Detention Center was painted recently; however, the inmates make a practice of peeling the paint off the walls. Inmates incarcerated in D cell can go outside, and Plaintiff was able to do so while held in D cell. When toilets back up (sometimes purposely caused by inmates themselves), we fix the problem. However, we have never had a problem with the toilet in D cell backing up. The window in D cell has a metal plate welded over the window because the inmates formerly passed or received contraband through the window from the outside.

---

[3] On the March 16, 2007 Doctor Visit Note in Plaintiff's Jail Medical Record, I left out some words that would have clarified the appointment was for follow-up after Plaintiff's surgery, not for scheduling of Plaintiff's surgery.

12.     I told Plaintiff that he was not entitled to see the assets and accounts of the Bullock County Detention Center.  I also told Plaintiff that he was entitled to $35.00 per week that relatives could bring to him.  I keep notes on the amounts that are brought to inmates each week, but there are no "books" of inmate accounts.  Plaintiff has a lawyer assisting with his criminal case named Paul Brunson.  Aside from his lawyer, others can come to visit Plaintiff on Sundays.  That time period includes a Notary Public who can come to notarize documents for Plaintiff or any other inmate.  In Plaintiff's case, he demanded a Notary Public to come on the day of his request for one.

13.     If at any time I denied Plaintiff a visit to the doctor, it was because Dr. Chung told Plaintiff that he would not see Plaintiff any longer.  In spite of the fact that Dr. Chung had told Plaintiff in March of 2007 and in my presence that he had reached maximum healing, that his hand had healed well, that he had good movement, and that there was no reason for Plaintiff to see him any further, Plaintiff still demanded more treatment or pain medication from Dr. Chung.  Dr. Chung said that his schedule would not allow Plaintiff unlimited visits after that point.  Dr. Siddiq told me and Plaintiff that Plaintiff did not need narcotic drugs for his pain and that it was inappropriate so many months after a hand surgery like Plaintiff had to continue to give narcotic pain medication to an inmate.

14.     Internal grievance procedures at the Bullock County Jail are available to all inmates.  It is the policy of the Bullock County Sheriff's Department that inmates are permitted to submit grievances and that each grievance will be acted upon.  To my knowledge, Plaintiff did not file a Grievance with the Bullock County Detention Center regarding his health situation or any other jail condition about which he has complained in his Complaint before the federal court.

15.    The treatment of Plaintiff's hand has cost over $8,000, and Bullock County has been directly responsible for paying over $1,800 of that treatment.

16.    I swear, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements are made by drawing from my personal knowledge of the situation.

_____
CURTIS PRITCHETT

~~SWORN TO~~ and ~~SUBSCRIBED~~ before me this 5th day of December 2007.


_____
NOTARY PUBLIC
My Commission Expires: August 25, 2011

# EXHIBIT  E

# Affidavit of Dorothy Thomas

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

ALFONZA GACHETT        )
                         )
       **Plaintiff**           )
                         )    **CIVIL ACTION NO. 2:07cv902-WKW**
vs.                         )
                         )
COUNTY COMMISSION,     )
(SHERIFF) RAYMOND ROGERS,   )
CHIEF JAILER CURTIS        )
PRITCHETT, DR. SADDIQ,      )
(JAILER) DORTHY THOMAS,    )
(JAILER) ANNIE L. REYNOLDS   )

### AFFIDAVIT OF DOROTHY THOMAS

STATE OF ALABAMA        )
                         )
COUNTY OF BULLOCK       )

      **BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Dorothy Thomas, who being known to me and being by me first duly sworn on oath deposes and says as follows:

      1.     My name is Dorothy Thomas. I am over the age of nineteen and competent to make this affidavit. I have been employed as a Jailer by the Bullock County Sheriff's Department for over1 year and 3 months.

      2.     I am familiar with the Plaintiff Alfonza Gachett due to his incarceration in the Bullock County Jail. I also know of him by name in the community.

      3.     I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.

4.      As a corrections officer with the Bullock County Sheriff's Department, I am familiar with the Bullock County Policy and Procedures Manual, which states:

> No member of the Detention Center staff will explain any risks or consequences involved in any medical procedure to an inmate.   The responsibility for this explanation rests solely with the health care provider.

Title 11.02, ¶ 3, Bullock County Detention Center Policy and Procedures Manual.  I and the other corrections officers comply with that Manual.

5.      I learned that Plaintiff injured his hand by fighting with another inmate. Plaintiff was often in fights with other inmates.  Plaintiff's fighting often caused him to be placed in D cell.  After being moved between the A and B cell blocks to prevent fights between inmates, we ran out of places to place Plaintiff.  Therefore, we placed Plaintiff in D cell.  In D cell, Plaintiff was allowed outside.  If a toilet backs up, the jail has it fixed. Only corrections officers give out medications to inmates.  I have never had an inmate ask me to help him or her to obtain a Notary Public.

6.      I swear, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements are made by drawing from my personal knowledge of the situation.

_____
DOROTHY THOMAS

**SWORN TO** and **SUBSCRIBED** before me this _27_ day of _____ 2007.

NOTARY PUBLIC
My Commission Expires:  _18 Feb 2008_

# EXHIBIT  F

# Affidavit of Johnnie Mae Martin

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **ALFONZA GACHETT** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | **CIVIL ACTION NO. 2:07cv902-WKW** |
| **vs.** | ) | |
| | ) | |
| **COUNTY COMMISSION,** | ) | |
| **(SHERIFF) RAYMOND ROGERS,** | ) | |
| **CHIEF JAILER CURTIS** | ) | |
| **PRITCHETT, DR. SADDIQ,** | ) | |
| **(JAILER) DORTHY THOMAS,** | ) | |
| **(JAILER) ANNIE L. REYNOLDS** | ) | |

## AFFIDAVIT OF JOHNNIE MAE MARTIN

| | |
|---|---|
| **STATE OF ALABAMA** | ) |
| | ) |
| **COUNTY OF BULLOCK** | ) |

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Johnnie Mae Martin, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.    My name is Johnnie Mae Martin. I am over the age of nineteen and competent to make this affidavit. I have been employed as a Corrections Officer by the Bullock County Sheriff's Department since 1999.

2.    I am familiar with the Plaintiff Alfonza Gachett due to his incarceration in the Bullock County Jail.

3.    I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.

4.     As a corrections officer with the Bullock County Sheriff's Department, I am familiar with the Bullock County Policy and Procedures Manual, which states:

> No member of the Detention Center staff will explain any risks or consequences involved in any medical procedure to an inmate. The responsibility for this explanation rests solely with the health care provider.

Title 11.02, ¶ 3, Bullock County Detention Center Policy and Procedures Manual. I and the other corrections officers comply with that Manual.

5.     I work the 4:00-to-midnight shift, so I was not present when Plaintiff injured his hand. I heard from an inmate that a fight had occurred the previous night. I learned about it on October 9, 2006. Although Plaintiff often complained about things while incarcerated, he did not complain to me about his hand or any pain he was in before he saw a doctor. Nor did he ever complain about his hand or pain after he saw a doctor. Once I was present when Plaintiff refused to take the pain medication the doctor had prescribed for him. He stated that it did not do him any good, so he wouldn't take it.

6.     Plaintiff could not get along with any inmates, so he often fought. We moved him around, and he was often in the D cell. At some time, Plaintiff wanted to be alone in D cell. The jail has been painted, but the inmates peeled the paint off the walls. Everyone in D cell, including Plaintiff, gets the opportunity to go outside. The jail fixes any problems that occur with the toilets. Because inmates would pass contraband in and out of the window in D cell, the jail welded a metal plate over the window. According to the rules and under the supervision of the Jail Administrator and the Sheriff, only corrections officers hand out medications into the hands of inmates.

7.      When Plaintiff asked for a law book, it was given to him.  He was allowed to go into a room at the front of the jail, near booking, where he could study the book alone and undisturbed.    I do not know of any Notary Public problem.    The Jail Administrator does what is necessary to ensure the inmates obtain legitimate needs.

8.      I swear, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements are made by drawing from my personal knowledge of the situation.

*Johnnie Mae Martin*
JOHNNIE MAE MARTIN

**SWORN TO** and **SUBSCRIBED** before me this 27 day of _December_ 2007.

*Barbara S Lewis*
NOTARY PUBLIC
My Commission Expires: 18 Feb 3007

# EXHIBIT  G

# Affidavit of Annie L. Reynolds

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| **ALFONZA GACHETT** | ) |
| | ) |
| **Plaintiff** | ) |
| | ) **CIVIL ACTION NO. 2:07cv902-WKW** |
| **vs.** | ) |
| | ) |
| **COUNTY COMMISSION,** | ) |
| **(SHERIFF) RAYMOND ROGERS,** | ) |
| **CHIEF JAILER CURTIS** | ) |
| **PRITCHETT, DR. SADDIQ,** | ) |
| **(JAILER) DORTHY THOMAS,** | ) |
| **(JAILER) ANNIE L. REYNOLDS** | ) |

### AFFIDAVIT OF ANNIE L. REYNOLDS

| | |
|---|---|
| STATE OF ALABAMA | ) |
| | ) |
| COUNTY OF BULLOCK | ) |

**BEFORE ME,** the undersigned authority and Notary Public in and for said County and State at large, personally appeared Annie L. Reynolds, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.    My name is Annie L. Reynolds.   I am over the age of nineteen and competent to make this affidavit.  I have been employed as a Corrections Officer by the Bullock County Sheriff's Department since 1986.  I have attended the Jail School for Corrections Officers in Selma, Alabama.

2.    I am familiar with the Plaintiff Alfonza Gachett due to his incarceration in the Bullock County Jail.  I also know of his name in the community.

3.    I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.

4.      As a corrections officer with the Bullock County Sheriff's Department, I am familiar with the Bullock County Policy and Procedures Manual, which states:

> No member of the Detention Center staff will explain any risks or consequences involved in any medical procedure to an inmate. The responsibility for this explanation rests solely with the health care provider.

Title 11.02, ¶ 3, Bullock County Detention Center Policy and Procedures Manual. I and the other corrections officers comply with that Manual.

5.      I was not at work at the time that Plaintiff was injured, but after I returned to work, Plaintiff did not complain to me about his hand or any pain. I do not know of him complaining to anyone else, and he filed nothing in writing complaining or requesting medical care. Corrections Officers at the Bullock County Detention Center follow the policies of the Manual and do not attempt to "play" doctor. If an inmate complains of a medical problem or injury, the jail contacts the doctor.

6.      In D cell, there is no TV; however, inmates in D cell can go outdoors. The inmates have broken up the material in the window, so the jail had to weld a metal plate over the window. The inmates in D cell receive meals and medication. Sometimes sewage may back up. If so, the jail cleans it up. However, I do not know of the toilet in D cell ever backing up. Only Corrections Officers can give out medications to an inmate and only in the amount prescribed by a physician.

7.      I swear, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements are made by drawing from my personal knowledge of the situation.

_ANNIE L. REYNOLDS_

**SWORN TO** and **SUBSCRIBED** before me this 29th day of November 2007.

NOTARY PUBLIC
My Commission Expires: 12/13/2010

# EXHIBIT  H

# Affidavit of Veronica Harris

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **ALFONZA GACHETT** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | **CIVIL ACTION NO. 2:07cv902-WKW** |
| **vs.** | ) | |
| | ) | |
| **COUNTY COMMISSION,** | ) | |
| **(SHERIFF) RAYMOND ROGERS,** | ) | |
| **CHIEF JAILER CURTIS** | ) | |
| **PRITCHETT, DR. SADDIQ,** | ) | |
| **(JAILER) DORTHY THOMAS,** | ) | |
| **(JAILER) ANNIE L. REYNOLDS** | ) | |

## AFFIDAVIT OF VERONICA HARRIS

| | |
|---|---|
| **STATE OF ALABAMA** | ) |
| | ) |
| **COUNTY OF BULLOCK** | ) |

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Veronica Harris, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.      My name is Veronica Harris. I am over the age of nineteen and competent to make this affidavit. I have been employed as a Corrections Officer by the Bullock County Sheriff's Department since 2002.

2.      I am familiar with the Plaintiff Alfonza Gachett due to his incarceration in the Bullock County Jail. I also know of the Plaintiff in the community.

3.      I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.

4.      As a corrections officer with the Bullock County Sheriff's Department, I am familiar with the Bullock County Policy and Procedures Manual, which states:

> No member of the Detention Center staff will explain any risks or consequences involved in any medical procedure to an inmate. The responsibility for this explanation rests solely with the health care provider.

Title 11.02, ¶ 3, Bullock County Detention Center Policy and Procedures Manual. I and the other corrections officers comply with that Manual.

