IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ALFONZA GACHETT, | ) | |
| AIS # 160757, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIV. ACTION NO. 2:07cv902-WKW |
| | ) | (WO) |
| COUNTY COMMISSION OF | ) | |
| BULLOCK COUNTY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

In this 42 U.S.C. § 1983 action, Alfonza Gachett ("Gachett") claims that his civil rights were violated during his incarceration in Bullock County Detention Facility. Specifically, Gachett contends that the Bullock County Commission, Dr. Tahir Siddiq, Bullock County Sheriff Raymond Rodgers, Jail Administrator Curtis Pritchett ("Pritchett"), and Corrections Officers Dorothy Thomas, Ruby Thomas, Annie L. Reynolds, Veronica Harris, and Johnny Mae Martin acted with deliberate indifference to his health by delaying or failing to provide him adequate medical treatment for his broken hand. In addition, Gachett asserts that the correctional defendants placed him in the D-cellblock or "the hole" in retaliation for receiving mail from the federal court, prevented him from accessing the courts, and subjected him to unconstitutional conditions of confinement.

The defendants filed written reports and supporting evidentiary materials addressing

Gachett's claims for relief. The court deems it appropriate to treat these responsive pleadings as a motion for summary judgment. Upon consideration of such motion, the evidentiary materials filed in support thereof, and the responses in opposition filed by Gachett, the court concludes that the defendants' motion for summary judgment should be granted.

## I. STANDARD OF REVIEW

To survive the defendants' properly supported motion for summary judgment, the plaintiff is required to produce some evidence supporting his constitutional claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). He must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324. A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). Consequently, when a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex Corp.*, 477 U.S. at 322; *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607 (11th Cir. 1987). Where all the materials before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex Corp.*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir.

1987). Although factual inferences must be viewed in a light most favorable to the non-moving party, and pro se complaints are entitled to liberal interpretation by the courts, a pro se litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).

## II. FACTS

The Bullock County Detention Center is a small jail in Union Springs, Alabama. (Doc. No. 26-2, p. 16.) The jail needs a new coat of paint and the D Cell, which the inmates refer to as "The Hole," has an iron plate over its window, as well as plumbing problems. (Doc. No. 1, p. 3; Doc. No. 26-2, p. 43; Doc. No. 26-3, p. 39.) During warm weather, iced water jugs are placed in each cell block. (Doc. No. 26-2, p. 19.)

Gachett has frequented the jail several times since his first incarceration in 1990. (*Id.*, pp. 15.) Some days have been better than others. During his most recent incarceration, Gachett was involved in at least five fights with other inmates. (Doc. No. 26-3, pp. 27, 51-53.) On or around October 8, 2006, Gachett slipped and fell in a puddle of water next to a couple of iced water jugs on the jail floor, injuring his hand. (Doc. No. 1, p. 3.) A day or so after the fall, another inmate told Jail Administrator Pritchett that Gachett had gotten into a fight and that he had hit the jail floor with his fist. (Doc. No. 26-2, pp. 19-20.)

On October 11, 2006, Gachett requested that jail personnel take him to a doctor. (*Id.*, p. 20; Doc. No. 23-2.) That same day, Pritchett took Gachett to Dr. Siddiq's office. (*Id.*)

During the initial examination, Gachett reported that he had suffered a fall and injured his hand on October 9, 2006. (Doc. No. 23-2, p. 2.) Dr. Siddiq immediately sent Gachett to Bullock County Hospital for an x-ray. (*Id*.) Upon reviewing x-rays indicating that Gachett suffered from "right fourth and fifth metacarpal fractures . . . with associated overlying soft tissue swelling," Dr. Siddiq referred Gachett to Dr. Tai Chung, an orthopedic surgeon in Montgomery. (*Id*., pp. 2, 5.) That afternoon, Pritchett drove Gachett to Dr. Chung's office. (Doc. No. 26-2, p. 20.)