5.      I was not on duty when the Plaintiff injured his hand, but I heard about the incident after returning to work. Plaintiff never complained to me about his hand, and I do not know of any delay in Plaintiff receiving treatment for his hand. I personally gave Plaintiff his pain medicine after he saw a doctor. When anyone sees a doctor, I place that information in the computer.

6.      Plaintiff was often involved in a fight. He had a very demanding attitude, saying things to me personally when I was getting something for him like, "Hurry up. Make it quick." Because Plaintiff often fought, he was in and out of D cell; he was not in D cell the entire time from January to August 2007. The inmates have peeled off the paint from the inside of the jail. Inmates in D cell, including Plaintiff, get to go outside. If a toilet backs up, the jail gets it fixed. The inmates in D cell knocked the material out of the window so those on the outside could give the inmates contraband. Therefore, the jail welded a metal plate over the window. Only Corrections Officers pass out medications to inmates. I work the night shift and have never had to find a Notary Public for an inmate.

7.    I swear, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements are made by drawing from my personal knowledge of the situation.


VEROINICA HARRIS

*Varonica. Harris*

**SWORN TO** and **SUBSCRIBED** before me this 26 day of Nov 2007.


NOTARY PUBLIC
My Commission Expires: 18 Feb 2008

# EXHIBIT  I

# Affidavit of Ruby Thomas

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| **ALFONZA GACHETT** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | **CIVIL ACTION NO. 2:07cv902-WKW** |
| **vs.** ) | |
| ) | |
| **COUNTY COMMISSION,** ) | |
| **(SHERIFF) RAYMOND ROGERS,** ) | |
| **CHIEF JAILER CURTIS** ) | |
| **PRITCHETT, DR. SADDIQ,** ) | |
| **(JAILER) DOROTHY THOMAS,** ) | |
| **(JAILER) ANNIE L. REYNOLDS** ) | |

### AFFIDAVIT OF RUBY THOMAS

| | |
|---|---|
| **STATE OF ALABAMA** ) | |
| ) | |
| **COUNTY OF BULLOCK** ) | |

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Ruby Thomas, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.    My name is Ruby Thomas. I am over the age of nineteen and competent to make this affidavit. I have been employed as a Corrections Officer by the Bullock County Sheriff's Department since 1988.

2.    I am familiar with the Plaintiff Alfonza Gachett due to his incarceration in the Bullock County Jail, and I know of him by name in the community.

3.    I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.

4.     As a corrections officer with the Bullock County Sheriff's Department, I am familiar with the Bullock County Policy and Procedures Manual, which states that corrections officers do not provide medical advice or treatment to inmates. The Manual states:

> No member of the Detention Center staff will explain any risks or consequences involved in any medical procedure to an inmate. The responsibility for this explanation rests solely with the health care provider.

Title 11.02, ¶ 3, Bullock County Detention Center Policy and Procedures Manual. I and the other corrections officers comply with that Manual.

5.     I was not on duty when the Plaintiff was injured. I learned about it after coming back to work on my normal shift. I learned that Plaintiff had been fighting and had injured his hand. Plaintiff himself spoke to me and told me he needed to go to a doctor, but he did not tell me that no one would take him or that he had been hurt more than a day. I work in Central Control and know whenever an inmate is taken by Mr. Pritchett, the Jail Administrator, to the doctor. Mr. Pritchett took Plaintiff to Montgomery to visit a doctor three or four times. After Plaintiff went to the doctor, he did not complain of pain to me or anyone else that I knew of, nor did he complain that his hand needed further treatment.

6.     I have heard D cell called "the hole" by some inmates. Plaintiff fought with other inmates often; therefore, he was in and out of D cell between January and August of 2007. Although there was no TV in D cell, we let inmates in D cell have CD players/radios with headphones. There is a metal plate over the window because inmates tore the material off the window so that contraband could be passed back and forth.

Inmates peeled the paint off the walls. There has been no sewage back-up in the toilet of D cell. In other cells, inmates placed food in toilets to stop them up. We would fix the toilets. Only corrections officers give out medications to inmates. The Jail Administrator can obtain a Notary Public for an inmate if necessary.

7.    I swear, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements are made by drawing from my personal knowledge of the situation.

RUBY THOMAS

**SWORN TO** and **SUBSCRIBED** before me this _11_ day of _Nov,_ 2007.

NOTARY PUBLIC
My Commission Expires: _18 Feb 08_

# EXHIBIT  J$_1$

# Plaintiff's Jail Medical Records

PO BOX 2107
MONTGOMERY AL 36124-1708
334-273-4100

| 5. FED. TAX NO. | 6 STATEMENT COVERS PERIOD | | 7 COV D. | 8 N-C D. | 9 C-I D. | 10 L-R C. | 11 |
| 013 | 101206 101206 | THROUGH | | | | | |

12 PATIENT NAME
13 PATIENT ADDRESS

GACHETT ALFONZA                    PO BOX 472 UNION SPRI AL 36089

| 14 BIRTHDATE | 15 SEX | 16 MS | 17 DATE | 18 HR | 19 TYPE | 20 SRC | 21 D HR | 22 STAT | 23 MEDICAL RECORD NO. | 24 | CONDITION CODES | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| 09071963 | M | M | 101206 | 08 | 3 | 1 | 19 | 01 | 0628500114 | | | | | | | | | |

| 32 OCCURRENCE CODE | DATE | 33 | 34 OCCURRENCE CODE | DATE | 35 | 36 | OCCURRENCE SPAN | | 37 |
| | | | | | CODE | FROM | THROUGH | | |
| a | 11 | 101206 | A1 | 090763 | | | | | |
| b | | | | | | | | | |

38

BULLOCKCOUNTYCORRECTIONAL
PO BOX 472

UNION SPRI AL 36089

| | 39 | VALUE CODES | 40 | | 41 | VALUE CODES | |
| | CODE | AMOUNT | | | CODE | AMOUNT | |
| a | | | | | | | |
| b | | | | | | | |
| c | | | | | | | |
| d | | | | | | | |

| 42 REV. CD. | 43 DESCRIPTION | 44 HCPCS / RATES | 45 SERV. DATE | 46 SERV. UNITS | 47 TOTAL CHARGES | | 48 NON-COVERED CHARGES | 49 |
| 0250 | PHARMACY | | 101206 | 6 | 414 | 45 | | |
| 0270 | MED-SUR SUPPLIES | | 101206 | 1 | 131 | 30 | | |
| 0272 | STERILE SUPPLY | | 101206 | 27 | 1053 | 15 | | |
| 0278 | SUPPLY/IMPLANTS | | 101206 | 10 | 177 | 30 | | |
| 0300 | AUTOMATED HEMOGRAM | 85025 | 101206 | 1 | 106 | 75 | | |
| 0320 | X-RAY EXAM OF HAND | 73120LT | 101206 | 1 | 261 | 55 | | |
| 0360 | REPAIR METACARPAL FRACT | 26615RT | 101206 | 1 | 2108 | 05 | | |
| 0360 | REPAIR METACARPAL FRACT | 2661559 | 101206 | 1 | 2108 | 05 | | |
| 0370 | ANESTHESIA | | 101206 | 94 | 902 | 90 | | |
| 0370 | ANESTHESIA | | 101206 | 1 | 107 | 80 | | |
| 0370 | ANESTHESIA | | 101206 | 1 | 43 | 70 | | |
| 0636 | INJ, SUBLIMAZE, MAX 2 M | J3010 | 101206 | 1 | 41 | 50 | | |
| 0637 | SELF ADMIN DRUGS | | 101206 | 2 | 23 | 30 | | |
| 0710 | RECOVERY ROOM | | 101206 | 46 | 671 | 20 | | |

0001  TOTAL CHARGES                                             8151 00

| 50 PAYER | 51 PROVIDER NO. | 52 REL INFO | 53 ASG BEN | 54 PRIOR PAYMENTS | 55 EST. AMOUNT DUE | | 56 |
| BULLOCK COUNTY SHERIFF OF | 203204949 | Y | Y | | 8151 | 00 | |

57                    DUE FROM PATIENT ▶

| 58 INSURED'S NAME | 59 P-REL | 60 CERT. - SSN - HIC. - ID NO. | 61 GROUP NAME | 62 INSURANCE GROUP NO. |
| GACHETT ALFONZA | 18 | 416983959 | BULLOCK COUNTY | |

| 63 TREATMENT AUTHORIZATION CODES | 64 ESC | 65 EMPLOYER NAME | 66 EMPLOYER LOCATION |
| | 3 | BULLOCK COUNTY SHERIFFS | |

| 67 PRIN. DIAG. CD. | 68 CODE | OTHER DIAG. CODES | | 70 CODE | OTHER DIAG. CODES | 72 CODE | | 73 | 76 ADM. DIAG. CD. | 77 E-CODE | 78 |
| 81500 | | | | | | | | | 81500 | | |

| 79 P.C. | 80 PRINCIPAL PROCEDURE | | 81 | OTHER PROCEDURE | | 82 ATTENDING PHYS. ID | |
| | CODE | DATE | | CODE | DATE | | |
| 9 | 7930 | 101206 | | | | CHUNG TAI Q | |
| | OTHER PROCEDURE | | | OTHER PROCEDURE | | 83 OTHER PHYS. ID | |
| | CODE | DATE | | CODE | DATE | A42543 CHUNG TAI Q | |

84 REMARKS

BULLOCK COUNTY SHERIFF OFFICE
217 NORTH PRAIRIE ST
UNION SPRINGS AL 36089

| 85 PROVIDER REPRESENTATIVE | 86 DATE |
| X  SHIRLEY BERRY | |

UB-92    ORIGINAL                    N-LCF-UB92-1        I CERTIFY...    012307

# EXHIBIT  J$_2$

# Plaintiff's Jail Medical Records

**BULLOCK COUNTY JAIL DOCTOR'S REPORT**
**217 PRAIRIES STREET NORTH**
**UNION SPRINGS, ALABAMA**
**(334) 738-2222 OR 738-2670**

Name: _Alfonza Gockett_     Facility: _Bullock Co. Jail_

Jailer Name: _Ruby Thomas_     Date: _9-20-06_

| INMATES NAME | INMATES SIGNATURE | DOCTOR NAME | DATE TAKEN TO DOCTOR | INMATES COMPLAINAT |
|---|---|---|---|---|
| Alfonza Gockett | Alfonza Gockett | Siddiq | 9-20-06 | Stomach |
| | | | | |
| | | | | |

Inmates Signature _Alfonza Gockett_

Officer Signature _Chief Pritchett_

Notes: _____

_____

# BULLOCK COUNTY JAIL DOCTOR'S REPORT
## 217 PRAIRIES STREET NORTH
## UNION SPRINGS, ALABAMA
## (334) 738-2222 OR 738-2670

Name: _Alfonza Hackett_    Facility: _B.C. Jail_

Jailer Name: _Ruby Thomas_    Date: _10-11-06_

| INMATES NAME | INMATES SIGNATURE | DOCTOR NAME | DATE TAKEN TO DOCTOR | INMATES COMPLAINAT |
|---|---|---|---|---|
| Alfonza Hackett | _[signature]_ | Dr. Siddia | 10-11-06 | Broke Hand |
| | | Dr. Cheng | 10-11-06 | Broke Hand |
| | | | | |

Inmates Signature _[signature]_

Officer Signature _Chief Pritchett_

Notes: _____

# BULLOCK COUNTY JAIL DOCTOR'S REPORT
## 217 PRAIRIES STREET NORTH
## UNION SPRINGS, ALABAMA
### (334) 738-2222 OR 738-2670

Name: _Alfonza Crockett_    Facility: _Bullock County Jail_

Jailer Name: _____    Date: _10-12-06_

| INMATES NAME | INMATES SIGNATURE | DOCTOR NAME | DATE TAKEN TO DOCTOR | INMATES COMPLAINAT |
|---|---|---|---|---|
| Alfonza Crockett | _(signature)_ | Chronge | 10-12-06 | Having Surgery |
| | | | | |
| | | | | |

Inmates Signature _Alfonza Crockett_

Officer Signature _____

Notes: _____

_____

# BULLOCK COUNTY JAIL DOCTOR'S REPORT
## 217 PRAIRIES STREET NORTH
## UNION SPRINGS, ALABAMA
## (334) 738-2222 OR 738-2670

Name: *Alfonza Hackett*          Facility: *B.C. Jail*

Jailer Name: *Ruby Thorns*          Date: *11-01-06*

| INMATES NAME | INMATES SIGNATURE | DOCTOR NAME | DATE TAKEN TO DOCTOR | INMATES COMPLAINAT |
|---|---|---|---|---|
| *Alfonza Hackett* | | *Dr Chunaze* | *11-01-06* | *Broke Hand* |
| | | | | |
| | | | | |