During the examination, Dr. Chung noted that Gachett "complain[ed] of right hand pain after he fell on it yesterday." (Doc. No. 23-2, p. 6.) After reviewing the x-rays, Dr. Chung recommended surgery, a wrist brace for support, and Vicodin for pain. (*Id*.) The next day at Baptist Medical Center East, Dr. Chung performed surgery on Gachett's hand. (*Id*., p. 9.) On November 1, 2006, Dr. Chung conducted a follow-up examination and recommended a splint and exercise several times a day. (*Id*., p. 6.) On December 6, 2006, Dr. Chung noted that Gachett was able to extend his fingers and flex to 60 degrees and recommended that he continue his exercises. (*Id*., p. 8.) On March 16, 2007, Dr. Chung noted that Gachett was able to fully extend his fingers and make a fist and that there was no tenderness at the fracture site. (*Id*.)

### III.  DISCUSSION

#### A.  The Deliberate Indifference Claims against Dr. Siddiq

To the extent Gachett challenges the constitutionality of the medical treatment provided by Dr. Siddiq, he is entitled to no relief.  An essential element of a 42 U.S.C. § 1983 action is that the alleged constitutional deprivation was committed by a person acting under color of state law or a person whose conduct is fairly attributable to the State. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 119 S. Ct. 977, 985, 143 L. Ed. 2d 130 (1999); *Willis v. Univ. Health Serv.*, 993 F.2d 837, 840 (11th Cir. 1993).  To state a viable claim for relief under § 1983, a plaintiff must assert that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law.  Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach "'merely private conduct, no matter how discriminatory or wrongful,'" *Blum v. Yaretsky*, 457 U.S. 991, 1002, 102 S. Ct. 2777, 73 L. Ed. 2d 534 (1982) (quoting *Shelley v. Kraemer*, 334 U.S. 1, 13, 68 S. Ct. 836, 92 L. Ed. 1161 (1948))." *American Mfrs.*, 526 U.S. at 49-50, 119 S.Ct. at 985. Consequently, the Eleventh Circuit has repeatedly insisted "that state action requires *both* an alleged constitutional deprivation 'caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible,' *and* that 'the party charged with the deprivation must be a person who may

fairly be said to be a state actor.' *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982); *see Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156, 98 S. Ct. 1729, 56 L. Ed. 2d 185 (1978)." *Id.*

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' ... To constitute state action, 'the deprivation must be caused by the exercise of some right or privilege created by the State ... or by a person for whom the State is responsible,' and 'the party charged with the deprivation must be a person who may fairly be said to be a state actor.'" *West v. Atkins*, 487 U.S. 42, 49, 108 S. Ct. 2250, 2255 (1988) (citations omitted). "[A] State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. at 1004, 102 S. Ct. at 2786.

It is undisputed that Dr. Siddiq is a private physician. The mere fact that the county provided the source of payment for Gachett's surgery is not determinative of state action; rather, it is the context within which the defendant physician rendered treatment that determines the nature of the action. *West v. Atkins*, 487 U.S. at 57 n.15. The context within which Dr. Siddiq provided treatment to Gachett is indistinguishable from that of the ordinary

physician-patient relationship. Based on the undisputed facts, the court concludes that Dr. Siddiq did not act under color of state law in his treatment of Gachett. Thus, Gachett's § 1983 claims against this defendant are frivolous and summary judgment is therefore due to be granted in favor of Dr. Siddiq on such claims.

### B. State Law Claims

To the extent Gachett seeks to present claims against Dr. Siddiq under state law, review of these claims is appropriate only under this court's supplemental jurisdiction. In the posture of this case, the court concludes that exercise of supplemental jurisdiction is inappropriate.

The court's exercise of supplemental jurisdiction over state law claims is completely discretionary. Under 28 U.S.C. § 1367(c)(3), the court may "decline to exercise supplemental jurisdiction over a [state law] claim if the district court has dismissed all claims over which it has original jurisdiction...." The court's discretion is advised by *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966), in which the Court held that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Id.* at 726. In *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988), the Supreme Court reiterated that "when the federal-law

claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice...." The court therefore concludes that Gachett's state law claims should be dismissed without prejudice.