Inmates Signature _____

Officer Signature *Chief Pritchett* _____

Notes: _____

_____

# BULLOCK COUNTY JAIL DOCTOR'S REPORT
## 217 PRAIRIES STREET NORTH
## UNION SPRINGS, ALABAMA
### (334) 738-2222 OR 738-2670

Name: _Alfonza Hackett_ Facility: _Bullock Co. Jail_

Jailer Name: _Ruby Thomas_ Date: _11-28-06_

| INMATES NAME | INMATES SIGNATURE | DOCTOR NAME | DATE TAKEN TO DOCTOR | INMATES COMPLAINAT |
|---|---|---|---|---|
| Alfonza Hackett | Alfonza Hackett | East Mental Health Center | 11-28-07 | |
| | | | | |
| | | | | |

Inmates Signature _Alfonza Hackett_

Officer Signature _Chief Jailer Pritchett_

Notes: _____

_____

# BULLOCK COUNTY JAIL DOCTOR'S REPORT
## 217 PRAIRIES STREET NORTH
## UNION SPRINGS, ALABAMA
## (334) 738-2222 OR 738-2670

Name: _Alfonza Hackett_    Facility: _Bullock Co. Jail_

Jailer Name: _Ricky Thomas_    Date: _12-06-06_

| INMATES NAME | INMATES SIGNATURE | DOCTOR NAME | DATE TAKEN TO DOCTOR | INMATES COMPLAINAT |
|---|---|---|---|---|
| Alfonza Hackett | Alfonza Hackett | Chunn | 12-06-06 | Hand Hurts |
| | | | | |
| | | | | |

Inmates Signature _Alfonza Hackett_

Officer Signature _____

Notes: _____

_____

# BULLOCK COUNTY JAIL DOCTOR'S REPORT
## 217 PRAIRIES STREET NORTH
## UNION SPRINGS, ALABAMA
## (334) 738-2222 OR 738-2670

Name: _Alfonza Gackett_    Facility: _Bullock Co Jail_

Jailer Name: _Baby Thomas_    Date: _01-22-07_

| INMATES NAME | INMATES SIGNATURE | DOCTOR NAME | DATE TAKEN TO DOCTOR | INMATES COMPLAINAT |
|---|---|---|---|---|
| Alfonza Gackett | Alfonza Gackett | Dr. Siddig | 01-22-07 | Foot (jaw) |
|  |  |  |  |  |
|  |  |  |  |  |

Inmates Signature _Alfonza Gackett_

Officer Signature _Chief Whitehott_

Notes: _____
_____

# BULLOCK COUNTY JAIL DOCTOR'S REPORT
## 217 PRAIRIES STREET NORTH
## UNION SPRINGS, ALABAMA
## (334) 738-2222 OR 738-2670

Name: Alfonza Gachett          Facility: Bullock Co Jail

Jailer Name: Johnnie Martin       Date: 03-16-07

| INMATES NAME | INMATES SIGNATURE | DOCTOR NAME | DATE TAKEN TO DOCTOR | INMATES COMPLAINAT |
|---|---|---|---|---|
| Alfonza Gachett | Alfonza Sackett | Chung | 03-16-07 | Right Hand |
| | | | | |

Inmates Signature _Alfonza Sackett_

Officer Signature _Curtis Putchett_

Notes: Inmate were taken Back to doctor To
Schedule sugery on Right Hand

# BULLOCK COUNTY
## DOCTOR VISIT SHEET

**Name** Alfonza Guchett

**Date Carried to Doctor** 03-16-07

**Name of Doctor** Chung

**Complaint of Inmate** Right Hand

_____

_____

_____

**Officer Signature** Curtis Pritchett

**Name** Randy Syrate

**Date Carried to Doctor** 03-23-07

**Name of Doctor** Dr. Lopez mental Health

**Complaint of Inmate** Coulsivu

_____

_____

**Officer Signature** Chief Pritchett

**Name** Randy Syrate

**Date Carried to Doctor** @ 04-02-07

**Name of Doctor** East mental Health

**Complaint of Inmate** Consouler

_____

_____

**Officer Signature** Chief Pritchett

# BULLOCK COUNTY JAIL DOCTOR'S REPORT
## 217 PRAIRIES STREET NORTH
## UNION SPRINGS, ALABAMA
## (334) 738-2222 OR 738-2670

Name: _Alfonza Gachett_          Facility: _Bullock County Jail_

Jailer Name: _Johnnie Martin_      Date: _08-31-07_

| INMATES NAME | INMATES SIGNATURE | DOCTOR NAME | DATE TAKEN TO DOCTOR | INMAT. COMPLA |
|---|---|---|---|---|
| Alfonza Gachett | Alfonza Gachett | Siddiq | 08-31-07 | Pain Joint Hand |
|  |  |  |  |  |
|  |  |  |  |  |

Inmates Signature _Alfonza Gachett_

Officer Signature _Curtin Pritchett_

Notes: _Inmate stated that he continue to have pain in the right joer and right hand Dr. Siddiq stated the there were nothing wrong with their inmate Cp_

Case 2:07-cv-00902-WKW-TFM   Document 13-31   Filed 12/10/2007   Page 96 of 135

# BULLOCK COUNTY JAIL DOCTOR'S REPORT
## 217 PRAIRIES STREET NORTH
## UNION SPRINGS, ALABAMA
## (334) 738-2222 OR 738-2670

Name: _Alfonza Gachett_      Facility: _Bullok Co Jail_

Jailer Name: _Ruby Thomas_      Date: _9/21/07_

| INMATES NAME | INMATES SIGNATURE | DOCTOR NAME | DATE TAKEN TO DOCTOR | INMATE COMPLAI |
|---|---|---|---|---|
| Alfonza Gachett | Alfonza Gachett | Dentist Kruger | 9/21/07 | tooth |
| | | | | |
| | | | | |

Inmates Signature _Alfonza Gachett_

Officer Signature _Chief Pritchett_

Notes: _____

_____

# BULLOCK COUNTY JAIL DOCTOR'S REPORT
## 217 PRAIRIES STREET NORTH
## UNION SPRINGS, ALABAMA
## (334) 738-2222 OR 738-2670

Name: _Alfonzo Hachett_           Facility: _Bullock Co Jail_

Jailer Name: _Johnnie Martin_           Date: _9/25/07_

| INMATES NAME | INMATES SIGNATURE | DOCTOR NAME | DATE TAKEN TO DOCTOR | INMATES COMPLAINAT |
|---|---|---|---|---|
| Alfonzo Hachett | X | Kruger | 9/25/07 | tooth |
| | | | | |
| | | | | |

Inmates Signature ___X_____

Officer Signature _____

Notes: _____

_____

# EXHIBIT  J₃

# Plaintiff's Jail Medical Records

# BULLOCK COUNTY JAIL
## MEDICATION & TREATMENT RECORD

Name _Alfonza Cachett_

Status _____

| Physician | Prescription number | Pharmacy | Administered By | Date | Time |
|-----------|---------------------|----------|-----------------|------|------|
| Dr. Siddie | 1331356 | Main | Harris | 10-29-06 | 7:27 Am |
| | 1331356 | Main | Reynolds | 10-30-06 | 7:10 A |
| | 1331356 | Main | Reynolds | 10-31-06 | 6:50A |
| | 1331356 | Main | D Thomas | 11-01-06 | 7:00Am |
| | 1331356 | Main | Harris | 11-02-06 | 7:15 Am |
| | 1331356 | Main | Harris | 11-03-06 | 7:20Am |
| | 1331356 | Main | Narris | 11-4-06 | 7:41 A |
| | | ~~Main~~ | | ~~11-01-06~~ | ~~7:00 A~~ |
| | 1331356 | Main | Harris | 11-5-06 | 7:07Am |
| | 1331356 | Main | Reynolds | 11-6-06 | 7:10 A |
| | 1331356 | Main | Reynolds | 11-7-06 | 2:15 A |
| | 1331356 | Main | D Thomas | 11-08-06 | 7:00A |
| | 1331356 | Main | D Thomas | 11-9-6 | 7:10A |
| | 1331356 | Main | D Thomas | 11-10-6 | 7:15A |
| | 1331356 | Main | Harris | 11-11-06 | 7:20A |
| | | Out | Reynolds | 11-14-06 | 7:22 |
| | 1331356 | Main | Narris | 11-15-06 | 7:07 |
| | 1331356 | Main | Harris | 11-16-06 | 7:27 |
| | 1331356 | Main | Harris | 11-17-06 | 7:30X |
| | 1331356 | Main | Harris | 11-18-06 | 7:15A |
| | 1331356 | Main | Harris | 11-19-06 | 7:27A |
| | 1331356 | main | D Thomas | 11-19-06 | 5:30p |
| | 1331356 | Main | Reynolds | 11-28-06 | 7:23 |

BULLOCK COUNTY JAIL
MEDICATION & TREATMENT RECORD

Alfonza Gachett

| ysician | Prescription number | Pharmacy | Administered By | Date | Time |
|---------|--------------------|----------|----------------|------|------|
| Tiddie | 1331356 | Main | Harris | 01-09-07 | 7:25 Am |
| | 1331356 | Main | Harris | 1-10-07 | 7:30 P |
| | 1331356 | Main | D Thomas | 1-11-07 | 6:30 Am |
| | 1331356 | Main | D Thomas | 01-12-07 | 6:25 Am |
| | 1331356 | Main | Harris | 01-13-07 | 7:10 Am |
| | 1331356 | Main | Martin | 1-14-07 | 7:11 A |
| | 1331356 | Main | Harris | 01-15-07 | 6:46 Am |
| | 1331356 | Main | D Thomas | 01-16-07 | 6:40 Am |
| | 1331356 | Main | D Thomas | 01-17-07 | 6:33 Am |
| Finish | 1331356 | Main | Harris | 01-18-07 | 6:10 Am |
| | 1331356 | Main | Harris | 01-18-07 | 8:20 Am |
| | 1331356 | Main | Harris | 01-19-07 | 6:05 Am |
| | 1331356 | Main | D Thomas | 01-20-07 | 6:30 Am |
| | 1331356 | Main | D Thomas | 01-21-07 | 6:32 Am |
| | 1331356 | Main | D Thomas | 01-22-07 | 6:15 Am |
| | 1346858 | Main | R+ | 01-22-07 | 6 52 pm |
| | 1346858 | Main | Harris | 01-22-07 | 7:21 Am |
| | 1346858 | Main | Harris | 01-23-07 | 6:40 Am |
| | 1331356 | Main | Harris | 01-23-07 | 6:40 Am |
| | 1346858 | Main | R+ | 01-23-07 | 12:10 pm |
| | 1346858 | Main | R+ | 01-23-07 | 5:00 pm |
| | 1346858 | Main | Harris | 01-23-07 | 7:20 Am |
| | 1346858 | Main | Harris | 01-24-07 | 6:46 A |
| | 1331356 | Main | Harris | 01-24-07 | 6:40 A |
| | 1346858 | Main | Martin | 1-24-07 | 4:54 P |

**Bullock County Jail**
## MEDICATION & TREATMENT RECORD

Name of Prisoner _Alfonza Crochett_ _____

Status _____

| PHYSICIAN | PRESCRIPTION NUMBER | PHARMACY | ADMINISTERED BY | DATE | TIME |
|---|---|---|---|---|---|
| T- SIDDIQ | 1331356 1331356 | Main main | D Thomas Harris | 01-31-07 02-01-07 | 6:15 Am 6:30 Am |
| | 1331356 1331356 1331356 | Main " Main | Harris D.T. D Thomas | 02-02-07 02-03-07 02-04-07 | 6:27 Am 6:45 Am 6:30 Am |
| | 1331356 1331356 | Main main | D Thomas GosheA | 02-05-07 2-13-07 | 6:15 Am 6:45 Am |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