### C. The Jail Officials' Failure to Provide Medical Treatment[1]

Gachett contends that jail officials acted with deliberate indifference to his health by delaying or failing to provide adequate medical treatment for his broken hand. To prevail in a suit based on an Eighth Amendment claim about medical attention, an inmate must show at a minimum that correctional or medical officials have acted with deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Aldridge v. Montgomery*, 753 F.2d 970, 972 (11th Cir. 1985). Because society does not expect that inmates will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000 (1992). A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay

---

[1]The defendants argue that Gachett's claims against them should be dismissed pursuant to the 42 U.S.C. § 1997e which provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." It is undisputed that Bullock County Detention Facility does not have a written grievance procedure. In a sworn statement Gachett says he knew nothing about any procedure. The Sheriff describes the "procedure" this way: "[T]he Chief Jailer is always available and willing to hear any inmate's complaint." Under these circumstances, the court is constrained to conclude that the defendants have not demonstrated that an administrative remedy is "available" within the meaining of § 1997e. *See Goebert v. Lee County*, 510 F.3d 1312 (11th Cir. 2007).

person would easily recognize the necessity for a doctor's attention. A corrections or medical official may be held liable under the Eighth Amendment for acting with "deliberate indifference" to inmate health or safety only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825 (1994). Under this standard, a corrections or medical official does not act with indifference by providing medical care that is different from that which an inmate desires. *See Hamm v. De Kalb County*, 774 F.2d 1567 (11th Cir. 1985).

A claim about a failure to provide immediate or emergency medical attention must involve medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem. *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176 (11th Cir. 1994). In contrast, delay or even denial of medical treatment for superficial, non-serious physical conditions does not constitute an Eighth Amendment violation. *Id.*

> The "seriousness" of an inmate's medical needs also may be decided by reference to the effect of delay in treatment.... Where the delay results in an inmate's suffering "a life-long handicap or permanent loss, the medical need is considered serious." ... An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. Further, we have held that "the tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay." *Harris v. Coweta County*, 21 F.3d 388, 393-94 (11th Cir. 1994) (emphasis added). Consequently, delay in medical treatment

9

> must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay.

*Hill*, 40 F.3d at 1188-89.

Medical records indicate that, throughout his imprisonment in the Bullock County Detention Facility, Gachett received treatment from a free-world physician and hand surgeon and was routinely provided medication as prescribed. Gachett fails to come forward with any evidence showing that any delay in providing him treatment over a one to three day period caused his fractured hand to worsen. Indeed, the medical records show that, five months after surgery, Gachett was "doing well," that there was no tenderness at the fracture site, that he could fully flex his fingers and make a fist, and that his fractures were healing. (Doc. No. 23-2, Dr. Siddiq's Ex. A-5.) Based on the foregoing, the court concludes that Gachett has failed to show that the defendants in any way disregarded a substantial risk to his health by delaying or denying him adequate medical treatment for his hand condition and other health problems. Consequently, the defendants' motion for summary judgment should be granted.

### D. The Conditions of Confinement

Gachett asserts that the defendants subjected him to unconstitutional conditions of confinement. Specifically, he alleges that the jail needs a new coat of paint, that inmates do not go outside, that sewage backs up, that an iron plate is welded over a window, that inmates administer medication, that the defendants do not watch inmates take their medication, and

that there is a lack of appropriate security. Jail officials admit that inmates peel paint off the walls, that toilets occasionally back up, and that a metal plate is welded over the window in D cell because inmates were found to have received contraband through the opening. (Doc. No. 26-2, Def's Ex. D.) The defendants, however, deny that inmates are prohibited from going outside or that inmates administer medication to other inmates. (*Id*.)

As previously discussed, jail officials may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's health or safety when the official knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825 (1994). Only those conditions which deny inmates "the minimal civilized measure of life's necessities" are grave enough to violate the Eighth Amendment. *Id.* at 347. Moreover, a constitutional violation occurs only when a plaintiff establishes the existence of "a substantial risk of serious harm, of which the official is subjectively aware, ... and [that] the official does not respond[] reasonably to the risk'. . . ." *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001)(en banc), *quoting Farmer*, 511 U.S. at 844. Thus, in order to survive summary judgment on any claim challenging a condition of confinement, the plaintiff is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995). "[D]eliberate indifference is a stringent

standard of fault, requiring proof that [the] actor disregarded a known or obvious consequence of his action." *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 117 S. Ct. 1382, 1391, 137 L. Ed. 2d 626 (1997); *see also Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir. 1995).