# BULLOCK COUNTY JAIL
## MEDICATION & TREATMENT RECORD

Name _____ Alfonza Crochett _____

Status _____ Inmate _____

| Physician | Prescription number | Pharmacy | Administered By | Date | Time |
|---|---|---|---|---|---|
| T. Siddiq | 1331365 | Main | Harris | 02-06-07 | 6:40 Am |
| | 1331365 | Main | Harris | 02-07-07 | 6:41 Am |
| | 1331365 | Main | D Thomas | 02-08-07 | 6:15 Am |
| | 1331365 | Main | D Thomas | 02-09-07 | 6:15 Am |
| | 1331365 | Main | Harris | 02-10-07 | 6:40 Am |
| | 1331365 | Main | Harris | 02-11-07 | 6:37 A |
| | 1331365 | Main | Harris | 02-12-07 | 6:20 Am |
| | 1331356 | Main | Crochet | 2-14-07 | 6:44 Am |
| | 1331356 | Main | Harris | 2-15-07 | 6:44 Am |
| Out | 1331356 | Main | Harris | 2-16-07 | 6:40 Am |
| | 1328359 | Main | Harris | | 6:37 Am |
| | 1328359 | Main | Harris | 03-02-07 | 6:15 Am |
| | 1328359 | Main | D Thomas | 03-03-07 | 6:45 Am |
| | 1328359 | Main | D, | 03-04-07 | 6:56 Am |
| | 1328359 | Main | D Thomas | 03-05-07 | 6:50 Am |
| | 1328359 | Main | Harris | 3-06-07 | 6:27 Am |
| | 1328359 | Main | Harris | 3-07-07 | 6:30 Am |
| | 1328359 | Main | D Thomas | 03-08-07 | 6:25 Am |
| | 1328359 | Main | D Thomas | 03-09-07 | 6:35 Am |
| | 1328359 | Main | Harris | 3-10-07 | 6:40 Am |
| | 1328359 | Main | Harris | 3-11-07 | 6:35 Am |
| | 1328359 | Main | Harris | 3-12-07 | 6:16 Am |
| | 1328359 | Main | D Thomas | 03-13-07 | 6:40 Am |
| | 1328359 | Main | D Thomas | 03-14-07 | 6:50 Am |

# BULLOCK COUNTY JAIL
## MEDICATION & TREATMENT RECORD

Name _Alfonza Gachett_

Status _____

| Physician | Prescription number | Pharmacy | Administered By | Date | Time |
|-----------|--------------------|---------|----------------|------|------|
| T. Siddiq | 1328359 | Main | Harris | 3-15-07 | 6:20 Am |
| | 1328359 | Main | Harris | 3-16-07 | 6:37 Am |
| | 1328359 | main | D Thomas | 3-17-07 | 6:30 Am |
| | ~~████████~~ | ~~████~~ | ~~████~~ | ~~████~~ | ~~████~~ |
| | ~~████~~ | ~~████~~ | ~~████~~ | | |
| | 1328359 | Main | D Thomas | 3-18-07 | 6:27 Am |
| | 1328359 | main | D Thomas | 3-19-07 | 6:50 Am |
| | 1328359 | Main | Harris | 3-20-07 | 6:27 Am |
| | 1328359 | Main | Harris | 3-21-07 | 6:40 Am |
| | 1328359 | main | D Thomas | 3-22-07 | 6:40 |
| | 1328359 | Main | D Thomas | 3-23-07 | 6:4 |
| | 1328359 | Main | Harris | 3-24-07 | 6:37 Am |
| | 1328359 | Main | Harris | 3-25-07 | 6:30 Am |
| | 1328359 | Main | Harris | 3-26-07 | 6:29 Am |
| | 1328359 | Main | D Thomas | 3-27-07 | 6:50 Am |
| | 1328359 | main | D Thomas | 3-28-07 | 6:35 Am |
| | 1328359 | Main | Harris | 3-29-07 | 6:40 Am |
| | 1328359 | Main | Harris | 3-30-07 | 6:40 Am |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

# MEDICATION & TREATMENT RECORD

Name _____ Alfonza Gachett _____

Status _____

| Physician | Prescription number | Pharmacy | Administered By | Date | Time |
|---|---|---|---|---|---|
| Siddig | 1328359 | Main | Reynolds | 4-14-07 | 6:50 |
| | 1328359 | Main | Reynolds | 4-15-07 | 6:45 |
| | 1328359 | Main | Reynolds | 4-15-07 | 6:40 A |
| | 1328359 | Main | D Thomas | 4-17-07 | 6:30 AM |
| | 1328359 | main | D Thomas | 4-18-07 | 6:30 AM |
| | 1328359 | Main | Reynolds | 4-19-07 | 6:40 |
| | 1328359 | Main | Reynolds | 4-20-07 | 6:35 A |
| | 1328359 | Main | Harris | 4-21-07 | 6:46 Am |
| | 1328359 | Main | Harris | 4-22-07 | 6:39 A |
| | 1328359 | Main | Harris | 4-23-07 | 6:49 A |
| | 1328359 | Main | Reynolds | 4-24-07 | 6:50 |
| | 1328359 | Main | Reynolds | 4-25-07 | 6:45 |
| | 1328359 | Main | Harris | 4-26-07 | 6:40 A |
| | 1328359 | Main | Harris | 4-27-07 | 6:30 A |
| | 1328359 | Main | D Thomas | 4-28-07 | 6:35 A |
| Out | 1328359 | Main | D Thomas | 4-29-07 | 6:20 AM |
| | 1328359 | Main | Harris | 5-01-07 | 6:40 A |
| | 1328359 | Main | Harris | 5-02-07 | 6:30 |
| | 1328359 | Main | Reynolds | 5-3-07 | 6:40 |
| | 1328359 | Main | Reynolds | 5-4-07 | 6:35 |
| | 1328359 | main | Harris | 5-5-07 | 6:20 |

BULLOCK COUNTY JAIL
MEDICATION & TREATMENT RECORD

Name _Alfonza Cachett_

Status _____

| Physician | Prescription number | Pharmacy | Administered By | Date | Time |
|-----------|---------------------|----------|-----------------|------|------|
| T. Siddiq | 1328359 | Main | Harris | 05-05-07 | 6:20 Am |
| | 1328359 | Main | Harri | 05-06-07 | 6:02 Am |
| | 1328359 | Main | Harri | 05-07-01 | 6:31 Am |
| | 1328359 | Main | Reynolds | 5-8-07 | 6:40 A |
| | 1363525 | Main | Martin | 5-8-07 | 6:00 P |
| | 1328359 | Main | Reynolds | 5-9-07 | 6:45 A |
| | 1363525 | Main | Reynolds | 5-9-07 | 6:45 A |
| | 136352 | Main | R.t. | 5-9-07 | 12:45 pm |
| | 136352 | Main | R.t | 5-9-07 | 5:15 pm |
| | 1328359 | Main | Harris | 2-07 | 6:40 Am |
| | 1363525 | Main | Harris | -10-07 | 6:40 Am |
| | 1363525 | Main | R.t. | 5-10-07 | 12:10 pm |
| | 1363525 | Main | R.t. | 5-10-07 | 5:10 pm |
| | 1363525 | Main | Harri | 5-11-07 | 6:00 Am |
| | 1363529 | Main | Harri | 5-11-07 | 6:00 Am |
| | 1363525 | Main | Martin | 5-11-07 | 12:00 P |
| | 1363525 | Main | Martin | 5-11-07 | 5:51 P |
| | 1328359 | Main | Reynolds | 5-12-07 | 6:35 A |
| | 1363525 | Main | Reynolds | 5-12-07 | 6:35 A |
| | 1363525 | Main | Martin | 5-12-07 | 12:00 P |
| | 1363525 | Main | Martin | 5-12-07 | 5:30 P |
| | 1328359 | Main | Reynolds | 5-13-07 | 6:40 A |
| | 1363525 | Main | Reynolds | 5-13-07 | 6:40 A |
| | 1363525 | Main | Martin | 5-13-07 | 4:13 P |
| | 1328359 | Main | Reynolds | 5-14-07 | 6:40 A |
| | 1363525 | Main | Reynolds | 5-14-07 | 6:40 A |

Name _____ Alfonza Daclott _____

Status _____

| Physician | Prescription number | Pharmacy | Administered By | Date | Time |
|---|---|---|---|---|---|
| Lillis | 1363525 | Main | R.t. | 5-14-07 | 12:10 pm |
| | 1363525 | Main | R.t. | 5-14-07 | 5:10 pm |
| | 1363525 | Main | Harris | 5-15-07 | 6:40 Am |
| 1328359 | ~~1008~~ | Main | Harris | 5-15-07 | 6:40 Am |
| | 1363525 | Main | R.t | 5-15-07 | 12:15 pm |
| | 1363525 | Main | R.t. | 5-15-07 | 5:15 pm |
| | 1328359 | Main | Harris | 5-16-07 | 6:50 Am |
| | ~~1328359~~ | ~~Main~~ | ~~Harris~~ | ~~5-17-07~~ | ~~6:50 Am~~ |
| | 1328359 | Main | Reynolds | 7-07 | 6:35 A |
| | 1328359 | MAIN | Reynolds | 5-18-07 | 6:30 A |
| | 1328359 | Main | Harris | 5-19-07 | 6:50 Am |
| | 1328359 | Main | Harris | 5-20-07 | 6:00 Am |
| | 1328359 | " " | Harris | 05-21-07 | 6:40 Am |
| | 1328359 | Main | Reynolds | 05-22-07 | 6:45 A |
| | 1328359 | Main | Reynolds | 5-23-07 | 6:30 A |
| | 1328359 | Main | Harris | 05-24-07 | 6:15 Am |
| | 1328359 | Main | Harris | 05-25-07 | 6:00 Am |
| | 1328359 | Main | Reynolds | 5-26-07 | 6:30 A |
| Out | 1328359 | Main | Reynolds | 5-27-07 | 6:40 A |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

BULLOCK COUNTY JAIL MEDICATION & TREATMENT RECORD

NAME _Alfonza Cachott_

STATUS _Inmate_

| PHYSICIAN | PRESCRIPTION NUMBER | PHARMACY | ADMINISTERED BY | DATE | TIME |
|---|---|---|---|---|---|
| T-Siddig | 1368113 | Main | D Thomas | 09/09/07 | 6:30A |
| | 1368113 | Main | D Thomas | 09/09/07 | 6:30A |
| | 1368113 | Main | D Thomas | 09/10/07 | 6:15A |
| | 1368113 | Main | Reynolds | 09-11-07 | 6:30 A |
| | 1368113 | Main | Reynolds | 09-12-07 | 6:30 A |
| | 1368113 | Main | D Thomas | 09/13/07 | 6:15 A |
| | 1368113 | Main | D Thomas | 09/14/07 | 6:30A |
| | 1368113 | Main | Reynolds | 09-15-07 | 6:30 A |
| | 1368113 | Main | Reynolds | 09-16-07 | 6:30A |
| | 1368113 | Main | Reynolds | 09-17-07 | 6:30 A |
| | 1368113 | Main | Harris | 09-18-07 | 6:40 Am |
| | 1368113 | Main | Harris | 9-19-07 | 6:47 |
| | 1368113 | Main | Reynolds | 9-20-07 | 6:30 A |
| | 1368113 | Main | Reynolds | 9-21-07 | 6:30 A |
| | 1383494 | main | R+ | 9/21-07 | 10:14 pm |
| | 1383492 | main | R+ | 9/21-07 | 10:14 pm |
| | 1384992 | main | R.+ | 9-21-07 | 4:30pm |
| | 1383494 | Main | R+ | 9-21-07 | 4:30p |
| | 138394 | Main | Harris | 9-21-07 | 8:49 A |
| | 138492 | Main | Harris | 9-21-07 | 8:49 A |
| | 138394 | | Harris - | 9-22-07 | 6:49 |
| | 1384 92 | | Harris - | 9-22-07 | 6:49 |
| | 1368113 | | | | |

# BULLOCK COUNTY JAIL MEDICATION & TREATMENT RECORD

NAME    Alfonza Gochett

STATUS

| PHYSICIAN | PRESCRIPTION NUMBER | PHARMACY | ADMINISTERED BY | DATE | TIME |
|---|---|---|---|---|---|
| T. Siddiq | 1368113 | Main | Harris | 08-16-07 | 6:15 Am |
| | 1368113 | Main | Harris | 8-17-07 | 6:37 Am |
| | 1368113 | Main | Reynolds | 08-18-07 | 6:30 A |
| | 1368113 | Main | Reynolds | 08-19-07 | 6:30 A |
| | 1368113 | Main | Reynolds | 08-20-07 | 6:30 A |
| Refused | 1368113 | Main | Harris | 08-21-07 | 6:07 Am |
| | 1368113 | Main | Harris | 08-22-07 | 6:49 Am |
| | 1368113 | Main | Reynolds | 08-23-07 | 6:30 A |
| | 1368113 | Main | Reynolds | 08-24-07 | 6:30 A |
| | 1368113 | Main | Harris | 8-25-07 | 6:27 A |
| | 1368113 | main | Harris | 8-26-07 | 6:30 A |
| | 1368113 | main | Harris | 08-27-07 | 6:00 Am |
| | 1368113 | Main | Reynolds | 08-28-07 | 6:30 A |
| | 1368113 | Main | Reynolds | 08-29-07 | 6:30 A |
| | 1368113 | Main | Harris | 8-30-07 | 6:21 Am |
| | 1368113. | Main | Harris | 8-31-07 | 6:40 Am |
| | 1368113 | Main | Reynolds | 9-1-07 | 6:30 A |
| | 1368113 | Main | Reynolds | 9-2-07 | 6:30 A |
| | 1368113 | Main | Reynolds | 9-3-07 | 6:30 A |
| | 1368113 | main | D Thomas | 09/04/07 | 6:30 A |
| | 1368113 | Main | Harris | 9-5-07 | 6:27 Ar |
| | 1368113 | Main | Reynolds | -07 | 6:30 A |
| | 1368113 | Main | Reynolds | 9-07-07 | 6:30 A |