Living conditions within a jail will constitute cruel and unusual punishment when the conditions involve or result in "wanton and unnecessary infliction of pain, [or] ... [are] grossly disproportionate to the [reason for] imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "Conditions ... alone or in combination, may deprive inmates of the minimal civilized measure of life's necessities. Such conditions could be cruel and unusual under the contemporary standard of decency.... But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional." *Rhodes*, 452 U.S. at 347. To determine whether conditions of confinement constitute cruel and unusual punishment, the court must look to the effect the condition has upon the inmate. *Id*. at 366. In a case involving conditions of confinement generally or several different conditions, the court should consider whether the claims together amount to conditions which fall below constitutional standards. *Hamm v. De Kalb County*, 774 F.2d 1567 (11th Cir. 1985), *cert. denied Hamm v. De Kalb County*, 475 U.S. 1096, 106 S. Ct. 1492, 89 L. Ed. 2d 894 (1986); *see also Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991).

Despite his contentions regarding the conditions of confinement, Gachett has failed

to meet his burden on summary judgment of establishing that the actions of the defendants resulted in a denial of the minimal civilized measure of life's necessities or subjected him to a wanton and unnecessary infliction of pain. *Wilson v. Seiter*, 501 U.S. 294 (1991); *Rhodes v. Chapman*, 452 U.S. at 347. The mere fact that the facility is uncomfortable is not enough. *See Jordan V. Doe*, 38 F.3d 1559 (11th Cir.1994). Gachett has failed to demonstrate any deliberate indifference or reckless disregard by the named defendants with respect to his health or safety. *Farmer v. Brennan, supra.* Consequently, summary judgment is due to be granted in favor of the defendants with respect to Gachett's conditions-of-confinement claim.

### E.  Access to the Courts

Gachett complains that the defendants denied him access to the courts. Prisoners are entitled to "a reasonably adequate opportunity" to present claims of constitutional violations to the courts. *Bounds v. Smith*, 430 U.S. 817, 825 (1977). In *Lewis v. Casey*, 518 U.S. 343, 349 (1996), the Supreme Court expounded on *Bounds* and required that an inmate demonstrate the existence of an "actual injury" affecting his effort to pursue a nonfrivolous legal claim to demonstrate a denial of access to the courts. Moreover, *Lewis* emphasizes that a *Bounds* violation is related to an inmate's lack of capability to present claims. "*Bounds*, which as we have said guarantees no particular methodology but rather the conferral of a capability -- the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts. When an inmate ... shows that an actionable claim of this

13

nature which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented, because the capability of filing suit has not been provided, he demonstrates" the requisite injury. *Lewis*, 518 U.S. at 356.

Gachett fails to allege any shortcomings which actually prevented him from pursuing his claims before this or any other court. He has failed to come forward with any evidence that the defendants deprived him of the ***capability*** to pursue claims; rather, Gachett has repeatedly demonstrated that he is proficient and prolific at presenting and arguing the claims of his choice to this court. Specifically, the records in this case filed by Gachett demonstrate that he has filed numerous and lengthy pleadings with this court both on impulse and in compliance with orders issued by the court. Consequently, nothing before the court indicates that the actions about which Gachett complains in any way adversely affected his efforts to pursue nonfrivolous legal claims and, therefore, Gachett has failed to establish the requisite injury. *Lewis*, 518 U.S. at 356. Summary judgment is therefore due to be granted in favor of the defendants.

### F. Retaliation

Gachett asserts that Pritchett retaliated against him for receiving mail from this court by placing him in D cell between January 22, 2007, and August 1, 2007. Pritchett denies that he acted in retaliation for Gachett's filing this cause of action and maintains that Gachett was placed in D cell several times between January and August of 2007 because he "simply

fought with too many people" and could not live peacefully with others. (Doc. No. 26-2, Defs' Ex. D, Pritchett's Affid.) In addition, Pritchett alleges that Gachett once told him that he preferred staying in D cell because he had peace and could work on his case. (*Id.*)