MEDICAL JAIL MEDICATION & TREATMENT RECORD

NAME _Alfonya Hackett_

STATUS _Inmate_

| PHYSICIAN | PRESCRIPTION NUMBER | PHARMACY | ADMINISTERED BY | DATE | TIME |
|---|---|---|---|---|---|
| Krugler | 138 34 94 | Main | R. t. | 9/22/07 | 1:00 pm |
| | 138 34 92 | Main | R, t. | 9/22/07 | 1:00 pm |
| | 138 3494 | Main | R. t. | 9/22/07 | 7:00 p |
| | 138 3492 | Main | R. t | 9/22/07 | 7:00 p |
| | 138 3494 | " " | Harris | 9-23-07 | 6:37 A |
| | 138 3492 | " " | Harris | 9-23-07 | 6:37 |
| | 136 8113 | Main | Harris | 9-23-07 | 6:37 |
| | ~~136 8113~~ | ~~Main~~ | R. t | 9-13-07 | 4:30 |
| | 138349 | Main | R t | 9 | 7 |
| | ~~138 3492~~ | Main | R. t | 9/23-07 | 4:30 |
| | 138 3494 | Main | R t | 9/23-07 | 4:30 |
| | 138 3492 | Main | R, t | 9/23-07 | 4:30 |
| | 138 3494 | Main | D Thomas | 9-23-07 | 9:30p |
| | 138 3492 | Main | D Thomas | 9-23-07 | 9:30p |
| | 136 8113 | Main | D Thomas | 9-24-07 | 6:30h |
| | 138 3492 | Main | D Thomas | 9-24-07 | 6:30h |
| | 138 3494 | Main | D Thomas | 9-24-07 | 6:30h |
| | 138 3492 | Main | Martin | 9-24-07 | 12:00 |
| | 138 3492 | Main | Martin | 9-24-07 | 6:01 |
| | 136 8113 | Main | Reynolds | 09-25-07 | 6:30 |
| | 138 3492 | Main | Reynolds | 09-25-07 | 6:30 |
| | 138 3 492 | Main | Martin | 9-25-07 | 12:00 |
| | 138 3 492 | Main | Martin | 9-25-07 | 4:43 |

BULLOCK COUNTY JAIL MEDICATION & TREATMENT RECORD

NAME _Alfonza Gachett_

STATUS _____

| PHYSICIAN | PRESCRIPTION NUMBER | PHARMACY | ADMINISTERED BY | DATE | TIME |
|-----------|---------------------|----------|-----------------|------|------|
| O. Kruger | 1383492 | Main | Reynolds | 9-25-07 | 10:43 P |
|  | 1368113 | Main | Reynolds | 09-26-07 | 6:30 A |
|  | 3492 | Main | R.t. | 09/26/07 | 1:30 pm |
|  | 138492 | Main | R.t. | 9/26/07 | 4 30 pm |
|  | 1383492 | Main | Harris | 9-27-07 | 6:37 A |
|  | 1388113 | Main | Harris | 9-27-07 | 6:37 A |
|  | 1383492 | Main | R.t. | 9/27/07 | 1:10 pm |
|  | 1383492 | Main | R.t. | 9/27/07 | 4.35 Pm |
|  | 1383497 | Main | Harris | 9-28-07 | 6:40 A |
|  | 1383492 | Main | Harris | 9-28-07 | 6:40 A |
|  | 1383492 | Main | Martin | 9-28-07 | 6:40 P |
|  | 1383492 | Main | Martin | 9-28-07 | 4:45 P |
|  | 1368113 | Main | Reynolds | 9-29-07 | 6:30 A |
| Out | 1383492 | Main | Reynolds | 9-29-07 | 6:30 A |
|  | 1368113 | Main | Reynolds | 9-30-07 | 6:30 A |
|  | 1368113 | Main | Reynolds | 10-01-07 | 6:30 A |
|  | 1368113 | Main | Harris | 10-02-07 | 6:35 Am |
|  | 1368113 | Main | Harris | 10-3-07 | 6:40 Am |
|  | 1384742 | Main | D. Thomas | 10/4/7 | 6:30 Am |
|  | 1384742 | Main | Reynolds | 12-05-07 | 6:30 A |

## BULLOCK COUNTY JAIL MEDICATION & TREATMENT RECORD

NAME ___Alfonza Cochett___

STATUS _____

| PHYSICIAN | PRESCRIPTION NUMBER | PHARMACY | ADMINISTERED BY | DATE | TIME |
|---|---|---|---|---|---|
| T. Siddiq | 1384742 | Main | Harris | 10/6/07 | 6:30 Am |
| | 1384742 | Main | Harris | 10-7-07 | 6:37 Am |
| | 1384742 | Main | Harris | 10-8-07 | 6:37 A |
| | 1384742 | Main | Reynolds | 10-9-07 | 6:30 A |
| | 1384742 | Main | Reynolds | 10-10-07 | 6:30 A |
| | 1384742 | Main | Harris | 10-11-07 | 6:00 Am |
| | 1384742 | Main | Harris | 10-12-07 | 6:40 Am |
| | 1384742 | Main | Reynolds | 10-13-07 | 6:30 A |
| | 1384742 | Main | Reynolds | 10-14-07 | 6:30 A |
| | 1384742 | Main | D Thomas | 10/16/07 | 6:30 A |
| | 1384742 | Main | D Thomas | 10/16/07 | 6:00 R |
| | 1384742 | Main | Harris | 10-18-07 | 6:15 Am |
| | 1384742 | Main | Reynolds | 10-19-07 | 6:30 A |
| | 1384742 | Main | Harris | 10-20-07 | 6:30 A |
| | 1384742 | Main | Harris | 10-21-07 | 6:40 A |
| | 1384742 | Main | Harris | 10-22-07 | 6:27 A |
| | 1384742 | Main | Reynolds | 10-23-07 | 6:30 A |
| | 1384742 | Main | Reynolds | 10-24-07 | 6:30 A |
| | 1384742 | Main | Harris | 10-25-07 | 6:40 Am |
| | | | | | |

NAME _____ Alfonza Gochett _____

STATUS _____

| PHYSICIAN | PRESCRIPTION NUMBER | PHARMACY | ADMINISTERED BY | DATE | TIME |
|---|---|---|---|---|---|
| Tsiddiq | 1384742 | Main | Harris | 10-26-07 | 6: |
| | 1384742 | Main | Reynolds | 10-27-07 | 6: |
| | 1384742 | Main | Reynolds | 10-28-07 | 6: |
| | 1384742 | Main | Reynolds | 10-29-07 | 6: |
| | 1384742 | Main | Harris | 10-30-07 | 6: |
| | 1384742 | Main | Harris | 10-31-07 | 6: |
| Refuse | 1384742 | Main | Reynolds | 11-01-07 | 6: |
| | 1384742 | Main | Reynolds | 11-02-07 | 6: |
| | 1384742 | Main | Harris | 11-03-07 | 6: |
| | 1384742 | Main | Harris | 11-04-07 | 6: |
| | 1384742 | Main | D Thomas | 11/5/7 | 6: |
| Refused | 1384742 | Main | Reynolds | 11-06-07 | 6: |
| | 1384742 | Main | Reynolds | 11-07-07 | 6: |
| | 1384742 | Main | D Thomas | 11/8/7 | 6: |
| | 1384742 | Main | D Thomas | 11/9/7 | 6: |
| | 1384242 | Main | Reynolds | 11-10-07 | 6: |
| | 1384242 | Main | Reynolds | 11-11-07 | 6: |
| Refuse | 1384742 | Main | Reynolds | 11-12-07 | 6: |
| | | | | | |
| | | | | | |

BULLOCK COUNTY JAIL
MEDICATION & TREATMENT RECORD

NAME OF PRISONER _Alfonza Dochell_

STATUS _____

| PHYSICIAN | PRESCRIPTION NUMBER | PHARMACY | ADMINISTERED BY | DATE | TIME |
|---|---|---|---|---|---|
| Y. Siddig | 1384742 | Main | Harris | 11/14/07 | 6:39 P |
| | 1384742 | Main | D Thomas | 1-15-07 | 6:45 P |
| | 1384742 | Main | D Thomas | 11/16/07 | 6:30 P |
| | 1384742 | Main | Harris | 11/17/07 | 6:37 Am |
| | 1384742 | Main | Harris | 11/18/07 | 6:37 A |
| | 1384742 | Main | Harris | 11/19/07 | 6:40 Am |
| | 1384742 | Main | Reynolds | 11-20-07 | 6:30 A |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

I-App 3 - (9)

# EXHIBIT  J$_4$

# Plaintiff's Jail Medical Records

BULLOCK COUNTY JAIL
## MEDICATION & TREATMENT RECORD

ne _____ Pain Reliever _____

us _____

| Physician | Prescription number | Pharmacy | Administered By | Date | Time |
|---|---|---|---|---|---|
| A. Gachett | 2 Pain Reliever | MAIN | Reynolds | 10-22-06 | 5:14 P |
| J. Davis | 2 " " | Main | Reynolds | 10-22-06 | 5:31 P |
| A. Stewart | 2 " " | Main | Reynolds | 10-22-06 | 8:08 P |
| T. Weeds | 2 " " | Main | Reynolds | 10-22-06 | 8:08 P |
| C. Owens | 2 " " | Main | Reynolds | 10-22-06 | 8:08 P |
| R. Moultrie | 2 " " | Main | Reynolds | 10-28-06 | 5:30 P |
| A. Gachett | 2 " " | Main | Reynolds | 10-28-06 | 6:12 P |
| A. Gachett | 2 " | Main | Pritchett | 10-29-06 | 8:45 AM |
| Joe Davis | 2 " | Main | Pritchett | 10-29-06 | 11:30 AM |
| A. Gachett | 2 " " | Main | Reynolds | 10-30-06 | 2:10 A |
| A. Gachett | 2 " " | Main | Martin | 10-30-06 | 3:03 P |
| A. Stewart | 2 " " | Main | Reynolds | 10-31-06 | 7:00 A |
| H. Henry | 2 " " | Main | Reynolds | 10-31-06 | 7:00 A |
| R. Moultrie | 2 " " | Main | Reynolds | 10-31-06 | 7:00 A |
| L. Oliver | 2 " " | Main | Reynolds | 10-31-06 | 7:52 A |
| alfonza | 2 " " | Main | R.T. | 10-31-06 | 9:47 P |
| H. Henry | 2 " " | Main | Martin | 10-31-06 | 5:51 P |
| L. Oliver | 2 " " | Main | Martin | 10-31-06 | 7:46 P |
| A. Gachett | 2 " " | Main | Martin | 11-01-06 | 8:24 P |
| P. Henry | 2 " " | Main | Martin | 11-10-06 | 8:32 P |
| Mitchell | 2 " " | Main | Martin | 11-2-06 | 7:20 P |
| H. Tarver | 2 " " | Main | Reynolds | 11-3-06 | 4:35 P |
| H. Henry | 2 " " | Main | Reynolds | 11-3-06 | 4:35 P |
| R. Moultrie | 2 " " | Main | Reynolds | 11-3-06 | 4:35 P |
| A. Stewart | 2 " " | Main | Reynolds | 11-3-06 | 4:35 P |
| A. Youngblood | 2 " " | Main | Reynolds | 11-3-06 | 5:40 P |
| A. Owens | 2 Tylenol | N/A | Reynolds | 11-3-06 | 6:02 P |
| A. Gachett | 2 Pain Reliever | Main | Reynolds | 11-3-06 | 8:03 P |