To present a retaliation claim cognizable under § 1983, an inmate must demonstrate that (i) he engaged in a constitutionally protected activity, (ii) he suffered adverse treatment simultaneously with or subsequent to such activity, and (iii) a causal connection existed between the protected activity and the adverse action. *Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 600-601 (11th Cir. 1986); *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003); *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2nd Cir. 2004); *Morales v. Mackalm*, 278 F.3d 126, 131 (2nd Cir. 2002); *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Proper assertion of a claim for retaliation requires that a prisoner allege that correctional officials intended to retaliate for his exercise of a right protected under the Constitution and, but for the retaliatory motive, the adverse act complained of would not have occurred. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied sub nom Palermo v. Woods*, 516 U.S. 1084, 116 S. Ct. 800, 133 L. Ed. 2d 747 (1996). However, it is essential that federal courts "carefully scrutinize retaliation claims" brought by prisoners challenging actions of correctional personnel. *Woods*, 60 F.3d at 1166. "[C]ourts must approach prisoner claims of retaliation with skepticism and particular care. *See Flaherty v. Coughlin,* 713 F.2d 10, 13 (2nd Cir. 1983). This is [necessary because prisoners'] ... claims of retaliation are ... easily

fabricated [and] pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official--even those otherwise not rising to the level of a constitutional violation--can be characterized [by the prisoner] as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2nd Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002).

An inmate has the initial burden of establishing a prima facie case of unlawful retaliation by a preponderance of the evidence, which once established raises a presumption that prison officials retaliated against the inmate. *Texas Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248 (1981). Merely alleging the ultimate fact of retaliation, however, is insufficient. *Cain v. Lane*, 857 F.2d 1139, 1142, n.6 (7th Cir. 1988); *Woods*, 60 F.3d at 1166. Additionally, conclusory allegations are insufficient to demonstrate the existence of each element requisite to establishing retaliation. *Morales*, 278 F.3d at 131; *Bennett v. Goord*, 343 F.3d 133, 137 (2nd Cir. 2003) (Because prisoner retaliation claims are prone to abuse, "we are careful to require non-conclusory allegations."). If an inmate establishes a prima facie case, the burden then shifts to prison officials to rebut the presumption by producing sufficient evidence to raise a genuine issue of fact as to whether the prison official retaliated against the inmate. This may be done by the prison official articulating a legitimate, non-retaliatory reason for the adverse decision or action, which is clear, reasonably specific and

worthy of credence. The jail official has a burden of production, not of persuasion, and thus does not have to persuade a court that he or she actually was motivated by the reason advanced. *Burdine*, *supra*. Once the jail official satisfies this burden of production, the inmate then has the burden of persuading the court by sufficient and admissible evidence that the proffered reason for the adverse decision is a pretext for retaliation. *Id*.

Gachett asserts that Pritchett retaliated against him for filing this lawsuit. This satisfies Gachett's burden of establishing that he had engaged in a protected activity and that he suffered adverse treatment subsequent to such activity. *Donnellon*, 794 F.2d at 600-601. Nevertheless, the defendant has demonstrated through relevant admissible evidence that the adverse action about which Gachett complains resulted solely from Pritchett's attempt to ensure that Gachett acted in compliance with institutional rules and maintain peace between inmates in the jail. Gachett offers only his conclusory allegation that Pritchett acted in a retaliatory manner. As this court must "carefully scrutinize retaliation claims" arising from adverse actions of correctional personnel, *Woods*, 60 F.3d at 1166, and evaluate such claims "with skepticism and particular care[,]" *Dawes*, 239 F.3d at 491, it is clear that Gachett's conclusory allegation of retaliation is insufficient to show that the reason proffered by the defendants for placing him in D cell is pretextual. Consequently, the defendants are entitled to summary judgment on the retaliation claim as Gachett has failed to present any evidence which establishes a causal relationship between his protected activity and the challenged

adverse action. *Farrow*, 320 F.3d at 1249.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motion for summary judgment be GRANTED.

2. The federal claims be dismissed with prejudice.

3. The state law claims be dismissed without prejudice.

4. This case be dismissed.

5. The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that the parties are DIRECTED to file any objections to the **on or before June 5, 2008**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein*

*v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 23rd day of May, 2008.

                                          /s/Charles S. Coody
                                    CHARLES S. COODY
                                    UNITED STATES MAGISTRATE JUDGE