# BULLOCK COUNTY JAIL
## MEDICATION & TREATMENT RECORD

Name _____ *Pain Relievers* _____

Status _____

| Physician | Prescription number | Pharmacy | Administered By | Date | Time |
|---|---|---|---|---|---|
| T. Thompkin | 2 P. Relievers | N/A | Harris | 11-4-06 | 6:41 Am |
| A. Alfonza | 2 " " | Main | Reynolds | 11-4-06 | 4:54 P |
| La Brown | 2 " " | Main | Reynolds | 11-4-06 | 5:08 P |
| H. Henry | 2 " " | Main | Reynold | 10-4-06 | 5:08 P |
| A. Stewart | 2 " " | Main | Reynold | 10-4-06 | 5:08 P |
| J. Hatcher | 2 " " | Main | Reynolds | 10-4-06 | 5:49 P |
| Anthony S. | 2 " " | Main | Pritchett | 10-5-06 | 4:45 PM |
| Richard M. | 2 " " | Main | Pritchett | 10-5-06 | 4:45 Pm |
| Crayton S. | 2 " " | Main | Pritchett | 10-5-06 | 4:45 PM |
| Hubert H. | 2 " " | Main | Pritchett | 10-5-06 | 4:45 PM |
| Terrence | 2 " " | Main | Pritchett | 10-5-06 | 9:20 PM |
| Cedric O | 2 " " | Main | Pritchett | 10-5-06 | 9:30 PM |
| Alfonza G | 2 " " | Main | Pritchett | 10-5-06 | 9:30 PM |
| Owens | 2 " " | Main | Martin | 11-6-06 | 6:10 P |
| A.D. Gachett | 2 " " | Main | Martin | 11-6-06 | 6:10 P |
| Gasco | 2 " " | Main | Martin | 11-6-06 | 8:18 P |
| A. Gachett | 2 " " | Main | Reynolds | 11-7-06 | 7:45 A |
| A. Gachett | 2 " " | Main | Martin | 11-7-06 | 9:26 P |
| Gachett | 2 " | Main | R.T. | 11-9-06 | 10:57 A |
| Henry Tarver | 2 " | Main | D Thomas | 11-10-06 | 7:15 A |
| Anthony Stewart | 2 " | Main | D Thomas | 11-10-06 | 7:15 A |
| Hubert Henry | 2 " | Main | D Thomas | 11-10-06 | 7:15 A |
| Alfonzo Gachett | 2 " | Main | D. Thomas | 11-10-06 | 7:15 A |
| A. Moultrie | 2 " " | Main | Reynolds | 11-10-06 | 4:50 P |
| A. Stewart | 2 " " | Main | Reynolds | 11-10-06 | 4:50 P |
| A. Gachett | 2 " " | Main | Reynolds | 11-10-06 | 4:50 P |
| H. Henry | 2 " " | Main | Reynolds | 11-10-06 | 4:50 P |
| | | | | | 7:30 Am |

BULLOCK COUNTY JAIL
MEDICATION & TREATMENT RECORD

Name _Pain Reliever_____

Status _____

| Physician | Prescription number | Pharmacy | Administered By | Date | Time |
|---|---|---|---|---|---|
| Laquint Oliver | 2" | Main | D Thomas | 11-13-06 | 3:45p |
| Alfonzu Crockett | 2" | Main | D Thomas | 11-13-06 | 3:45p |
| Terrance Thompson | 2" | Main | D Thomas | 11-13-06 | 3:45p |
| Tim Woods | 2" | Main | D Thomas | 11-13-06 | 3:45p |
| Dontavias Hry | 2" | Main | D Thomas | 11-13-06 | 3:45p |
| Tony Hazard | 2" | Main | D Thomas | 11-13-06 | 3:45p |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

# BULLOCK COUNTY JAIL
## MEDICATION & TREATMENT RECORD

Name _____ Pain Relievers _____

Status _____

| Physician | Prescription number | Pharmacy | Administered By | Date | Time |
|---|---|---|---|---|---|
| Crayton | 2 P. Relievers | N/A | Harris | 12-29-06 | 7:51 Pm |
| Gachett A. | 2 P. Relievers | N/A | Harris | 12-09-06 | 2:02 Pm |
| K. Thompkins | 2 P Relievers | N/A | Harris | 12-30-06 | 2:00 Pm |
| W. Pruitt | 2 " " | N/A | Martin | 1-02-007 | 3:15 P |
| Alfonzo Hatton | 2 " " | N/A | R. t | 01-31-07 | 3:15 p |
| Mouthried | 2 " " | N/A | R. t | 01-31-07 | 5:00 P |
| D. Murry | 2 Tylenol | N/A | Harris | 01-31-07 | @ 8:42 |
| H. Gachett | 2 Tylenol | N/A | Harris | 01-31-07 | 8:42 |
| A. Gachett | 2 Tylenol | N/A | Harris | 02-01-07 | 6:40 |
| D. Murry | 2 Tylenol | N/A | Harris | 02-01-07 | 6:40 |
| Gachett | 2 Tyeenol | N/A | R. t | 02-01-07 | 11:36 A |
| A. Gachett | 2 Tyenole | N/A | Harris | 2-02-07 | 6:47 Am |
| D. Murry | 2 Tyenole | N/A | Harris | 2-02-07 | 6:47 Am |
| A. Gachett | 2 p. Relievers | N/A | D Thomas | 2-3-7 | 7:15 p |
| R. Mouthrie | 2 p Relievers | N/A | D Thomas | 2-3-7 | 7:15 p |
| T. Thompkins | 2 p. Relievers | N/A | D Thomas | 2-03-07 | 7:15 p |
| R. Mouthrie | 2 p. Relievers | N/A | D Thomas | 2-4-07 | 6:30 Am |
| A. Gachett | 2 Tylenol | N/A | D Thomas | 2-4-07 | 6:30 Am |
| M. Williams | 2 / " | N/A | Martin | 2-4-07 | 11:14 A |
| R. Mouthrie | 2 ^ Relievers | N/A | D Thomas | 02-05-07 | 6:15 Am |
| E. Baldwin | in Reliever | N/A | Thomas | 02-05-07 | 4:00 Pm |
| Murry | Tylenol | N/A | R. Thomas | 02-06-07 | 5:48 Pm |
| Gachett | Moody 1 | N/A | R. Thomas | 02-06-07 | 5:48 Pm |
| Willie S. | 2 Pain Reliever | N/A | R. t. | 02-06-07 | 5:48 pm |
| Sparks | 2 Pain killer | N/A | R. t. | 02-06-07 | 5:48 Pm |

# BULLOCK COUNTY JAIL
## MEDICATION & TREATMENT RECORD

Pain Relievers

| Physician | Prescription number | Pharmacy | Administered By | Date | Time |
|---|---|---|---|---|---|
| U. Gachett | 2 P.R | N/A | Narris | 1-15-07 | 5:30 |
| R. Moultrice | 2 P.R | N/A | R. t. | 1-17-07 | 12:00 p |
| Wilkins | 2 P.R | N/A | R. t. | 01-17-07 | 3:11 pm |
| B. Parker | 2 P.R. | N/A | Narris | 01-17-07 | 7:30 |
| Melonwilliams | 2 P.R | N/A | R. t. | 01-17-07 | 11:40 Am |
| J. Phillip | 2" | N/A | Martin | 1-19-07 | 2:52 P |
| R. Moultrie | 2" | N/A | Martin | 1-19-07 | 4:26 P |
| R. Moultrie | 2" | N/A | D Thomas | 1-20-07 | 6:30 Am |
| A. Gachett | 2" | N/A | D Thomas | 01-21-07 | 6:32 Am |
| R. Moultrie | 2" | N/A | D Thomas | 01-21-07 | 6:32 Am |
| A. Gochett | 2"  " | N/A | Martin | 1-21-07 | 11:44 P |
| R. Moultrie | 2" | N/A | D Thomas | 01-22-07 | 6:48 Am |
| Gloryá | 2"  " | N/A | R.t. | 01-22-07 | 5:10 Pm |
| A. Walker | 1 Goody powder | N/A | Narris | 01-22-07 | 9:37 Pm |
| A. Gachett | 2 P. Relievers | N/A | Narris | 01-23-07 | 6:25 Am |
| R. Moultrie | 2 P. Relievers | N/A | Narri | 01-24-07 | 6:46 |
| A. Gachett | 2 P. Relievers | N/A | Narri | 01-24-07 | 6:40 |
| U. Gachett | "  " | "  " | "  " | "  07 | 6:37 Am |
| R. Moultrie | 2 P. Relievers | " | D Thomas | 01-24-07 | 7:45 Pm |
| R. Moultrie | 2 P. Relievers | " | D Thomas | 01-25-07 | 6:35 Am |
| U. Gachett | 2"  " | N/A | Martin | 01-25-07 | 5:14 P |
| B. Parker | 1 Goody P | N/A | Narris | 01-27-07 | 6:00 Am |
| Melonja | 2 "powder | N/A | R. t. | 01-28-07 | 3:55 Pm |
| A. Cochett | 2 P. Relievers — | N/A | Narris | 01-28-07 | 9:26 Am |
| Murry — | 2 P. Relievers — | N/A | Narris | 01-28-07 | 9:26 Am |
| A. Cochell | 2 Relievers | N/A | Harris | 01-29-07 | 6:47 Am |

# BULLOCK COUNTY JAIL
## MEDICATION & TREATMENT RECORD

Name _____ Pain Relievers _____

Status _____ Inmate _____

| Physician | Prescription number | Pharmacy | Administered By | Date | Time |
|---|---|---|---|---|---|
| V. Gachett | 2" " | N/A | Martin | 02-2-07 | 11:17 A |
| W. Pruitt | 2" " | N/A | Martin | 02-2-07 | 12:00 P |
| D. Murry | 2" " | N/A | Martin | 02-2-07 | 6:20 P |
| R. Moultrie | 2" " | N/A | D Thomas | 02-08-07 | 6:15 Am |
| T. Phillips | 2" " | N/A | D Thomas | 02-08-07 | 6:15 Am |
| A. Walker | 2" " | N/A | Martin | 02-8-07 | 7:22 A |
| R. Moultrie | 2" " | N/A | D Thomas | 02-09-07 | 6:15 AM |
| R. Moultrie | 2 P. Relievs | N/A | " ru | 01-10-07 | 6:53 A |
| Don Murry | Tylenol | N/A | " ru | 01-10-07 | 6:53 A |
| A. Gachett | 2" " | N/A | R. t. | 02-11-07 | 1:40 pm |
| Gachett | 2" " | N/A | R. t. | 2-11-07 | 5:30 pm |
| Terell | 2" " | N/A | R. t. | 2-11-07 | 5:30 pm |
| Murry | 2" " | N/A | R. t. | 2-11-07 | 5:30 pm |
| B. Parker | 2 P. Relievs | N/A | Harris | 2-11-07 | 9:24 |
| D. Murry | 2" Tylenol | N/A | D Thomas | 2-12-07 | 5:35 Am |
| B. Parker | 2. P. Reliever | N/A | Harris | 2-15-07 | 5:47 |
| A. Gachett | 2. A. Reliever | N/A | Harris | 2-15-07 | |
| R. Huffman | 2. P. Reliever | N/A | Harris | 2-15-07 | |
| R. Huffman | 2 P. Relievers | N/A | Harris | 2-15-07 | 9:00 Pm |
| A. Gachett | 2 p. Relievs | N/A | D. Thomas | 02-16-07 | 5:15 pm |
| A. Gachett | 2 p. Relievs | N/A | D. Thomas | 02-17-07 | 12:00 N |
| R. Coppage | 2 p. Relievs | N/A | D. Thomas | 02-17-07 | 12:00 N |
| W. Sanders | 2 p. Relievs | N/A | D. Thomas | 02-17-07 | 12:00 N |
| T. Stewart | 2 p. Relievs | N/A | Martin | 02-18-07 | 10:40 A |
| R. Coppage | 2" " | N/A | Martin | 02-18-07 | 4:20 P |
| A. Gachett | 2" " | N/A | Martin | 02-18-07 | |

# BULLOCK COUNTY JAIL
## MEDICATION & TREATMENT RECORD

Name _Pain Reliever_

Status _In Mates_

| Physician | Prescription number | Pharmacy | Administered By | Date | Time |
|-----------|--------------------|----------|-----------------|------|------|
| R. Moultrie | 2 P. Relievers | N/A | D. Thomas | 02-19-07 | 6:45 A.M |
| A. Gachett | 2 P Reliever | N/A | R. T. | 02-19-07 | 12:37 Pm |
| V. Cachett | 2 P. Relievers | N/A | Harris | 02-19-07 | 8:09 Pm |
| A. Cachett | 2 P. Relievers | N/A | Harris | 2-20-07 | 6:30 A |
| R. Moultrie | 2 P. Relievers | N/A | Harris | 2-20-07 | 6:30 A |
| A. Garhett | 2 " " | N/A | Martin | 2-21-07 | 5:35 P |
| R. Moultrie | 2 " " | N/A | Martin | 2-21-07 | 5:25 P |
| A. Garhett | 2 " " | N/A | Martin | 2-22-07 | 5:09 P |
| T. Stewart | 2 " " | N/A | Martin | 2-22-07 | 5:09 P |
| T. Thompkin | 2 " " | N/A | D. Thomas | 02-23-07 | 6:30 Am |
| A. Cachett | 2 P. Relievers | N/A | Harris | 02-24-07 | 7:40 Pm |
| Walker | 1 B C | | R. T. | 02-25-07 | 5:17 Pm |
| A. Cachett | 2. P. Relievers | N, A | Harris | 02-25-07 | 9:27 Pm |
| D. Murry | 2" Aleve | N/A | D. Thomas | 02-27-07 | 6:45 Am |
| T. Stewart | 2. P. Relievers | N/A | Harris | 03-02-07 | 6:06 |
| A. Gachett | 2 P " Relievers | N/A | Harris | 03-02-07 | 6:00 |
| D. Murry | 2 " | N/A | D. Thomas | 03-03-07 | 6:45 Am |
| T. Thompkins | 2 " " | N/A | Martin | 03-4-07 | 5:11 P |
| T. Taylor | Garbatin-D | N/A | Martin | 03-7-07 | 9:50 A |
| D. Murry | 2 " | N/A | D. Thomas | 03-08-07 | 8:30 Pm |
| W. Jacken | 2 " | N/A | D. Thomas | 03-08-07 | 8:30 Pm |
| T. Parker | 2 " | N/A | D. Thomas | 03-08-07 | 8:30 Pm |
| B. Parker | 2 P. Relievers | N/A | Harris | 3-09-07 | 7:27 Pm |
| S. Glaeco | 2 Relievers | N/A | Harris | 3-11-07 | 8:40 Pm |
| R. Irvate | 2 Relievers | N/A | Harris | 3-11-07 | 8:40 Pm |
| A. Phillip | 2 " " | N/A | Martin | 3-12-07 | 7:20 P |

Name _Pain Relievers_

Status _Inmates_

| Physician | Prescription number | Pharmacy | Administered By | Date | Time |
|---|---|---|---|---|---|
| T. Woods | 2 '''' | N/A | D Thomas | 4-28-07 | 6:45 Am |
| H. Tarver | 2 ''' | N/A | D Thomas | 4-28-07 | 6:45 Am |
| T. Phillips | 2 '' | N/A | D Thomas | 4-28-07 | 6:45 Am |
| M. Davis | 8 '' | N/A | D Thomas | 4-28-07 | 6:45 Am |
| R. Williams | 2 '' | N/A | D Thomas | 4-28-07 | 6:45 Am |
| A. Avery | 2 '' | N/A | D Thomas | 4-28-07 | 6:45 Am |
| A. Gachett | 2 '' | N/A | D Thomas | 4-28-07 | 6:45 Am |
| A. Gachett | Pepto | N/A | Reynolds | 4-28-07 | 11:30 A |
| A. Gachett | Pepto | N/A | Reynolds | 4-28-07 | 4:45 P |
| T. Woods | 2 '' | N/A | D Thomas | 4-28-07 | 7:29 P |
| R. Williams | 2 '' | N/A | D Thomas | 4-28-07 | 8:18 P |
| D. Murry | 2 '' | N/A | D Thomas | 4-28-07 | 8:18 P |
| A. Gachett | 2 '' | N/A | D Thomas | 4-28-07 | 8:21 P |
| H. Tarver | 2 '' | N/A | D Thomas | 4-28-07 | 8:21 P |
| A. Gachett | 2 '' | N/A | D Thomas | 4-29-07 | 6:50 Am |
| D. Murry | 2 '' '' | N/A | Martin | 4-29-07 | 4:16 P |
| A. Gachett | 2 '' '' | N/A | Reynolds | 4-29-07 | 9:50 P |
| A. Avery | 2 '' '' | N/A | Reynolds | 4-30-07 | 6:45 A |
| A. Gachett | 2 '' '' | N/A | Reynolds | 4-30-07 | 6:45 A |
| B. Parker | 2 '' '' | N/A | Reynolds | 5-2-07 | 7:47 P |
| T. Woods | 2 '' '' | N/A | Reynolds | 5-2-07 | 8:19 P |
| B. Parker | 2 '' '' | N/A | Martin | 5-3-07 | 5:03 P |
| | | | | | |
| | | | | | |

BULLOCK COUNTY JAIL
MEDICATION & TREATMENT RECORD

## Pain Relievers

Name _____

Status _____

| Physician | Prescription number | Pharmacy | Administered By | Date | Time |
|-----------|---------------------|----------|-----------------|------|------|
| P. Btill | 2. Pain Rele | N/A | Harris | 05-18-07 | 9:44 Pm |
| W. Davis | 2. Pain Relie | N/A | Harris | 05-19-07 | 8:58 Pm |
| B. Parker | 2 P. Relievr | N/A | rris | 05-19-07 | 8:58 Pm |
| Garrigett | 2 P. Reliever | N/A | R. t. | 05-20-07 | 1:15 pm |
| A. Cochett | 2 P. Reliever | N/A | Harris | 05-21-07 | 6:50 Am |
| R. Tafrote | 2. ,, ,, | N/A | Reynolds | 5-21-07 | 8:12 PM |
| D. Murry | 2. P. Relievas | N/A | Harris | 05-23-07 | 8:07 Pm |
| T. Woods | 2 P. Relievas | N/A | Harris | 05-24-07 | 8:00 Pm |
| B. Parker | 2. ,, ,, | N/A | Reynolds | 5-25-07 | 7:50 P |
| T. Woods | 2 Tylenol | N/A | Reynolds | 5-26-07 | 6:55 A |
| S. Goshay | 2 P. Reliever | N/A | Reynolds | 5-27-07 | 6:45 A |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

BULLOCK COUNTY JAIL INMATE MEDICATION & TREATMENT RECORD

NAME _____ Pain Relievers _____

STATUS _____   _____

| PHYSICIAN | PRESCRIPTION NUMBER | PHARMACY | ADMINISTERED BY | DATE | TIME |
|---|---|---|---|---|---|
| None | | Main | Pritchett | | |
| Bobby Milner | Pain Relievers | Main | Pritchett | 8/27/07 | 11:28 Am |
| J. Smart | '' '' | N/A | Reynolds | 8-28-07 | 8:00 P |
| P. Maddox | '' '' | N/A | Reynolds | 8-28-07 | 9:05 P |
| L. White | '' '' | N/A | Reynolds | 8-29-07 | 6:45 A |
| W. Sanders | '' '' | N/A | Reynolds | 8-29-07 | 6:45 A |
| J. Smart | '' '' | N/A | Reynolds | 8-29-07 | 6:45 A |
| R. Moultrie | '' '' | N/A | Reynolds | 8-29-07 | 6:45 A |
| Milner | '' '' | N/A | Reynolds | 8-29-07 | 6:45 A |
| J. Efford | '' '' | N/A | Harris | 8-29-07 | 9:01 Pm |
| T. Tolliver | '' '' | N/A | Harris | 8-29-07 | 9:01 Pm |
| J. Smart | '' '' | N/A | D. Thomas | 8/30/07 | 2:30p |
| Z. White | '' '' | N/A | D. Thomas | 8/30/07 | 2:30p |
| B. Milner | '' '' | N/A | D. Thomas | 8/30/07 | 5:30p |
| D. Willis | '' '' | N/A | D. Thomas | 8/30/07 | 5:30p |
| T. Tolliver | '' | N/A | Harris | 8-31-07 | 6:00 Am |
| A. Gochett | 2 '' '' | N/A | Martin | 8-31-07 | 7:40 A |
| E. Sutherland | 2 '' '' | N/A | Martin | 8-31-07 | 12:27 P |
| R. Moultrie | 2 '' '' | N/A | Martin | 8-31-07 | 4:33 P |
| P. Maddox | 2 '' '' | N/A | Reynolds | 8-31-07 | 9:13 P |
| J. Smart | 2 '' '' | N/A | Reynolds | 9-3-07 | 8:53 PM |
| P. Maddox | 2 '' '' | N/A | Reynolds | 9-3-07 | 12:07 A |
| A. Tolliver | 2 '' '' | N/A | Reynolds | 9-3-07 | 6:42 A |

NAME _____ *Pain Reliever* _____

STATUS _____

| PHYSICIAN | PRESCRIPTION NUMBER | PHARMACY | ADMINISTERED BY | DATE | TIME |
|---|---|---|---|---|---|
| D. Henry | 2" Pain Reliever | N/A | Martin | 9-14-07 | 10:26 P |
| R. Moultrie | 2" " | N/A | Martin | 9-14-07 | 6:26 P |
| D. Willie | 2" " | N/A | Martin | 9-15-07 | 11:01 A |
| A. Gachett | 2" " | N/A | Reynolds | 09-15-07 | 10:26 P |
| R. Moultrie | 2" " | N/A | Reynolds | 09-16-07 | 6:30 A |
| A. Gachett | 2" " | N/A | Reynolds | 09-16-07 | 8:45 P |
| William Suber | 2" " | N/A | R. t. | 9/17/07 | 5:16 Pm |
| J. Smart | 2" " | N/A | R t | 9/17/07 | 5:16 Pm |
| Afonya | 2" " | N/A | R t | 9/18/07 | 5:18 Pr |
| W. Sanders | 2" Pain Reliever | N/A | Harris | 9-18-07 | 7:50 Pm |
| R. Moultrie | 2 Pain Reliever | N/A | Harris | 9-18-07 | 7:50 Pm |
| R. younger | 2" " | N/A | Martin | 9-19-07 | 3:22 P |
| W. Sander | 2" " | N/A | Martin | 9-20-07 | 3:23 P |
| R. Moultrie | 2" " | N/A | Reynolds | 9-20-07 | 7:04 P |
| J. Smart | 2" Relives | N/A | Harri | 9-22-07 | 10:49 P |
| Branice | 2" Reliever | N/A | R.t | 9/22/07 | 1:10 Pm |
| Branic | 2" Reliever | N/A | R.t. | 9/22/07 | 7:00 Pm |
| | | N/A | | | |
| R. Moultrie | 2" " | N/A | Martin | 9-24-07 | 4:49 P |
| J. Smart | 2" " | N/A | Reynolds | 9-24-07 | 9:39 P |
| D. Gackett | 2" " | N/A | Martin | 9-25-07 | 4:40 |

1-800 - 8 30 9102

NAME _____ *Pain Reliever* _____

STATUS _____

| PHYSICIAN | PRESCRIPTION NUMBER | PHARMACY | ADMINISTERED BY | DATE | TIME |
|-----------|---------------------|----------|-----------------|------|------|
| A. Gachett | Pain Reliever 3 | N/A | Reynolds | 9-25-07 | 2:48 P |
| A. Gachett | 3 " " | N/A | Reynolds | 09-26-01 | 6:45 A |
| A. Gachett | 3 " " | N/A | C.t. | 9/27/07 | |
| A. Gachett | 2 " " | N/A | in | 9/28/07 | 1:23 P |
| R. Moultrie | 2 " " | N/A | Reynolds | 9-28-07 | 9:51 P |
| J. Smart | 2 " " | N/A | Reynolds | 9-28-07 | 9:52 P |
| F. Telliver | 2 " " | N/A | Reynolds | 9-29-07 | 9:15 P |
| T. Hazzard | 2 " " | N/A | Reynolds | 9-30-07 | 9:05 P |
| A. Gachett | 2 " " | N/A | Reynolds | 9-30-07 | 9:05 P |
| D. Johnson | 2 " " | N/A | Reynolds | 9-30-07 | 9:05 P |
| A. Ifonza | 2 " " | N/A | C.t. | 10-2-07 | 3:20 p |
| Sanders | 2 " " | N/A | C.t. | 10-2-07 | 3:20 p |
| A. Gachett | 2 " " | N/A | Reynolds | 10-04-07 | 8:44 P |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

NAME *Pain Relievers*

STATUS *# Inmates*

| PHYSICIAN | PRESCRIPTION NUMBER | PHARMACY | ADMINISTERED BY | DATE | TIME |
|---|---|---|---|---|---|
| | 2" Pain Relievers | N/A | D Thomas | 10/16/07 | 8:15p |
| | 2" Pain Relievers | N/A | D Thomas | 10/16/07 | 8:15p |
| | 2" Pain Reliever | N/A | Harris | 10-18-07 | 6:59 A |
| | 2" " | N/A | Martin | 10/18/07 | 11:07A |
| K. Moultrie | | | | | |
| | 2" Pain Relievers | N/A | Harris | 10-18-07 | 8:05 |
| ~~crossed out~~ | 2 pain relievers | N/A | R. Thomas | 10-20-07 | 12:05p |
| A. Gachett | 2" " | N/A | Martin | 10-22-07 | 5:23P |
| D. Henry | 2" " | N/A | Reynolds | 10-22-07 | 8:17P |
| D. Prickett | 2" " | N/A | Martin | 10-23-07 | 11:58A |
| T. Phillip | 2" " | N/A | Martin | 10/23/07 | 11:58A |
| J. Smart | 2" | N/A | D Thomas | 10-24-07 | 12:30p |
| L. White | 2" | N/A | D Thomas | 10-24-07 | 12:30p |
| A. Mason | 2" | N/A | D Thomas | 10-24-07 | 12:30p |
| C. McCurley | 2" | N/A | D Thomas | 10-24-07 | 12:30p |
| J. Monday | 2" | N/A | D Thomas | 10-24-07 | 12:30p |
| E. Sutherland | 2" | N/A | D Thomas | 10-24-07 | 12:30 |
| D. Henry | 2" | N/A | D Thomas | 10-24-07 | 12:30 |
| R. Higgins | 2" | N/A | D Thomas | 10-24-07 | 12:30 |
| D. Henry | 2" | N/A | D Thomas | 10-24-07 | 12:30 |
| A. Crabett | 2" | N/A | D Thomas | 10-24-07 | 12:3 |
| D. Feagin | 2" | N/A | D Thomas | 10-24-07 | 12:3 |
| F. Williams | 2" | N/A | D Thomas | 10-24-07 | 12: |

NAME _____ *Pain Relievers* _____

STATUS _____

| PHYSICIAN | PRESCRIPTION NUMBER | PHARMACY | ADMINISTERED BY | DATE | TIME |
|---|---|---|---|---|---|
| A. Gachett | 2 P. Reliever | N/A | Reynolds | 10-18-07 | 9:37 |
| M. Cooks | 2. " " | N/A | Reynolds | 10-18-07 | 9:37 |
| D. Maddox | Tussin / Cough drops | N/A | D Thomas | 10-24-07 | 6:20p |
| D. Henry | Tussin / Cough drops | N/A | D Thomas | 10-24-07 | 6:20p |
| E. Southerland | Tussin / Cough drops | N/A | D Thomas | 10-24-07 | 6:20p |
| J. Smart | Tussin / Cough drops | N/A | D Thomas | 10-24-07 | 6:20p |
| D. Fragin | Tussin / Cough drops | N/A | D Thomas | 10-24-07 | 6:20p |
| R. Williams | Tussin / Cough drops | N/A | D Thomas | 10-24-07 | 6:20p |
| D. Henry | Tussin / Cough drops | N/A | D Thomas | 10-24-07 | 6:20p |
| R. Huffman | Tussin / Cough drops | N/A | D Thomas | 10-24-07 | 6:20p |
| J. Smart | Tussin / Cough drops | N/A | D Thomas | 10-24-07 | 6:20p |
| A. Benehum | Tussin / Cough drops | N/A | D Thomas | 10-24-07 | 6:20p |
| H. Ellis | Tussin / Cough drops | N/A | D Thomas | 10-24-07 | 6:20p |
| C. Harris | Tussin / Cough drops | N/A | D Thomas | 10-24-07 | 6:20p |
| M. Cooks | Tussin / Cough drops | N/A | D Thomas | 10-24-07 | 6:20p |
| W. Sanders | Tussin / Cough drops | N/A | D Thomas | 10-24-07 | 6:20p |
| A. Gachett | Tussin / Cough drops | N/A | D Thomas | 10-25-07 | 1:36p |
| G. Scrles | 2" Pain reliever | N/A | D Thomas | 10-25-07 | 5:00p |
| C. Thomas | 2" Pain reliever | N/A | D Thomas | 10-25-07 | 5:00p |
| D. Henry | Tussin / Cough drops | N/A |  |  |  |

BULLOCK COUNTY JAIL

NAME _____ Pain Relivers _____

STATUS _____

| PHYSICIAN | PRESCRIPTION NUMBER | PHARMACY | ADMINISTERED BY | DATE | TIME |
|---|---|---|---|---|---|
| Domarco Pickett | 2 P. Relivers | N/A | Harris | 10-29-07 | 7:37 P |
| Yong Phillips | 2 P. Relivers | N/A | Harris | 10-29-07 | 7:37 P |
| Robert Huffman | 2 P. Relieves | N/A | Harris | 10-29-07 | 7:37 P |
| Charles Thomas | 1 Hall's | N/A | Harris | 10-30-07 | 6:55 A |
| A. Madson | 2 " " | N/A | Martin | 10/31/07 | 9:44 A |
| A. Afonza | 2 " " | N/A | R. t. | 11/03/07 | 4:38 P |
| Finney | 2 " " | N/A | R. t. | 11/03/07 | 10:54 P |
| Huge Surles | 2 " " | N/A | R. t. | 11/4/07 | 4:27 P |
| Tony Phillips | 2 " " | N/A | R. t. | 11/04/07 | 4:27 P |
| Demarco piesck | 2 " " | N/A | R. t. | 11/04/07 | 4:27 P |
| Harry Jett | 2 " " | N/A | R. t. | 11/04/07 | 4:27 P |
| Foster | 2 " " | N/A | R. t. | | |
| Monday | 2 " " | N/A | R. t. | | |
| J. Monday | 2 " " | N/A | D Thomas | 11-04-07 | 8:13 p |
| A. Gachett | 2 " " | N/A | D Thomas | 11-04-07 | 8:13 p |
| D. Henry | 2 " " | N/A | D Thomas | 11-04-07 | 8:13 p |
| T. Phillips | 2 " " | N/A | D Thomas | 11-04-07 | 8:13 p |
| G. Surles | 2 " " | N/A | D Thomas | 11-04-07 | 8:13 p |
| G. Southerland | 2 " " | N/A | D Thomas | 11-04-07 | 8:13 p |
| G. Surles | 2 " " | N/A | Martin | 11-5-07 | 11:21 A |
| S. Outherland | 2 " " | N/A | Martin | 11-5-07 | 1:34 p |
| A. Younger | 2 " " | N/A | Martin | 11-5-07 | 2:15 p |
| J. Monday | 2 " " | N/A | Martin | 11-5-07 | 2:15 p |

BULLOCK COUNTY JAIL MEDICATION & TREATME...

NAME _____ *Pain Reliever* _____

STATUS _____ Inmate _____

| PHYSICIAN | PRESCRIPTION NUMBER | PHARMACY | ADMINISTERED BY | DATE | TIME |
|---|---|---|---|---|---|
| | 2 Pain Reliever | N/A | Martin | 11/6/07 | 7:23 |
| C. Foster | 2" " | NA/ | Martin | 11/6/07 | 10:54 |
| A. Gachett | | N/A | Reynolds | 11-02-07 | 6: |
| T. Phillips | 2" " | N/A | Reynolds | 11-02-07 | 6: |
| Gachett | Tussin | N/A | Reynolds | 11-02-07 | 6:4 |
| T. Hezzard | Tussin | | D. Thomas | 11-7-07 | 8: |
| E. Sutherland | 2" p. Reliever | N/A | D. Thomas | 11-7-07 | 8: |
| J. Monday | 2" p. Relievers | N/A | D. Thomas | 11-7-07 | 8: |
| C. McCrory | 2" p. Relievers | N/A | D. Thomas | 11-7-07 | 8 |
| D. Henry | 2" p. Reliever | N/A | D. Thomas | 11-7-07 | 8 |
| A. Gachett | Tussin | N/A | D. Thomas | 11-7-07 | 8 |
| H. Ellis | Tussin/2"p.Relieu | N/A | C. Thomas | 11/8/07 | |
| L. White | 2" " | N/A | D. Thomas | 11/8/07 | |
| E. Sutherland | 2" p. Relieuer | N/A | D. Thomas | 11/8/07 | 5 |
| G. Suiles | 2" p. Relieuer | N/O | D. Thomas | 11/8/07 | |
| A. Gachett | Tussin | N/O | Martin | 11-9-07 | |
| D. Henry | 2" " | N/A | Martin | 11-9-07 | |
| E. Southerland | 2" " | N/A | martin | 11-9-07 | |
| A. Moultsie | 2" " | N/A | martin | 11-9-07 | |
| G. Surley | 2" " | N/A | D. Thomas | 11-10-07 | |
| D. Henry | 2" " | N/A | D. Thomas | 11-10-07 | |
| A. Moultrie | 2" " | N/A | D. Thomas | 11-10-07 | |
| A. Gachett | 2" " | N/A | D. Thomas | 11-11-07 | |

BULLOCK COUNTY JAIL

MEDICATION & TREATMENT RECORD

NAME OF PRISONER _Pain Reliever_

STATUS _____

| PHYSICIAN | PRESCRIPTION NUMBER | PHARMACY | ADMINISTERED BY | DATE | TIME |
|---|---|---|---|---|---|
| B. Rayban | 3 Pain Reliever | N/A | Martin | 11-15-07 | 4:35 P |
| J. Monday | 2 " " | N/A | Martin | 11-15-07 | 6:02 P |
| A. Moultrie | 2 " " | N/A | Martin | 11-15-07 | 8:02 P |
| T. Hazzard | 2 Pain Relievers | N/A | Harris | 11/17/07 | 6:17 Am |
| A. Ford | 2 P. Relievers | N/A | Harris | 11/18/07 | 7:22 P |
| D. Henry | 2 P. Relievers | N/A | Harris | 11/18/07 | 7:22 P |
| J. Monday | 2 P. Relievers | N/A | Harris | 11/18/07 | 7:22 P |
| R. Higgins | 2 P. Relievers | N/A | Harris | 11/18/07 | 7:22 P |
| B. Younger | 2 P. Relievers | N/A | Harris | 11/18/07 | 7:22 P |
| A. Moultrie | 2 P. Relievers | N/A | Harris | 11/18/07 | 7:22 P |
| C. McCurly | 2 P. Relievers | N/A | Harris | 11/18/07 | 7:22 P |
| T. Williams | 2 P. Relievers | N/A | Harris | 11/18/07 | 7:22 P |
| A. Crockett | 2 P. Relievers | N/A | Harris | 11/18/07 | 7:22 P |
| R. William | 2 " | N/A | Martin | 11-19-07 | 2:37 P |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

I-App 3 - (9)

# EXHIBIT  K

# Bullock County
# Jail Incident/Accident Reports

Bullock County

Jail Incident/ Accident Report

Date _12-11-06_     Time of Incident _7:20 A.M._

Name of Inmate _Alfonza Crochett/ Robert Sparks_

SSN_____

Race _B_     Sex _M_     DOB_____Age_____

Check One:
Resident_____
Non-Resident_____

Place of Occurrence _B-Cell Sitting Room_

Name of Victim _Alfonza Crochett/ Robert Sparks_

Description of incident:
_I observe at 7:20 A.M. in B-cell Alfonza_
_Crochett + Robert Sparks got into and argument_
_and the argument laid into a fight Crochett_
_pass first lick and that's when the fight took_
_place after to when Crochett hit Sparks, Sparks hit_
_him back fight didn't last but a second to there were_
_how injure neither inmate request to see a doctor._
Witness:_____

Signature of Officer Completing Report _Jailer Dorothy Thomes_

Bullock County

Jail Incident/ Accident Report

Date __01-16-07__   Time of Incident __4:15 A.M.__

Name of Inmate __Alfonza Crachett / Robert Sparks__

SSN _____

Race __B__   Sex __M__   DOB_____   Age_____

Check One:
Resident____✓____
Non-Resident_____

Place of Occurrence __B-Cell IN Sitting Room__

Name of Victim __Alfonza Crachett / Robert Sparks__

Description of incident:
Robert Sparks / Alfonza Crachett got to fight this
morning at 4:15 A.M. they say Robert started
the fight Alfonza said his jaw got messed
up in the fight he said Robert hit him in the
jaw when he were sit at the table Robert
said his back and side got injure in the fight.

Witness:_____

Signature of Officer Completing Report __Jailer Dorothy Thomas__

Bullock County

Jail Incident/ Accident Report

Date 9/13/07          Time of Incident About 5:00pm

Name of Inmate Alfonza Hackett

SSN 416 - 98 - 3939

Race B          Sex M          DOB 9-7-63          Age 43

Check One:
Resident _____
Non-Resident _____

Place of Occurrence Inmates Sitting Room

Name of Victim Alfonza Hackett & Albert Turner

Description of incident:
Inmate Alfonza & Albert got into a fight I'm not sure of the cause, but I Ruby Thomas was looking at them when it started, I called Officer Ray Scott he responded quickly neither one was hurt, Alfonza got a stratch or two gave him a bondage move him to another cell everything was settled.

Witness: _____

Signature of Officer Completing Report Ruby Thomas